**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 6-13-2011

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                * 11-CR-06-01-JL
            v.                  * February 8, 2011
                                * 10:55 a.m.
      BRIAN E. MAHONEY          *
                                *
* * * * * * * * * * * * * * * * *


TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY



APPEARANCES:



For the Government:        Arnold H. Huftalen, AUSA
                           U.S. Attorney's Office



For the Defendant:         Jeffrey S. Levin, Esq.
                           Federal Defender Office



Probation Officer:         Janice Benard

```
 1                    P R O C E E D I N G S

 2              THE CLERK:  The Court has before it for

 3    consideration a detention hearing in the matter of

 4    United States of America v. Brian Mahoney, criminal

 5    number 11-CR-06-01-JL.

 6              THE COURT:  Okay.  The government is seeking

 7    detention under what provision?

 8              MR. HUFTALEN:  3142(f), on the dual bases

 9    that the defendant is a risk of flight and a danger to

10    others in the community.

11              THE COURT:  And what provision under (f) for

12    danger?

13              MR. HUFTALEN:  I apologize, your Honor.  It's

14    going to take me a minute -- (f)(1)(E), your Honor,

15    "or involves a failure to register under section 2250

16    of title 18".

17              THE COURT:  Just one second.  Let me get

18    there.  (f)(1)(E) okay.  Thank you.  All right.

19              MR. HUFTALEN:  I would also, your Honor,

20    amend my earlier statement and say that the government

21    seeks detention under a risk that a person will

22    obstruct or attempt to obstruct justice, and I'll

23    elaborate on that as I make my proffer.  So it's under

24    three bases:  Danger to others in the community, risk

25    of flight, and a danger of obstruction -- or risk of
```

1  obstruction.

2          THE COURT:  So it's under 3142(f)(1)(E)?

3          MR. HUFTALEN:  As well as 3142(f)(2)(A) and

4  (B).

5          THE COURT:  Okay.  All right.  So a serious

6  risk the defendant will flee and a serious risk the

7  defendant will obstruct or attempt to obstruct

8  justice.

9          MR. HUFTALEN:  Or threaten, injure, or

10  intimidate or attempt to threaten, injure or

11  intimidate a prospective witness or juror, yes.

12          THE COURT:  Oh.  So it's will obstruct

13  justice or attempt to obstruct justice, as well as

14  threaten, injure, intimidate a prospective witness.

15  Both of those?

16          MR. HUFTALEN:  Yes.

17          THE COURT:  All three subparts?

18          MR. HUFTALEN:  Yes.

19          THE COURT:  Okay.  All right.  Thank you.

20  You've got to proceed by proffer today.  What's

21  happening with respect to --

22          MR. LEVIN:  That's fine, your Honor.

23          MR. HUFTALEN:  Yes.

24          THE COURT:  Okay.  Go ahead.

25          MR. HUFTALEN:  First on the record, your

4

1   Honor, I want to make clear that the government is

2   moving for detention under the three bases that I just

3   mentioned, and we're not here on an identity hearing

4   and we're not here on a probable cause hearing.

5           The defendant has been indicted.  The grand

6   jury has found probable cause to believe that he's

7   committed the felony for which he's charged.  So I

8   will restrict my argument to the bases that I believe

9   support detention under 3142.

10           To the extent that Mr. Levin raises other

11   issues, I may request the opportunity to respond to

12   those issues, but I'm not going to expand the hearing

13   beyond where I believe it should be.

14           As the Court's aware from reviewing the file,

15   the defendant has been indicted for failing to update

16   his sex offender registration in New Hampshire.

17           The defendant has a fairly substantial --

18   well, let me strike that.  The defendant has a

19   substantial criminal record, which includes a

20   conviction on September 23, 1983, which is a sex

21   offense conviction for purposes of triggering the sex

22   offender reporting requirements under 2250 and under

23   SORNA, Sexual Offender Registry and Notification Act.

24           He was convicted in the Suffolk County

25   Superior Court of assault and battery with a dangerous

1   weapon, a knife, for which he was sentenced to one and

2   a half to ten years in MCI.

3           He was convicted of attempted oral rape for

4   which he was sentenced to 2.8 to 10 years in the MCI,

5   and he was convicted of intimidation of a witness for

6   which he was sentenced to 2 1/2 to 3 years in the MCI.

7           The records of the Massachusetts Department

8   of Corrections indicate that he was incarcerated at

9   Walpole, Massachusetts, after that conviction.

10          The Court records, a copy of which Mr. Levin

11  has, from the Suffolk County Superior Court show that

12  the defendant filed a motion for a new trial post-jury

13  trial conviction, which was denied, and a subsequent

14  appeal was filed, which was also denied.

15          The defendant's conviction became final, and

16  he was sentenced to what I believe is an 8 to 10 year

17  sentence in Massachusetts for that conviction -- for

18  those convictions.

19          Upon release he was required to register as a

20  sex offender, which he did for many years in New

21  Hampshire, and then he moved to New Hampshire -- or

22  excuse me -- to Massachusetts.

23          He moved to New Hampshire and registered for

24  many years as a sex offender in the state of New

25  Hampshire, and he has signed numerous sex offender

1  registration update forms in the state of New

2  Hampshire, some of which, the more recent ones,

3  acknowledged by his initials, require that if he is

4  going to leave the state of New Hampshire or change

5  his residence he must, within five days, notify the

6  authorities of that change of address.  Residence is

7  defined on the forms that he signed and initialed as

8  any place that he lives for five days or more.

9        This defendant left New Hampshire and did not

10  update his registration.  He did not notify law

11  enforcement that he was moving.  A warrant was

12  issued -- a state warrant was issued, I believe, out

13  of the Dover District Court for his arrest, failure to

14  update his sex offender registration in New Hampshire.

15        The United States Marshal Service Fugitive

16  Task Force was requested to assist in locating and

17  taking Mr. Mahoney into custody on that state warrant.

18        Intelligence was received that suggested Mr.

19  Mahoney was living in the Boston area.  Surveillance

20  was established at multiple locations, and then I

21  believe it was on November 5th that Mr. Mahoney was

22  apprehended at North Station in Boston.  He had

23  luggage with him at the time.  He was taken into

24  custody at that point but without incident.

25        After he was taken into custody and while he

1   was awaiting processing he submitted to an interview

2   by a Deputy U.S. Marshal, and when the U.S. Marshal

3   spoke with him Mr. Mahoney told the Deputy that he

4   would not register as a sex offender.

5           He also said, "I will never register", and he

6   followed that up, I believe -- he said -- but I

7   believe it followed that first statement -- that, "You

8   should have shot me.  You're lucky I didn't have my

9   gun with me".

10          I submit to the Court, although I'm not

11  finished with the proffer, that that conduct alone

12  shortly after his arrest is strong evidence that the

13  defendant presents a clear danger to others.

14          THE COURT:  What exactly did he say again?

15  I'm sorry.  You should have shot me?

16          MR. HUFTALEN:  He said, "I will never

17  register", and he also said, "You should have shot me.

18  You're lucky I didn't have my gun with me".

19          I submit that independent of the rest of his

20  criminal history, which I'm about to get into, that

21  conduct post-arrest strongly suggests that the

22  defendant is a danger to others in the community.

23          I don't have any information that the

24  defendant possesses a gun.  He's certainly a

25  prohibited person with multiple felony convictions in

8

1   the past, but the statement to a Deputy U.S. Marshal

2   that, "You should have shot me.  It's a good thing I

3   didn't have my gun", I believe is reflective of

4   someone who is a danger to others in the community.

5           Looking back at his criminal record -- and I

6   know that there was some concern expressed by the

7   defendant and his counsel to me the other day at the

8   initial appearance that there may be a mistake in

9   identity and that we may not have the right Brian

10  Mahoney.

11          I'll represent to the Court that the U.S.

12  Marshal Service has taken the fingerprints of this

13  defendant and utilizing those fingerprints has

14  confirmed that the gentleman who is in court today is

15  the person who was convicted as reflected in paragraph

16  11 of the Pretrial Services addendum to the

17  criminal -- to their Pretrial Services report, the

18  addendum which is the criminal history, that the

19  individual in court today is the person who is

20  identified in paragraph 11 as having been convicted on

21  September 23, 1983, of the assault and battery and

22  attempted rape and witness intimidation for which he

23  was sentenced to 8 to 10 years in the Massachusetts

24  State Prison.  I don't mean to be glib, but it takes

25  quite a bit to get an 8 to 10 year sentence in

1   Massachusetts.

2          The remainder of the criminal history, which

3   includes convictions, not convictions, as well as a

4   number of restraining orders for domestic violence,

5   have been put together by the Pretrial Services

6   officer based upon records that she has obtained from

7   law enforcement databases, and I am told that if she

8   were to testify she would say that the Mass PCF

9   number, which is referenced at the top of her criminal

10  history, which in this case is 1109659, runs back to a

11  person who has a mother and father who have the same

12  name that this defendant told the Pretrial Services

13  officer were his mother and father, and that the

14  convictions included in this Pretrial Services

15  criminal history are associated with the person who

16  has not only that Mass PCF number but the social

17  security number which is the social security number

18  used by this defendant.

19         I would also represent that most if not all

20  of the convictions listed in this addendum have been

21  confirmed by the U.S. Marshal Service to be

22  convictions of the person who is in court today whose

23  fingerprints have been confirmed.

24         With that backdrop, I would like to take up a

25  brief moment, and although it may not be necessary

1  because it's in this addendum to the Pretrial Services

2  report, I think it's important to put it on the record

3  to briefly go through the defendant's criminal

4  history.

5          It starts in 1978 when the defendant was only

6  19 years old, at which point he was convicted of

7  larceny.

8          In 1978, two months later, two and a half

9  months later, he was convicted of assault and battery

10  and property violations in the Charlestown, New

11  Hampshire, District Court for which he pled guilty and

12  was sentenced to three months committed at the House

13  of Corrections.

14          The following year, still at age 19, in 1979

15  he was convicted of breaking and entering at night and

16  assault with a dangerous weapon.  Excuse me.  The

17  breaking and entering at night was filed.  The assault

18  with a dangerous weapon, assault and battery, assault

19  with a dangerous weapon resulted in convictions.  He

20  received a two-year House of Correction sentence which

21  was suspended.  That was in the Suffolk County Mass

22  Superior Court.

23          In 1979, as reflected in paragraph 5, and I'm

24  going through the addendum in chronological order in

25  which it appears, he was convicted of knowingly

1   receiving stolen property, sentenced to three months

2   in the House of Corrections, again suspended, and

3   placed on probation.  There was a follow-up violation

4   of probation warrant issued.

5          In 1979 he was convicted of possession of a

6   Class B controlled substance, sentenced to three

7   months House of Corrections, again suspended.

8          On January 16, 1980, the record reflects that

9   there was a 20-month House of Correction sentence,

10  committed, related to that initial crime.

11         Still in 1979 he was convicted of knowingly

12  receiving stolen property.  No.  Strike that.  I made

13  the same mistake.  Knowingly receiving stolen property

14  was filed.  He was convicted of the second charge of

15  larceny, more, and he was committed.

16         May 7, 1980, misuse of a credit card filed.

17  Larceny.

18         MR. LEVIN:  Excuse me, your Honor.  I just

19  want to point out I have an 11:30 sentencing hearing

20  in front of Judge Barbadoro.  I thought I would have

21  enough time to do this because it was scheduled at

22  10:30, but I'm afraid that if this is going to go on

23  like this it's just going to take the next 20 or 30

24  minutes and I will have to leave.  I just wanted to

25  put the Court on notice of that.  The Court has the

1 defendant's criminal record attached to the probation

2 report.

3         Your Honor, at this point (inaudible).  I

4 don't have to go.  I just want to put the Court on

5 notice that I have an 11:30 sentencing in front of

6 Judge Barbadoro.

7         THE COURT:  Thank you, Mr. Levin.  Go ahead.

8         MR. HUFTALEN:  I'll certainly expedite it.  I

9 don't think we'll be finished by 11:30, but I'll move

10 along.

11         I'm not going to refer to each item that's on

12 this addendum because the Court has it, but I would

13 bring the Court's attention to paragraph 11, which is

14 the sexual conviction that results in the defendant

15 being required to register as a sex offender.

16         Now, as the Court knows, a person can be

17 either a tier 1, tier 2 or tier 3 sex offender

18 federally.

19         A tier 1 sex offender must register for 15

20 years.  A tier 2 sex offender must register for 25

21 years.  A tier 3 offender must register for life.

22         Any time spent in prison or in jail is not

23 credited toward that period of reporting requirement.

24 So if a person only has the predicate conviction and

25 no others and serves a 10-year sentence, that 15, 25

1   or lifetime period begins to run upon release from

2   incarceration.  If there's an intervening conviction

3   which results in incarceration, the clock stops during

4   the period of incarceration.

5           The grand jury in this case had to make a

6   determination as to whether or not this defendant had

7   a duty to report during the time frame from which the

8   allegation is set forth in the indictment, and they

9   voted true bill on this case.

10          So I would submit to the Court that the issue

11  of what tier he is is not at issue in this case.  The

12  grand jury has found that he was required to report.

13  I submit to the Court that he is at least a tier 2,

14  and under New Hampshire standards he's qualified as a

15  tier 3 and required to register for life.

16          If he's a tier 2, the 25 years certainly

17  extends beyond the base date from the date of

18  conviction -- if you take out the time that he spent

19  in prison on the original conviction -- without even

20  looking at intervening periods of incarceration.

21          The defendant has a continuing history of

22  criminal conduct starting in 1990, which is reflected

23  at paragraph 12 of this addendum, which corresponds

24  probably pretty closely to his release from prison.

25          He has convictions in '90 which resulted in

1  additional sentences, '93, '95, '95, '95, '96, a 1996

2  assault and battery final conviction again.

3  Threatening to kill conviction at paragraph 19 in

4  1996.  An assault and battery conviction in 1997.  A

5  threatening bodily harm in 2003.  Criminal threatening

6  in 2005.  A violation of protective order in 2005 for

7  which he pled guilty and was found guilty.  12 months

8  House of Correction, deferred, Carroll County District

9  Court.

10        He has a prior duty to report sex offender --

11  failure to report as a sex offender in New Hampshire,

12  which is reflected at paragraph 28.  He pled guilty

13  and was sentenced to jail at that point.

14        There's also a false report in 2006, as well

15  as a duty to inform change of address, which is in

16  2007, reflected at paragraph 32, which I'll represent

17  to the Court has been told to me that that duty to

18  inform change of address is duty to inform change of

19  address with respect to sex offender registration.

20  That was a guilty plea in 2007 which resulted in yet

21  another suspended House of Correction sentence.

22        He has a resisting arrest in 2007.

23  Disorderly conduct in 2007.  There are a number of

24  arrests which either did not result in convictions or

25  are unknown, but they're noteworthy and the Court

1  should take note of them.

2          In 1979 there was an armed robbery arrest

3  which was dismissed.  There was an assault, third

4  degree, in 1981, paragraph 39.  Disposition unknown.

5  An assault and battery domestic in 1996 which was

6  dismissed, as well as an assault and battery in 1999

7  which was filed, and on and on and on.

8          There are a number of restraining orders on

9  file with respect to this defendant in domestic

10  matters, one of which is currently in force now.  At

11  paragraphs 57 through 62 of the addendum there are a

12  list of restraining orders.  One name appears three

13  times.  There are other female names that appear one

14  time, and at paragraph 62 there appears to be a

15  restraining order that was entered on June 4, 2003,

16  which according to this remains active today.

17          The defendant has a clearly demonstrated

18  history of criminal conduct.  He has a penchant for

19  violent conduct.  He has a penchant for domestic

20  violence and for intimidating people verbally and

21  physically.

22          I think his criminal record, added to the

23  fact that when he was arrested he advised officers

24  that they were lucky he didn't have his gun and that

25  they should have shot him and his statements that he

1   will never register as a sex offender again, combined

2   with his demonstrated history of having failed to

3   register as a sex offender and been convicted of it in

4   the past, provides ample evidence for this Court to

5   find by clear and convincing evidence that he's a

6   danger to others in the community.

7           There probably hasn't been someone with a

8   history like this before this Court in the last six

9   months that demonstrates more of a danger to others in

10  the community.

11          Given the fact that with his criminal

12  history -- even though a conviction for a 2250

13  violation results in a relatively light prison

14  sentence, a person who has -- who is a tier 3 starts

15  at a level 16 under the guidelines.  A tier 2 starts

16  at 14.  I submit that my estimate under the guidelines

17  in this case suggest that the defendant will probably

18  spend more than four years in prison for this

19  conviction, and I submit that he will be convicted.

20          Looking at an additional multiple year

21  sentence, I submit, given this defendant's apparent

22  unstable history, he's certainly a risk of flight.

23          With respect to my amendment to include that

24  he's a risk to obstruct, I don't have any direct

25  evidence that he has intimidated or attempted to

1   intimidate any witnesses in this case, but I submit

2   that given his past history, which has included

3   witness intimidation and obstruction related charges,

4   he's a risk to obstruct and/or to intimidate a witness

5   if he learns who the witnesses are in this case, and

6   there will be at least one lay witness in this case

7   who is known to the defendant.

8          Thank you, your Honor, and I'm happy to

9   continue this hearing at a time that's convenient to

10  the Court and to Mr. Levin.

11         THE COURT:  You have ten minutes, Mr. Levin.

12  I'll let you go ahead now.

13         MR. LEVIN:  Okay.  This is going to be tough.

14  Your Honor, first of all, with regard to the

15  background of the case, it is true that Mr. Mahoney

16  has registered as a sex offender both in Massachusetts

17  and in New Hampshire, and I've seen copies that the

18  government has showed me of many separate

19  registrations that he has effected over the past

20  several years.

21         Many of those registrations have false

22  information on them about his triggering offense.  In

23  fact, I have one here in front of me that says the

24  date of the offense was 1991.  Attorney Huftalen

25  showed me one where it indicated the date of

1  conviction was 1988.

2          It has been unclear to the defendant what the

3  triggering offense was that required him to register

4  as a sex offender.  It was unclear to him until --

5  because at one point during the period that he was

6  required to register he was sent some information by

7  the Boston police telling him that there was a

8  voluntary compliance period when he should come down

9  and register as a sex offender, and in that packet it

10  indicated that the booking date for the triggering

11  offense, which was listed as aggravated rape and

12  kidnapping, was March 29, 1983.

13          If I could just show the Court the

14  documents -- your Honor, can I approach?

15          THE COURT:  Yes.

16          MR. LEVIN:  It's a document that indicates

17  March 29, 1983, and it has on it aggravated rape and

18  kidnapping, two counts.

19          This was something that he received from the

20  Boston Police Department.

21          At some point he received from this

22  Massachusetts Sex Offender Review Board an article --

23  a police report showing that on March 29, 1983, he was

24  arrested by the Boston Police Department for

25  aggravated rape and kidnapping and an article from the

1   newspaper also indicating that he was arrested for

2   aggravated rape and kidnapping, and in the article it

3   mentions his name, Brian Mahoney, and somebody has

4   written on the article -- it's a document that's

5   stamped at the top "Massachusetts Sex Offender Review

6   Board", "Seven Boston men charged in a Charlestown

7   gang rape", and it says, "Six co-defendants in court

8   serving sentence".  (Inaudible) of this report, and

9   that was the date of arrest for an aggravated rape and

10  kidnapping, and if I could show the Court these

11  documents, your Honor, and you will see at the top it

12  says August 22, 2005.

13          There's an article from a newspaper which

14  talks about aggravated rape and kidnapping charges,

15  and attached to that is a police report indicating

16  that he was arrested on March 29, 1983.

17          Now, there was such a case, and Mr. Mahoney

18  was apparently acquitted of aggravated rape and

19  kidnapping.  The case has been sealed, but Mr. Mahoney

20  this past summer was able to get from the Boston

21  Herald an article showing that he was acquitted of

22  this offense, and he has a letter from the librarian

23  of the Boston Herald dated July 26, 2010, which is

24  attached to an article from the Boston Herald

25  indicating that he was acquitted.

1          May I approach, your Honor?

2          THE COURT:  Certainly.

3          MR. LEVIN:  When Mr. Mahoney realized that he

4   had been required to register for an offense for which

5   he had been acquitted, the aggravated rape and

6   kidnapping charges, he went to Massachusetts to clear

7   up the warrants he had there for failure to register,

8   and there's a warrant from October 23, 2009.  May I

9   approach, your Honor?

10         THE COURT:  Yes.

11         MR. LEVIN:  And I'm showing the Court a copy

12  of his driving record that shows that there was a

13  warrant issued on October 23, 2009.

14         He went down to Massachusetts to clear those

15  warrants.  He had a hearing in November in I believe

16  Boston Municipal Court, and he was released November

17  16th once he was acquitted of that charge.  He was

18  released -- or the charges were dismissed or something

19  happened, and he was released on that charge.

20         It was shortly after that that he was

21  arrested on a warrant out of Dover.  At the time there

22  was a warrant out for his arrest, a warrant out of

23  Dover for failure to register, and there were some

24  articles in the newspaper where the court had -- there

25  was a wanted poster which apparently I guess was

1  released to the newspapers.  I have a copy of the

2  wanted poster here.  The wanted poster says that the

3  defendant was convicted for assault and rape but had

4  been arrested for, but not limited to, assault and

5  rape, assault with attempt to rape, charges which

6  don't appear on the record which the Court has in

7  front of her.

8          There were newspaper articles written about

9  him and the fact that he was wanted, including one

10  from WMUR where it indicates -- authorities say they

11  do not believe Mahoney is a danger to the community.

12  So at the time the warrant for Mr. Mahoney was issued

13  authorities apparently told the press he was not a

14  danger to the community.

15          (Beeping noise begins in courtroom)

16          THE COURT:  I have no idea what that is.  Do

17  you know what it is?

18          THE CLERK:  It's the computer.

19          THE COURT:  Why don't we do this.  Since this

20  is distracting and we don't know what the source of

21  this beeping is, would you like to do your sentencing

22  hearing and then come back and continue immediately

23  thereafter?

24          MR. LEVIN:  That would be fine, your Honor.

25          (Beeping noise stops)

1         THE COURT:  Well, except the beeping has

2    stopped.  Can I just ask you one factual question

3    before we break?

4         MR. LEVIN:  Okay.

5         THE COURT:  I understand your point with

6    respect to the misinformation that's apparently a

7    result of some problems with respect to pinning a

8    charge or conviction on Mr. Mahoney in Boston that he

9    was acquitted for.

10        MR. LEVIN:  As it relates to what happened

11   here.

12        THE COURT:  According to these documents.  My

13   question, though, is how does that affect the 1983

14   convictions for which -- for the rape conviction

15   specifically in September of '83 for which the

16   government is resting its indictment in this case on?

17   How does this affect that?

18        MR. LEVIN:  Well, my understanding is when he

19   was registered here -- as you'll see from the

20   registration forms, the 1983 registration was never

21   properly identified as the triggering offense.  There

22   are all these -- there's one that says the offense

23   happened in 1991.  There's one that says the

24   conviction was in 1988.  I haven't seen all of them,

25   but several of them appear to have different dates on

1   them that didn't line up with the 1983 conviction.

2           So it's unclear to me that he was ever -- I

3   know the government is saying now that that was an

4   offense for which he would have to register for, and

5   it may be, and it may be that he should be registered

6   for that offense but it doesn't appear that he was

7   ever properly registered for that offense either in

8   Massachusetts or in New Hampshire.

9           On the sexual offender website there was at

10  one time a photo of him with information that connects

11  to him and indicates an adjudication date of 9-23-83,

12  and the offense is an aggravated felonious sexual

13  assault which he was not convicted of.  He was

14  convicted apparently of assault with intent to rape,

15  or attempted rape, or something to that effect.  It's

16  unclear to me.  The actual indictment which I've seen

17  indicates -- I have it here somewhere -- I believe

18  assault with intent to rape but doesn't indicate the

19  age of any victim, and I know that the government is

20  alleging that the victim was under 16-years-old, or

21  16-years-old, something to that effect, but here it

22  just says the assault, one, and it gives the victim's

23  name with intent to commit rape upon her.  May I hand

24  that to the Court?

25           THE COURT:  Yes.  Certainly.

1          MR. LEVIN:  And all this is by way of

2     indicating to the Court that Mr. Mahoney has done some

3     research and has I think figured out that there were a

4     lot of anomalies and false information that may have

5     been passed back and forth between Massachusetts and

6     New Hampshire about what his triggering offense was,

7     and in August 2010 he wrote a letter to the chief

8     justice of the court in Massachusetts to point this

9     out, and in it he said, I'm not going to register

10    anymore for a crime that I was found not guilty for.

11          Okay.  When the government says he's

12    indicated that he will never register again, that's

13    not what he said.  He has said, I will never register

14    again for a crime that I was found not guilty for.  He

15    has never said that he wouldn't register for the crime

16    that he was found guilty for.

17          That letter was sent to the Massachusetts Sex

18    Offender Board, to the Department of Safety in

19    Concord, to the Department of Justice in Concord, I

20    think the U.S. Chief Justice Johnson, I don't believe

21    that's -- oh, that's in Massachusetts, and also to

22    Chief Justice Johnson and he gives his attorney's

23    address, and I can provide that to the Court, as well.

24          So I'm just -- the government paints a

25    picture of somebody who was required to register who

1  said, hey, I'm not going to register anymore and

2  disappeared.  That's not what Mr. Mahoney has been

3  doing.  He has been trying to clear his name.  That's

4  what he's been doing for the past several months and

5  that's why he went down to Massachusetts and that's

6  why he has filed a lawsuit against the Department of

7  Safety and Rockingham County Superior Court.  May I

8  approach, your Honor?

9          THE COURT:  Certainly.

10         MR. LEVIN:  Trying to get his name off the

11 Sex Offender Registry Board for a crime that he was

12 acquitted of.

13         So that's been where he's at.  Other than

14 that he's been compliant, and it seems to me that

15 there were some times when he didn't -- there was one

16 offense that I think -- a duty for failing -- or

17 failure to report that he has pled guilty to, but that

18 was because he could not prove that he had been

19 acquitted of this charge.  They were telling him that

20 he had been convicted of this charge.  He couldn't

21 prove it because the matter was sealed.

22         He finally was able to get it from the

23 newspaper, and he had Attorney Blumenthal as an

24 attorney.  Apparently on the day he was in jail, on

25 the day of the trial she didn't have the paperwork she

1   needed to prove it, and so he ended up pleading guilty

2   to that charge.

3           But consistently he has raised this issue,

4   raised it in Massachusetts in several courts, and

5   apparently those charges were either dismissed or

6   withdrawn or something, and it's something that he's

7   been working on consistently.  I mean there's so much

8   documentation.

9           Also, when the government says that this

10  isn't an identity hearing and goes on about the

11  fingerprints, et cetera, et cetera -- you know, when

12  we came in here for a hearing last week they had given

13  me a printout of a criminal record which showed

14  criminal entries for every year of the man's life,

15  even those years when he was supposedly serving a

16  sentence in Lowell, throughout the '80s, and I said,

17  this can't be true.  He was serving 8 to 12 years in

18  Walpole.  How could he have picked up driving offenses

19  and drug offenses all throughout the late '80s?

20          Well, it became clear that there was another

21  Brian Mahoney, and I believe I know the Brian Mahoney.

22  I think I represented him here in this court.  He's

23  serving 20 years for a heroin sale case with death

24  resulting.  I believe that's the same Brian Mahoney

25  because those are the records that were subsequently

1  given to me.

2          Probation did a great job of separating out

3  the two Brian Mahoneys, and the record that you have

4  here today is supposedly queued to this defendant's

5  fingerprints, but we never suggested that there was a

6  misidentification of this defendant.  What we were

7  saying is that there were several Brian Mahoney

8  records that were along with this.  And in fact I can

9  show you, your Honor, a document from the

10  Massachusetts Sex Offender Registry Board that has the

11  other Brian Mahoney, which is proof, if I may

12  approach, that the other Brian Mahoney's identity was

13  confused with this Brian Mahoney.

14          You can see at the top of the page it says,

15  "Brian Mahoney, Massachusetts Sex Offender Registry

16  Board".  It's dated August 22, 2005, just like the

17  other documents that were part of his record, and

18  that's apparently the Brian Mahoney that he was

19  confused with.

20          It may be one of the Brian Mahoneys that he

21  was confused with because there's another Brian

22  Mahoney, I believe, who is a Brian E. Mahoney, whose

23  records were also confused with the defendant, and I

24  have that Brian Mahoney's record, as well, your Honor,

25  Brian Edward Mahoney, as given to me by Probation

1  which was run by the Marshal Service.  He has a

2  different date of birth.  May I approach?

3          THE COURT:  Sure.

4          MR. LEVIN:  So that's a Brian Mahoney with a

5  different date of birth, and that was provided to me

6  by the government -- the other Brian Mahoney whose

7  records were mashed in with this Brian Mahoney's.

8          THE COURT:  How does all of that affect the

9  detention hearing in terms of the indictment that's

10  before me and the record that has been matched with

11  fingerprints that the government is relying on?  The

12  government hasn't relied on any conviction in Mass for

13  which he's been acquitted.  So how does this affect --

14  at least for today's hearing, how does this affect a

15  bail determination?

16          MR. LEVIN:  Well, it affects the bail

17  determination in the sense that I think it paints a

18  very different picture than the government is

19  painting.

20          This is a defendant who has been compliant,

21  has registered up until the point that he realized

22  that he was registering for an offense for which he

23  had been acquitted of -- the wrong offense.

24          At that point he has been trying to sort this

25  out.  He hasn't been hiding from anyone.  He hasn't

1  flown or tried to flee at all.  He has been trying to

2  sort this matter out and clear his name.

3          During that period of time he's been in touch

4  with everybody who would want to know where he is,

5  including the Department of Safety, the Massachusetts

6  Sex Offender Registry Board.  He's been in court.

7  He's filed lawsuits in the courts to try to clear his

8  name.  He hasn't been a flight risk.  He hasn't

9  committed other offenses during that period of time.

10 In fact, he's been in court trying to clear his name,

11 and in addition, he never indicated that he would

12 never register as a sex offender, which would be a

13 factor the government relied upon to show that he's a

14 flight risk.

15         In fact, he said, "I will not register for a

16 sex offense that I have been acquitted of".  That was

17 exactly his words, and that was the letter he sent to

18 the State of New Hampshire and to Massachusetts.

19         So with regard to that, that's how it would

20 relate to whether or not he's a flight risk.

21         Whether or not he's a danger, it appears, I

22 guess, because I can't -- at this point I've been

23 given so many different records relating to Brian

24 Mahoney by the government, a lengthy one on Friday

25 which was admittedly not his record or not completely

1   his record, and then the one we've received today.  It

2   appears that he may have some criminal convictions on

3   it.  It doesn't appear that he has anything in the

4   last five years that would suggest he's a flight risk.

5   In fact, when the case was initially put out in the

6   press authorities indicated that he was not a danger

7   to the community.

8          He does have a place to live in Dover, New

9   Hampshire.  I spoke to Kim -- Kimberly Doyle, who is

10   his girlfriend, at 14 Adelle Drive.  She did indicate

11   that she loves him.  She wants him with her.  She's

12   hoping to see him today.  She's apparently on SSI, as

13   is the defendant for an injury that he incurred about

14   fifteen years ago and so -- but he does have a place

15   to live.  The Court could put him on electronic

16   monitor.  He would comply with the Court's conditions.

17          He has been released on bail many times

18   before, and he has complied with the Court's

19   conditions.  I don't see any failed violations on his

20   record, as the government has represented, but I think

21   it's important for context that the Court understand

22   that this is a defendant who has been trying to clear

23   his name.  He feels that he was made to register under

24   false pretenses under offenses for which he has been

25   acquitted of, and he was happy to do that for a while

1   until he was able to sort it out and figure out that

2   he had been made to register for offenses for which he

3   had been acquitted of.

4         THE COURT:  What about the statement to the

5   Deputy U.S. Marshal about, you know, if I had my

6   gun --

7         MR. LEVIN:  He was released on the 16th.  He

8   was arrested subsequently like a week later.  He

9   denies making any statements about guns.  I don't

10  think you will see any gun offenses on his record or

11  felon in possession charges or anything to that

12  effect.  He didn't have a gun.  They can go to his

13  house and look for guns.  There are no guns there.

14        What he said to the officer probably is the

15  same thing he's been saying to everyone, "I'm not

16  going to register for an offense that I've been

17  acquitted of".

18        He's been arrested over and over and over

19  again for failure to register just in the past few

20  months, and apparently Boston realizes its mistake but

21  now he's facing a much more serious charge for the

22  same offense.

23        MR. HUFTALEN:  May I briefly?

24        THE COURT:  Certainly.

25        MR. HUFTALEN:  Mr. Levin made an

1  understatement when he said he may have some

2  convictions.  Based on my count, he has 34 convictions

3  that have been definitively tied to his fingerprints

4  and him, and he doesn't dispute those.  One of those

5  convictions there's a predicate that requires that he

6  register as a sex offender.

7        Notwithstanding Mr. Levin's argument, which

8  may be a good jury argument or a bad jury argument,

9  that some of the dates on the New Hampshire forms were

10 wrong, this defendant, I'll represent to the Court

11 because I have it in front of me, has signed off on

12 registration forms in New Hampshire acknowledging that

13 the triggering conviction was a conviction that

14 resulted on September 23, 1982, for an offense that

15 took place on February 12, 1982.  He signed that as

16 recently as April 6, 2010.  That is the conviction

17 that's reflected in his record.

18        The conviction -- oh, excuse me.  The

19 acquittal that Mr. Levin has imputed to his client I

20 assume is an acquittal that's reflected in a Boston

21 Herald news article that Mr. Levin gave me, which is

22 dated, interestingly, May 25, 1984, which says, "Jury

23 Clears Six Men in Teen Rape Case", and one of them is

24 a Brian Mahoney.

25        Based on the DOC records from Massachusetts,

1  Mr. Mahoney was in prison serving his prison sentence

2  for the assault and battery and attempted rape that he

3  was convicted of in Suffolk County on the date this

4  news article came out rejoicing that he had been

5  acquitted at trial.

6        Now, there's nothing in his record that

7  reflects that he was ever arrested or acquitted on the

8  charge that's reflected in the newspaper article that

9  Mr. Levin gave you and the one that I just referenced.

10       There are probably more than two -- more than

11  three Brian Mahoneys.  I know of one Brian Mahoney who

12  was a drug defendant in this court.  I spoke with the

13  defense attorney who represented him last night.  I

14  know that there's another Brian Mahoney still whose

15  information was commingled with this defendant's, and

16  yes, that information was imputed to this defendant in

17  his criminal record.  That has been rectified and

18  clarified, and the criminal record today of this

19  defendant is more substantial than this combined

20  criminal record that had been presented to Mr. Levin

21  the other day.

22       As to whether any law enforcement authorities

23  told WMUR that the defendant wasn't a danger to

24  anybody, I don't know who would have said it.  I don't

25  care who would have said it.  I'm here today saying

1   this person with 34 convictions who said -- and I will

2   represent that the report from the Deputy U.S. Marshal

3   who was involved reflects that Officer Nasson (ph.) of

4   the Boston Police Department would testify that this

5   defendant said, and I quote, "I will never register.

6   If I get out today, tomorrow or whenever, I will never

7   register as a sex offender", followed by, "You should

8   have shot me.  You're lucky I didn't have my gun with

9   me".

10          Now, it may be that the defendant while in

11  prison or sometime thereafter received a copy of a

12  news article that said, hey, you were acquitted, and

13  maybe in his mind he's convinced himself that he was

14  acquitted and that he shouldn't have served the eight

15  years at Walpole that he did, but that's not the fact.

16  That isn't what he's contesting.  He's not contesting

17  through his lawyer that he wasn't convicted of the sex

18  offense, which is the triggering offense, and he's not

19  contesting the 34 convictions, many of which are

20  violent convictions, and he's not contesting any of

21  the domestic violence related protective orders that

22  were taken out against him.

23          The man is a danger.  He may be more of a

24  danger than we believe based upon his misguided belief

25  that he has somehow been mistreated by the system and

1   has never been required to register.  He's been

2   required to register since he was convicted in 1983,

3   and he's required to register today.

4           He's acknowledged it in New Hampshire on

5   numerous occasions.  He didn't call the authorities in

6   New Hampshire and say, I think there's a mistake.  I

7   would like to clear this up.  I pled guilty numerous

8   times and have gone to jail numerous times for failing

9   to register, which has been a big mistake.  Please

10  help me.

11          Instead what he did was he left the

12  jurisdiction.  He violated the conditions that were

13  imposed upon him whereby he was required to notify any

14  change of address and he was required to update his

15  sex offender registration.  Thank you.

16          THE COURT:  Anything further, Mr. Levin?

17          MR. LEVIN:  I just want to show the Court one

18  document.  This is a page from one of his criminal

19  records showing a charge of failure to register as a

20  sex offender was dismissed.  It's an '04 charge, but

21  he's been to court on this numerous times and it's

22  been determined that the original registration was

23  erroneous, and that's what he's been trying to

24  convince the courts of ever since.

25          He never indicated that he wouldn't register,

1  and you've got the letter in front of you that says,

2  "I won't register for something that I was acquitted

3  of".

4          The argument is that what they had him

5  register for was not the offense that they should have

6  had him register for, essentially.

7          THE COURT:  What about the April 6, 2010,

8  registration that he apparently signed?

9          MR. LEVIN:  Well, that says aggravated

10  felonious sexual assault, and the Court has the

11  documents in front of it.  There's no indication in

12  there that the victim was under 16.  That it was a

13  valid AFSA.  It just says assault with intent to rape

14  so and so.

15          Even if that is a conviction attributable to

16  him -- and I'll take the government's word that it is

17  at this point -- number one, there's no indication

18  that it's an aggravated felonious sexual assault, tier

19  3 offender, and number two, you know, because on the

20  forms it says -- they have him check off that the

21  victim was under 16 or age 16 in number, but there's

22  no indication of that there.  And number two, that

23  wasn't the offense that they initially had him

24  register for.  It was an aggravated rape and

25  kidnapping.

1          MR. HUFTALEN:  I thought Mr. Levin understood

2     how these classifications come about, and apparently

3     he doesn't.  He wasn't convicted in New Hampshire so

4     there isn't a New Hampshire RSA that he can be said to

5     have violated.  So what happens is the New Hampshire

6     State Police have to look at the conviction in the

7     jurisdiction where the convictions took place and they

8     have to compare it to sex offenses in New Hampshire

9     and do the best they can.

10          They conform them and say we are treating

11     your conviction from Massachusetts in New Hampshire --

12     we're treating you, based upon your conviction in

13     Massachusetts, in New Hampshire as if you had been

14     convicted of aggravated felonious in New Hampshire

15     because based on our review of the facts of your

16     conviction that's the closest associated or the

17     closest in -- that's the closest looking charge that

18     we have in New Hampshire.

19          Once they made that determination they then

20     said because we're considering you to be the

21     equivolent of an aggravated felonious sexual assault

22     for purposes of New Hampshire reporting requirements,

23     you must report for life.

24          Now, federally it doesn't matter that he's

25     required to report for life in New Hampshire.

1    Federally what has to be done is -- again, you look at

2    the underlying conviction and then you compare it to

3    federal convictions, and there are definitions that

4    say a tier 2 sex offender is a person who is not a

5    tier 1 and who has a conviction similar to or worse

6    than -- and then there are enumerated crimes.

7            So for purposes of sentencing in federal

8    court the judge has to determine whether it's a tier

9    1, 2 or 3 because the guidelines are higher as you go

10   up, and for registration purposes -- for the length of

11   registration the grand jury has to make a

12   determination that it is within the time period that

13   is required, and to the extent it may be less than 15

14   years, the federal grand jury has to make a

15   determination that it is a tier 2.  If it's less than

16   25, they need not make a determination that it's a

17   tier 3, but if it's more than 25 they would have to

18   make a determination that it's a tier 3 because

19   otherwise a person wouldn't be required to register

20   and couldn't be convicted of a federal offense.

21           Now, they'll be saying that he was

22   convicted of aggravated felonious sexual assault.

23   What we're saying is the process by which states

24   use -- and it's not unique to New Hampshire -- is to

25   compare the underlying crime and best fit it to a

1  jurisdiction where you have moved to for purposes of

2  the state reporting requirements.

3          THE COURT:  Anything further?

4          MR. HUFTALEN:  No.  Thank you.

5          THE COURT:  Mr. Levin?

6          MR. LEVIN:  Nothing further, your Honor.

7          THE COURT:  Okay.  I have weighed all of the

8  evidence presented, the proffers made, and I've viewed

9  the exhibits presented by defense counsel in this

10 case, all of which point up to some serious confusion

11 on charging Mr. Mahoney with various things that he

12 may not have been justifiably charged with.

13         However, for today this is not a preliminary

14 hearing on a complaint.  This is not an identity

15 hearing.  This is a hearing to determine whether or

16 not Mr. Mahoney should be detained pending trial on an

17 indictment that charges Mr. Mahoney with something he

18 was convicted of, and the government has moved for his

19 detention on the basis of dangerousness under

20 3142(f)(1)(E).  And with respect to dangerousness the

21 government has the burden of proving that by clear and

22 convincing evidence, and I find that the government

23 has met that burden.

24         The government has provided a fingerprint

25 matching criminal record that is extensive and reveals

1    a history of serial criminal offenses just about every

2    year that the defendant has been alive, and the

3    history of criminal offenses include violent offenses.

4    As the government tallied, it is 34 convictions in

5    this record for which there has been a fingerprint

6    match for this Brian Mahoney in this courtroom and for

7    the Brian Mahoney that is charged with the underlying

8    sexual offense in September of 1983.

9         The criminal record is overwhelming and is of

10   great concern to the Court in terms of the defendant's

11   dangerousness to the community.

12        The post-arrest statements -- I think the

13   defendant has at least refuted the probative value of

14   the statement that he made with respect to never

15   reporting.  I think that the defendant has shown that

16   that particular statement may have been motivated by

17   the defendant's concern about having been falsely

18   tagged.

19        However, the other statement that, "You're

20   lucky I didn't have my gun with me", is concerning and

21   it's consistent with somebody with this kind of

22   criminal record and that is troubling to the Court, as

23   well, in terms of the dangerousness prong of this

24   test.

25        The history of failing to register is

1  concerning, as well, but the criminal history and the

2  record of violence is the Court's main concern.

3        With respect to risk of flight, I think

4  defense counsel has rebutted that.  I'm not persuaded

5  on risk of flight, but I am persuaded that the

6  government has met its burden under the dangerousness

7  prong and -- yes?

8        MR. HUFTALEN:  You have just said you believe

9  the defense has rebutted that.  I know that was a

10 misstatement by the Court and the Court understands

11 that there's no presumption with respect to risk of

12 flight.  I just wanted to make sure the record was

13 clear.

14       THE COURT:  That's correct.  I think what the

15 defendant offered through his defense counsel

16 successfully persuades me, however, that there really

17 is no risk of flight, and I don't find that the

18 government has met its burden under 3142(f)(2)(A) or

19 either prong of (f)(2)(B).

20       However, on dangerousness, I do find the

21 government has satisfied that burden of proof, and by

22 clear and convincing evidence I find that, Mr.

23 Mahoney, you are a danger and that no conditions will

24 reasonably assure the safety of the community, and so

25 you are remanded to the custody of the United States

42

1   Marshals.

2          (Conclusion of hearing 11:56 a.m.)

3

4

5

6                  C E R T I F I C A T E

7

8

9          I, Susan M. Bateman, do hereby certify

10   that the foregoing transcript is a true and accurate

11   transcription of the within proceedings, to the best

12   of my knowledge, skill, ability and belief.

13

14

15   Submitted: 3-14-201    *Susan M. Bateman*
                            **SUSAN M. BATEMAN, LCR, RPR, CRR**
16                          LICENSED COURT REPORTER, NO. 34
                            STATE OF NEW HAMPSHIRE
17

18

19

20

21

22

23

24

25