UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|               |   |         |
|---------------|---|---------|
| UNITED STATES |   |         |
| v.            |   | 11-CR-06 |
| BRIAN MAHONEY |   |         |

DEFENDANT'S MOTION TO DISMISS
DUE TO THE LACK OF A VALID RULE
MAKING SORNA APPLICABLE TO PRE-ACT OFFENDERS
(With Incorporated Legal Argument)

Defendant Brian Mahoney moves to dismiss the indictment against him for failing to register in violation of the Sex Offender Registration And Notification Act ("SORNA" or "the Act"), 42 U.S.C. §16913(c) and 18 U.SC. §2250(a). Dismissal is required because Mahoney is alleged to be a pre-Act offender—having allegedly been convicted of a "sex offense" twenty-six years before SORNA became effective—and the failure to register is alleged to have occurred before the Act's registration obligations were extended to pre-Act offenders.

As explained below, the Act empowered the Attorney General to promulgate substantive rules providing if, when and how SORNA's registration requirements would be imposed on pre-Act offenders. This motion requires the court to determine whether the Attorney General promulgated a valid substantive rule prior to the date of Mahoney's alleged offense.

INTRODUCTORY PROCEDURAL NOTE

1. At defendant Mahoney's insistence, both undersigned counsel have moved to withdraw. Both counsel have also notified the court that Mahoney wishes to proceed pro se. The court is in the process of determining Mahoney's competency to stand trial and to represent himself pro se.

2. Under these circumstances, when counsel's role as authorized agent for a client has been called into question, it would ordinarily be inappropriate for counsel to file motions on the client's behalf.  However, unless and until counsel's representation is terminated or reduced to stand-by status, counsel has an ethical, professional and indeed Constitutional obligation to raise potentially dispositive defenses.  See, N.H. R. Prof. Conduct 1.3 (Diligence); 1.14 (Client With Diminished Capacity); 3.2 (Expediting Litigation); ABA Standards For Criminal Justice, The Defense Function, Standard 4-3.6 (Prompt Action To Protect The Accused);  U.S. Constitution, Amendment VI (establishing the right to effective assistance of counsel).

3. In any event, any theoretical conflict between Mahoney's wishes and counsel's obligations is muted, because the litigation of this motion cannot affect any of Mahoney's trial rights or otherwise hinder any litigation strategy that he may choose.  Further, waiting to file this motion would prejudice Mahoney because his trial date is fast approaching.  The government will need time to respond to the motion and the court will then need to consider it.  Waiting any longer could prejudice Mahoney's speedy trial rights.

## FACTS

4. The facts set forth in this motion are taken from the Indictment and the Government's Objection To The Defendant's Motion To Dismiss (for failure to allege the offense with adequate factual specificity) (Docket Document 25), which the court has treated as bill of particulars.  See, Order On Motion To Dismiss dated July 15, 2011.  To be absolutely clear, nothing in this motion should be taken as an admission to any fact or element.

5. The government alleges:

(A)  That, on September 23, 1983 Mahoney was convicted in a Massachusetts Superior Court of Assault With Intent To Rape;

(B)  That the Massachusetts crime of Assault with Intent To Rape is a "sex offense" within the meaning of SORNA;  <u>See</u>, 42 U.S.C. §16911(1) and (5);

(C)  That Mahoney most recently registered in New Hampshire as a sex offender in March, April, May and June 2010 (each registration representing a change from one New Hampshire address to a second New Hampshire address);

(D)  That on or about July 31, 2010 Mahoney travelled in interstate commerce and established a new residence in Massachusetts; and

(E)  That Mahoney failed to file a change of address registration form with the authorities in New Hampshire within three days of establishing a new residence in Massachusetts, as required by 42 U.S.C. §16913(c).

LEGAL ARGUMENT

I.  <u>SORNA DOES NOT APPLY TO PRE-ACT OFFENDERS UNTIL THE ATTORNEY GENERAL SO SPECIFIES</u>

6. SORNA's registration requirements were signed into law on July 27, 2006.  P.L. 109-248.  In <u>Reynolds v. United States</u>, 132 S.Ct. 975, 979 (2012),  the Supreme Court held that "the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies."  In reaching this result, the Court relied on the text of the Act which delegated this authority to the Attorney General.  <u>See</u>, 42 U.S.C. §16913(d):

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offender.

7. Thus, under <u>Reynolds</u> a pre-Act offender, such as Mahoney, cannot be guilty of a SORNA registration offense unless he commits it after the effective date of a rule issued by the Attorney General applying SORNA to pre-Act offenders.

8. Reynolds thus overruled prior First Circuit precedent holding that SORNA's registration requirements were self-executing as to pre-Act offenders and, that no further no action by the Attorney General was required to criminalize knowing SORNA violations by pre-Act offenders.  See, United States v. DiTomasso, 621 F.3d 17, cert. granted, judgment vacated, 132 S.Ct. 1533 (2012); United States v. Stevens, 640 F.3d 48 (1st Cir. 2010), cert. granted, judgment vacated, 132 S.Ct. 1739 (2012); United States v. Gagnon, 621 F.3d 30 (1st Cir. 2010), cert. granted, judgment vacated, 132 S.Ct. 1533 (2012)

## II. REYNOLDS RESERVED THE QUESTION OF WHETHER OR WHEN THE ATTORNEY GENERAL PROMULGATED A VALID RULE

9. In Reynolds, the U.S. Supreme Court expressly declined to decide whether and when the Attorney General had issued a valid rule.  Reynolds, 132 S.Ct. 975, at 984.  The Court noted that the Attorney General promulgated an Interim Rule on July 27, 2007 that purported to impose SORNA's registration requirements on pre-Act offenders.  Reynolds, 132 S.Ct. at 979.  However, the appellant in Reynolds claimed that the Interim Rule could not be enforced because it was issued in violation of the Administrative Procedure Act ("the APA"), 5 U.S.C. §553.  Id.  More particularly, the Interim Rule was issued without "notice and comment" and the appellant argued that the Attorney General lacked "good cause" to dispense with these safeguards.  Reynolds, 132 S.Ct. at 979.  The Court of Appeals declined to address this issue (believing, incorrectly, that the validity of the Interim Rule made no difference).  The Supreme Court refused to weigh in:

> Whether the Attorney General's Interim Rule sets forth a valid specification consequently matters in the case before us.  And we reverse the Third Circuit's judgment to the contrary.  We remand the case for further proceedings consistent with this opinion.

Reynolds, 132 S.Ct. at 984.  See also, Carr v. United States, 130 S.Ct. 2229, 2234, fn. 2 (2010) ("We similarly express no view as to whether § 72.3 [the Interim Rule] was properly promulgated[.]")

10.  The Attorney General published rules that discussed the effect of SORNA's registration requirements on pre-Act offenders on no fewer than four different dates:

- (A)  On February 28, 2007, the Attorney General promulgated an Interim Rule ("**the Interim Rule**"), 72 Fed.Reg. 8897 (2007) (codified at 28 CFR § 72.3), which purported be immediately effective;

- (B) On May 30, 2007, the Attorney General published proposed guidelines from the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("**proposed SMART Guidelines**"), 72 Fed.Reg. 30210 (2007);

- (C) On July 2, 2008, the Attorney General published **final SMART Guidelines**, 73 Fed.Reg. 38030 - 38063 (2008), which purported to be immediately effective;

- (D) On December 29, 2010, the Attorney General published a final rule ("the Final Rule). 75 Fed. Reg. 81849, 28 C.F.R. 72., which became effective on January 28, 2011.  The Final Rule adopted the Interim Rule on a permanent basis.

11.  Because Mahoney's offense was allegedly committed no earlier than July 31, 2010, he is entitled to dismissal of the indictment unless the Attorney General promulgated a valid rule before this date.  **Thus, Mahoney can only be guilty if either the Interim Rule or the SMART Guidelines, or both were valid substantive rules, imposing criminal liability on pre-Act offenders for failing to register.**  The validity of the Final Rule is not at issue in this motion.

### III.  THE INTERIM RULE WAS NEVER VALID BECAUSE IT WAS ISSUED IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

12.  Background:  As noted above, the Attorney General promulgated the Interim Rule on February 28, 2007.  The Interim Rule was clearly intended to make SORNA's registration requirements applicable to all pre-Act offenders:

> The requirements of the Sex Offender Registration and Notification Act

5

> apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.

28 C.F.R. §72.3. The Rule purported to become effective upon publication, without any pre-publication notice or opportunity for public comments. 72 Fed. Reg. 8897.

13. Ordinarily, the APA requires advance publication and the opportunity for public comments prior to the promulgation of a substantive rule. 5 U.S.C. §553(b) and (c). Further, the agency issuing the rule must (a) allow the public to "participate in the rule making through submission of written data, views or arguments with or without opportunity for oral presentation" and must (b) "consider" such public comments prior to promulgating the rule. 5 U.S.C. §553(c).

14. However, the APA contains an exception to the notice and comment requirements for "good cause." 5 U.S.C. §553(d)(3). The Attorney General claimed that the Interim Rule could be promulgated without notice or comment under this exception:

> The implementation of this rule as an interim rule, with provisions for post-promulgation public comments, is based on the ''good cause'' exceptions found at 5 U.S.C. 553(b)(3)(B) and (d)(3), for circumstances in which ''notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.'' 5 U.S.C. 553(b)(3)(B).
>
> * * *
>
> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements— and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required— to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been

> registered and tracked as provided by SORNA. This would thwart the legislative objective of ''protect[ing] the public from sex offenders and offenders against children'' by establishing ''a comprehensive national system for the registration of those offenders,'' SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.
>
> It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).

15. <u>Circuit Split</u>: So far, at least two U.S. Courts of Appeal have rejected the Attorney General's reasoning and held the Interim Rule to be invalid and ineffective because the "good cause" exception did not apply. <u>See</u>, <u>United States v. Valverde</u>, 628 F.3d 1159, 1165 (9th Cir. 2010) ("…[T]he Attorney General's statement accompanying the interim rule provided no rational justification for why complying with the normal requirements of the APA would have resulted in a sufficient risk of harm to justify the issuance of the February 28, 2007 retroactivity determination on an emergency basis."); <u>United States v. Cain</u>, 583 F.3d 408, 424 (6th Cir.. 2009) (holding that a pre-Act offender's criminal liability could not rest on the Interim Rule due to the "failure to allow advance public participation and the failure to give advance notice" as required by the APA). <u>See</u> <u>also</u>, <u>United States v. Cotton</u>, 760 F. Supp.2d 116, 131 (D.D.C. 2011) ("…[T]his Court concludes that the February 28, 2007 interim rule was not issued in accordance with the APA" and did not, therefore, impose SORNA registration requirements on pre-Act offenders).

16. Two other U.S. Courts of Appeal have upheld the Interim Rule, but they have done so by non-unanimous panel decisions. <u>See</u>, <u>United States v. Gould</u>, 568 F.2d 459, 470 (4th Cir. 2009) (upholding the Interim Rule with one judge dissenting "[b]ecause the Attorney General lacked sufficient justification for complying with the APA's notice and comment requirements");

United States v. Dean, 604 F.3d 1275, 1282 and 1287 (11th Cir. 2010) (upholding the Interim Rule with one judge concurring in the result, but opining that that "the Attorney General failed to show good cause to avoid notice and comment").

17. Analysis: The First Circuit has not yet, to counsel's knowledge, addressed the issue. However, it has squarely held that the "good cause" exception to the APA's notice and comment requirement must be "narrowly construed." Levesque v. Block, 723 F.2d 175, 184. (1st Cir. 1983); Kollett v. Harris, 619 F.2d 134, 145 (1st Cir. 1980). Cf: Utility Solid Waste Activities Group v. E.P.A., 236 F.3d 749, 754 (D.C. Cir. 2001) ("The 'good cause' exception is to be narrowly construed and only reluctantly countenanced …The exception is not an 'escape clause; its use 'should be limited to emergency situations.") (internal quotation marks and citations omitted).

18. The exception only applies when notice and comment is "impracticable, unnecessary, or contrary to the public interest." Kollett, 619 F.2d 134, 144-145. Such circumstances are far and few between:

> 'Impracticable' means a situation in which the due and required execution of the agency functions would be unavoidably prevented by its undertaking public rule-making proceedings. 'Unnecessary' means unnecessary so far as the public is concerned, as would be the case if a minor or merely technical amendment in which the public is not particularly interested were involved. 'Public interest' supplements the terms 'impracticable' or 'unnecessary'; it requires that public rule-making procedures shall not prevent an agency from operating and that, on the other hand, lack of public interest in rule-making warrants an agency to dispense with public procedure."

Kollett, 619 F.2d at 145.

19. One ground for "good cause"—that notice and comment is "unnecessary"—can be deal with summarily. The Interim Rule essentially established a new criminal offense for pre-Act offenders who fail to register, see, Cain, 583 F.3 at 422 ("the regulation imposes a new

8

obligation, on pain of severe criminal sanctions"). Thus, it is not a "minor or merely technical amendment," such that public comment is "unnecessary." Kollett, 619 F.2d at 144-145. See , Cotton, 760 F.Supp.2d at 130 ("Where defendants face felony charges and prison sentences of up to ten years, as is the case here, adherence to the procedural requirements of the APA is even more critical.")

20. The remaining two grounds—i.e. that notice and comment would either be impractical or contrary to the public interest—are sufficiently similar to be analyzed together. The Attorney General opined that immediate action was necessary for two reasons:

-To eliminate uncertainty about the Act's requirements; and

-To protect society from unregistered sex offenders.

As explained below, neither of these reasons supports a finding of "good cause" based on "impracticability" or "public interest" grounds.

21. To say that there is a need to eliminate uncertainty is to say nothing more than that there is a need for regulations in the first place. See e.g. Cain, 583 F.3d at 421:

> The Attorney General argued that forgoing notice and comment was "necessary to eliminate any possible uncertainty" about the application of SORNA. But a desire to provide guidance to regulated parties is not sufficient to show good cause to bypass the notice and comment provisions of the APA. A desire to provide immediate guidance, without more, does not suffice for good cause. …Good cause to suspend notice and comment must be supported by more than the bare need to have regulations…. Otherwise the good cause exception would swallow the rule. … In any event, the "elimination of uncertainty" argument misses the mark for two additional reasons. When Congress enacted SORNA, it elected both to delegate regulatory authority to the Attorney General and to decline to bypass the APA's requirements, with the natural consequence that some period of uncertainty would follow while the Attorney General conducted regulatory procedures. And the Attorney General himself gave no explanation for his own seven-month delay in issuing regulations, which doubtless significantly contributed to any uncertainty.

(internal quotations, bracketing and citations omitted). See also, Valverde, 628 F.2d at 1166:

9

>There is little if any merit in the Attorney General's contention that it would have frustrated needed guidance about SORNA's retroactive applicability to have waited for notice and comment before issuing a final version of the interim rule. The Attorney General had already let seven months go by after SORNA's enactment before he issued the interim rule on February 28, 2007, and he gave no explanation for why immediate clarification was necessary. He cited no crisis of confusion about whether SORNA applied to pre-enactment offenders and no reason whatsoever to support an urgent need for guidance concerning the reach of the Act's registration requirements. That Congress, in delegating the authority to the Attorney General to determine SORNA's retroactive applicability, declined to eliminate the requisite compliance with the APA's procedures suggests that it did not find a need for immediate determinations by the Attorney General sufficient reason to circumvent public participation in the rulemaking process.

22. Further, as the dissenting judge in Gould recognized, the need for immediate clarification is entirely contradicted by the Attorney General's solicitation of post-promulgation public comments:

>To the extent the Attorney General believed that delay must be avoided to "eliminate any possible uncertainty about the applicability of the Act's requirements" (particularly for jurisdictions considering whether to implement SORNA's requirements), he significantly undercut this rationale by requesting post-promulgation comments on 28 C.F.R. § 72.3. If post-promulgation input was solicited out of a genuine interest in considering the public's views regarding the applicability and implementation of SORNA, it would have made considerably more sense for the Attorney General to have requested the comments prior to promulgating the interim rule, as the APA requires. This is especially true because the possibility of an alteration to the interim rule after its promulgation increases rather than eliminates uncertainty.

Gould, 568 F.3d at 479.

23. The second proffered justification—public safety—is equally unavailing. "In offering this public safety justification, the Attorney General did little more than restate the general dangers of child sexual assault…[h]e gave no reason why the Act's requirements should be made retroactively applicable on an emergency basis when Congress had declined to do so." Valverde, 628 F.2d at 1167. The Attorney General's bald conclusion of a public safety emergency was not backed up by any facts. The Interim Rule did not cite increased reports of

10

sex offenses committed by pre-Act offenders, or under-prosecution or under-enforcement of state regulatory regimes against pre-Act offenders. Id., citing 72 Fed.Reg. at 8896-97. Indeed, the Attorney General did not point to any specific fact or circumstance bearing on public safety, let alone to one that had changed since Congress delegated its rulemaking authority in SORNA. Id.

24. Further, the Interim Rule did not actually impose a registration requirement on any sex offender who was not already subject to state registration. SORNA does <u>not</u> require sex offenders to register with the federal government; it requires them to register with *state* authorities, and they can only do this to the extent that *state* law imposes a registration requirement. 42 U.S.C. §16913. Enacting the Interim Rule on an emergency basis did not increase, even by one, the number of sex offenders required to register under state law. It merely allowed for the possibility of federal as well as state prosecution for failing to register under state law. 18 U.S.C. §2250. <u>See</u>, <u>Gould</u>, 568 F.3d at 478 (Michael, J dissenting). ("[T]he Act did not have the immediate effect of compelling any additional sex offenders to register; nor did it provide any additional registration information either to states or to the federal government. The announcement of the rule merely allowed the federal government to prosecute under SORNA sex offenders who were currently violating state registration laws and thus were already subject to prosecution under existing state laws.").

25. Thus, whatever the overall public safety benefit of SORNA in the long run (and that is matter worthy of considerable debate in other forums), in the short run the Interim Rule did nothing more than create, on an emergency basis, a federal crime that was 100% redundant of state law crimes. This might well explain the Attorney General's failure to cite to particular facts, rather than broad conclusions, supporting a finding of an actual public safety emergency.

26. For all of the foregoing reasons, this court should adopt the reasoning of Valverde, Cain, and Cotton (and the concurrence and dissent in Dean and Gould) and find that the Interim Rule is invalid because it was issued in violation of the APA. Accordingly, this court should hold that SORNA cannot be applied to defendant Mahoney based on the Attorney General's purported promulgation of the Interim Rule on February 28, 2007.

IV. THE SMART GUIDELINES WERE NEVER INTENDED TO BE SUBSTANTIVE RULES AND THEY DID NOT MAKE SORNA'S REGISTRATION REQUIREMENTS APPLICABLE TO PRE-ACT OFFENDERS

27. As noted above, the Attorney General published the proposed SMART Guidelines on May 30, 2007 and the final SMART Guidelines on July 2, 2008. These Guidelines were adopted prior to the time frame alleged in the indictment in this case. Therefore, the court must consider whether the SMART Guidelines constitute a substantive rule, promulgated pursuant to 42 U.S.C. §16913(d), that made SORNA's registration requirements applicable to pre-Act offenders.

28. Before going further, it must be noted that several courts have opined in dicta that the SMART Guidelines made SORNA applicable to pre-Act offenders. However, for the most part this dicta came in cases in which the criminal conduct occurred prior to the publication of the proposed SMART Guidelines, and, therefore, the validity of the SMART Guidelines was irrelevant. See e.g., Valverde, 628 F.3d at 1169; United States v. Utesch, 596 F.3d 302, 310-311 (6th Cir. 2010). Other courts have simply pronounced as an *ipse dixit,* without analysis, that pre-Act offenders must register by virtue of the SMART Guidelines. See e.g., Cotton, 760 F.Supp 2d at 121-122 ; United States v. Mee, 2012 WL 1638436 (D.Vt. 2102).

29. However, until February of this year, not a single U.S. Court of Appeals had analyzed the issue in a case involving an alleged SORNA violation that occurred after the SMART Guidelines became effective. United States v. Stevenson, 676 F.2d 557, 562 (6th Cir.

2012) ("…[W]e have not found any Court of Appeals that has addressed the question of the validity of the final SMART guidelines to a defendant who traveled after August 1, 2008."). Further, while several district court decisions applied the SMART Guidelines to pre-Act offenders, "it is not clear how extensively" the defendants in those case raised challenges to the SMART Guidelines under the APA. Id. Therefore, there has been very little in the way of judicial analysis as to whether the SMART Guidelines imposed a valid substantive rule creating a new criminal offense for pre-Act offenders who fail to register.

30. The issue was precise raised and decided in a defendant's favor in United States v. Stevenson, Slip. Op., 09-cr-20306, 2009 U.S. Dist. LEXIS 118409 (E.D. Mich. Dec. 14, 2009), reversed, 676 F.2d 557 (6th Cir. 2012). Although the District Court decision was reversed on the merits, for the reasons explained below, its logic is compelling and its holding should carry the day as the issue continues to be litigated nationally.

31. The District Court conceded that the final SMART Guidelines formally complied with the notice and comment requirements of the APA. Slip. Op. at 11. However, it concluded that the SMART Guidelines were not promulgated for the purpose, and did not have the effect of making SORNA's registration obligations applicable to pre-Act offenders. Id. As the court noted, the Attorney General's authority to specify that SORNA applied to pre-Act offenders is found in 42 U.S.C. §16913(d). Id. The SMART Guidelines were not promulgated under this statute. Instead, they were issued under 42 U.S.C. §16912(b) to provide interpretative guidance for SORNA's implementation. Id., citing 73 Fed. Reg. 38030, at 38030:

> Section 112(b) of SORNA (42 U.S.C. 16912(b)) directs the Attorney General to issue guidelines to interpret and implement SORNA. The Department of Justice published proposed guidelines in the Federal Register on May 30, 2007, for this purpose. See 72 FR 30209 (May 30, 2007). The comment period ended on August 1, 2007.

These final guidelines provide guidance and assistance to the states and other jurisdictions in incorporating the SORNA requirements into their sex offender registration and notification programs.

32. Indeed, the SMART Guidelines do not even purport to be the genesis for pre-Act offenders' registration obligations. Instead of *imposing* these obligations, the SMART Guidelines did nothing more than *recognize* (or *assume*) the validity of the Interim Rule. See, Final Smart Guidelines, 72 Fed. Reg. 38030, 38036 (" ... SORNA's requirements apply to all sex offenders, regardless of when they were convicted, see 28 CFR 72.3 [the Interim Rule]…"); and at 30846:

> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment. See 72 FR 8894, 8895-96 (Feb. 28, 2007); 28 CFR 72.3 [the Interim Rule]. The application of the SORNA standards to sex offenders whose convictions predate SORNA creates no ex post facto problem "because the SORNA sex offender registration and notification requirements are intended to be non-punitive, regulatory measures adopted for public safety purposes, and hence may validly be applied (and enforced by criminal sanctions) against sex offenders whose predicate convictions occurred prior to the creation of these requirements. See, Smith v. Doe, 538 U.S. 84 (2003)." 72 FR at 8896 [the Interim Rule].

Indeed, the only applicable reference to 42 U.S.C. §16913 (the font of the Attorney General's authority to make SORNA applicable to pre-Act offenders) is in the *proposed* SORNA Guidelines, and it was clearly intended to explain the legal basis for the Interim Rule, rather than to serve as the basis for a new substantive rule:

> SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act. The Attorney General has so provided in 28 CFR part 72, pursuant to the authority under SO RNA section 113(d).

72 Fed. Reg. 30210, 30212.  Thus, as the District Court in <u>Stevenson</u> found, "These proposed and final guidelines state nowhere that the Attorney General is invoking his authority under §6913(d) to make SORNA retroactive.  Rather they assume that SORNA had previously been made retroactive by 28 C.F.R. § 72.3[.]"  Slip. Op. at 13.

33.  Indeed, the Attorney General himself recognized that he could not even consider, let alone issue a rule on retroactivity in the context of promulgating the SMART Guidelines.  The final SMART Guidelines noted that some commenters objected to applying SONRA to pre-Act offenders, but that these objections could not be considered while issuing *interpretative* guidelines under 42 U.S.C. §16912:

> Some commenters objected to, or expressed concerns about, provisions of the guidelines that require that jurisdictions apply the SORNA requirements "retroactively" to certain categories of offenders whose sex offense convictions predate the enactment of SORNA or its implementation in a particular jurisdiction. …Some comments of this type opined that Congress was simply wrong in enacting SORNA's requirements for sex offender registration and notification, and that the Attorney General should mitigate the resulting harm by defining their scope of application as narrowly as possible. **This premise cannot be accepted or acted on in issuing guidelines to "interpret and implement" SORNA, as SORNA § 112(b) requires the Attorney General to do.**

73 Fed. Reg. 38030, 38031 (emphasis added").

34.  Clearly, the Attorney General believed that because he was issuing interpretative guidelines he could not, therefore did not act on the public comments he received relating to the substantive question of retroactivity.  Thus, as both a practical and a legal matter, there was no public participation in the substantive rulemaking process relating to the imposition of SORNA's registration requirements to pre-Act offenders.  5 U.S.C. §553(c).  The public was deliberately excluded from participation in the Interim Rule and was then told that what it said would not even be considered in the context of the promulgation of interpretative guidelines.

35. Accordingly the District Court in Stevenson was correct in finding that neither the proposed nor the final SMART Guidelines constituted a substantive rule that created a new criminal offense for pre-Act offenders who failed to register. Although the District Court had reason on its side, the Sixth Circuit reversed. United States v. Stevenson, 676 F.3d at 555. The Sixth Circuit opined that (a) the proposed SMART Guidelines' citation to 42 U.S.C. §16913 (quoted above) was sufficient to comply with the APA; (b) The Attorney General could have issued substantive rules under §16912 as well as §16913; and (c) the public had been allowed to comment on the issue of retroactivity. Stevenson, 676 F.3d at 554-566.

36. Stevenson is the only Court of Appeals decision known to counsel that addresses this issue in anything other than a summary fashion. The issue is presently pending before the Ninth Circuit in United States v. Mattix, 12-30013. According to the PACER docket, this case has been fully briefed and scheduled for an oral argument in July of this year. The District Court in Mattix rejected the defendant's challenge to the SMART Guidelines. United States v. Mattix, 2011 WL 1792144 (D.Ore. 2011). The Court considered itself bound by Valverde's brief discussion of the SMART Guidelines, even though, for the reasons described above, this discussion is better characterized as dicta than as binding circuit precedent.

37. This Court should adopt the reasoning of the District Court in Stevenson and reject that of the Sixth Circuit. Accordingly, this court should hold that neither the proposed nor the final SMART Guidelines constituted a substantive rule that imposed SORNA's registration requirements retroactive for all pre-Act offenders.

IV. THE 2010 FINAL RULE

38. As noted above, the Attorney General promulgated a final rule on December 29, 2010 that became effective on January 28, 2011. 75 Fed. Reg. 81849, 28 C.F.R. 72. This rule

was promulgated after the time frame alleged in the indictment against defendant Mahoney. Therefore, even though there is no dispute that the Final Rule was issued in compliance with the APA's notice and comment requirement, and even though there is no doubt that it is a substantive rule, it cannot be applied in this case.

## CONCLUSION

39. The indictment must be dismissed because the Attorney General did not promulgate a valid, substantive rule imposing SORNA's registration requirements on pre-Act offenders prior to the time frame alleged in the indictment.

## COMPLIANCE WITH LOCAL RULE 7

40. This motion is not supported by a memorandum of law because all of the facts and legal argument are incorporated herein.

41. This motion is not supported by an affidavit because it relies solely on facts apparent from the state of the record.

42. On May 24, 2012, undersigned counsel corresponded by email with counsel for the government, AUSA Arnold Huftalen, Esq., who indicated that the government would object to this motion.

WHEREFORE, defendant Brian Mahoney requests this court to dismiss the indictment against him and to grant such further relief as the court deems just and proper.

                                          Respectfully submitted,

May 24, 2012                             /s/ Andrew R. Schuman ,
                                           Andrew R. Schulman, Esq. (NH Bar 2276)
                                           GETMAN, SCHULTHESS
                                            & STEERE, P.A.
                                           1838 Elm Street
                                           Manchester, New Hampshire 03104
                                           603/634-4300
                                           ASchulman@gss-lawyers.com

                                CERTIFICATE OF SERVICE

     I, Andrew R. Schulman, hereby certify that I have mailed a copy of this motion to all counsel of record on May 24, 2012 via the Court's ECF facilities.

                                              /s/Andrew R. Schulman ,
                                              Andrew R. Schulman