UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA    )
                                     )
                v.               )          No. 1:11-cr-006-01-JL
                                     )
BRIAN MAHONEY             )

GOVERNMENT'S OBJECTION TO DEFENDANT'S *PRO SE*
MOTION IN LIMINE (TO DISMISS INDICTMENT), Docket # 87

       The United States of America, by John P. Kacavas, United States Attorney for the District

of New Hampshire, objects to the defendant's *pro se* "Motion In Limine (To Dismiss

Indictment)" (docket #87) as follows, and respectfully requests that the Court enforce Local Rule

4.3(e) and strike the Motion.

The Motion should be stricken pursuant Local Rule 4.3(e)

       The defendant is not acting *pro se*, but is instead represented by two attorneys.

Nonetheless, he has filed multiple *pro se* pleadings, including the instant Motion, Docket #88.

This Court has enacted a Local Rule that prohibits *pro se* filings by represented parties, except in

limited circumstances.

       Civil Local Rule 4.3(e) states:

    **(e) Pleadings Filed by Represented Parties.**  Any litigant who is represented by
    an attorney may not file a pleading in a case unless:
          (1) The court grants a motion for leave to file a pro se pleading; or
          (2) The litigant is filing a motion related to the status of counsel.
    Any pro se pleading that does not comply with this rule shall not be added to the
    court's docket or presented to a judicial officer for ruling and shall be returned to
    the filer.

       Although Local Rule 4.3 is a civil rule, Criminal Local Rule 1.1(d) makes it applicable to

criminal proceedings.

Rule 1.1 states:

**1.1 General Rules**
. . .
**(d) Scope.**   LCrR 1.1 - 58.1 shall govern the procedure in all criminal actions.
Civil local rules shall apply insofar as they do not conflict with any statute, federal
or local criminal rule, or individual order. The following civil/general local rules
shall apply in criminal actions: Rules 1.1(c),(d) and (g), 1.2 - 1.3, **4.3(e)**, 4.4 - 5.4,
7.1(a),(c), (d) and (e), 7.2(a),(c) and (e), 7.3, 39.1, 39.3, 40.2, 45.1 - 47.3, 54.1,
65.1.1, 67.2 - 67.4, 72.1, 72.2, 77.1, 77.3,77.5, 77.6, 80.1, 83.1, 83.2(a),(b) and
(d), 83.3 - 83.5, 83.6(a)-(c), and (e), 83.7 -83.12, 83.13(b)-(e), 83.14. (Emphasis
added).

The filing and docketing of such unsanctioned pleadings in violation of the Court's Local

Rules not only creates additional, unnecessary work for the Court and opposing counsel, but also

runs the very real risk of inuring to the detriment of the unschooled defendant who is allowed to

file them.  In this case, the defendant has made numerous statements in, and attached to, *pro se*

filings that may be used by the government against him at trial as admissions by a party-

opponent, pursuant to Fed. R. Evid. 801(d)(2).

Because neither of the exceptions  to LR 4.3(e) are present in this case, the government

respectfully requests that the Court strike Docket #88, without prejudice to counsel re-filing if

deemed appropriate.

If the defendant's *pro se* Motion is not stricken, the government objects on the merits as follows

The defendant has filed a one page Motion in which he does not cite the Supreme Court's

recent decision in *Reynolds v. United States*, 132 S. Ct. 975 (2012), which construed the

registration and criminal-penalty provisions of the Sex Offender Registration and Notification

Act (SORNA), nor the Circuit opinions that have framed the issues.  That notwithstanding, the

government addresses the issues in detail.[1]

## I.  Decision in Reynolds

### A.  Background

SORNA requires persons convicted of qualifying offenses to register as sex offenders as a matter of federal law.  See 42 U.S.C. §§ 16913(a)-(c), 16914(a), 16915(a), 16916.  To enforce its registration requirements, SORNA criminalizes a knowing failure to comply with those requirements by, inter alia, any person who is a sex offender "'by reason of a conviction under'" federal, tribal, District of Columbia, or territorial law, and any other person required to register under SORNA who "'travels in interstate or foreign commerce,'" and then violates the registration requirements.  *Carr v. United States*, 130 S. Ct. 2229, 2234-2235, 2238 (2010) (quoting 18 U.S.C. § 2250(a)).

In *Carr*, the Supreme Court dealt with the latter category.  The Court held that criminal liability under Section 2250(a) cannot be premised on interstate travel that occurred before SORNA's enactment on July 27, 2006.  130 S. Ct. at 2233.  In reaching that conclusion, the Court explained that the three elements of Section 2250(a) must be satisfied in sequence: A person must first be "required to register under [SORNA]," must thereafter travel in interstate commerce, and must thereafter "knowingly fail[] to register or update a registration as required

---

[1]Counsel for the defendant, Andrew Schulman, has filed a Motion to Dismiss (docket # 92) which generally is based on the same argument.  However, the Court has taken under advisement counsel's Motion to allow the late filing of Docket #92 and therefore, the Motion to Dismiss is not before the Court.  In any event, Attorney Schulman's Motion raises nuanced issues not included in the generalized Motion filed by Mr. Mahoney which require additional research and briefing before the Court should rule.  There is a split in the Circuits and, although extremely unlikely, this issue in this case has the potential to create am unbalanced split in the Circuits.  As such it warrants careful consideration and full briefing.

by [SORNA]." *Id.* at 2235.

The Court in *Carr* did not, however, resolve the separate question of "when SORNA's registration requirements became applicable to persons convicted of sex offenses prior to the statute's enactment." 130 S. Ct. at 2234 n.2. The courts of appeals divided sharply on that question. *See id.* Five courts of appeals – the First, Second, Third, Eighth, and Tenth Circuits – held that the requirements applied to at least some pre-SORNA offenders upon the statute's enactment.[2] Relying principally on language in 42 U.S.C. § 16913(d), six other courts of appeals – the Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits – held that SORNA's registration requirements do not apply to any pre-SORNA offenders until the Attorney General specifies their applicability. The latter courts further divided on the date by which the Attorney General had issued a valid specification and thus made the registration requirements applicable to pre-SORNA offenders.

The Supreme Court granted certiorari in *Reynolds* to resolve the threshold question of whether (as the government contended) SORNA applied to pre-Act offenders of its own force or whether (as a bare majority of the courts of appeals had held) SORNA applied only upon specification by the Attorney General.

For purposes of this issue, the following dates are most relevant: July 27, 2006 (SORNA's

---

[2]Two of these courts held SORNA applicable of its own force to all pre-SORNA offenders. *See United States v. Fuller*, 627 F.3d 499, 506 (2d Cir. 2010), *vacated and remanded*, 2012 WL 538285 (Feb. 21, 2012); *United States v. DiTomasso*, 621 F.3d 17, 24 (1st Cir. 2010), *vacated and remanded*, 2012 WL 538283 (Feb. 21, 2012). Three others held that SORNA applied, without further Attorney General action, at least to pre-SORNA offenders who were already subject to a state-law registration requirement and/or had already registered pursuant to such a requirement. *See United States v. Shenandoah*, 595 F.3d 151, 163 (3d Cir. 2010); *United States v. Hinckley*, 550 F.3d 926, 932 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 918–919 (8th Cir. 2008).

enactment); February 28, 2007 (Attorney General's Interim Rule); July 2, 2008 (publication of

Final SORNA Guidelines); December 29, 2010 (publication of rule finalizing Interim Rule).

B.  Reynolds

The defendant in *Reynolds* was a sex offender convicted prior to SORNA's enactment

who had traveled interstate and failed to register between September 16 and October 16, 2007.

Before the court of appeals, he argued in relevant part that the Attorney General's February 28,

2007 Interim Rule applying SORNA to all sex offenders was invalid under the Administrative

Procedure Act (APA) and the constitutional nondelegation doctrine.  Bound by precedent holding

that SORNA's registration requirements applied upon enactment to pre-SORNA offenders in the

defendant's position, the court of appeals concluded that he had no stake in challenging the

validity of the Interim Rule.  The court therefore declined to resolve his APA and nondelegation

challenges on the merits.

The Supreme Court reversed.  The Court held that SORNA's "registration requirements

do not apply to pre-Act offenders until the Attorney General specifies that they do apply."

*Reynolds*, 132 S. Ct. at 978.  In reaching that conclusion, the Court relied primarily on the

language of SORNA's registration provision, 42 U.S.C. § 16913.  The Court recognized that the

statute (Section 16913(a)) states broadly that sex offenders "shall register, and keep the[ir]

registration current."  But the Court concluded that this general language was modified by the

more specific language in Section 16913(d) that "[t]he Attorney General shall have the authority

to specify the applicability of [SORNA's registration] requirements * * * to sex offenders

convicted before [SORNA's] enactment."  *Id*. at 981  "Read naturally," the Court explained, the

latter provision "confer[s] the authority to apply the Act" in the first instance, not (as the

government had argued) "the authority to make exceptions" to the Act's application.  *Id*.

The Court supported its interpretation of SORNA's registration provision with two other considerations.  First, the Court reasoned that its interpretation "efficiently resolve[d] * * * practical problems" that Congress may have anticipated when enacting SORNA, including those that could arise from "newly registering or re-registering 'a large number' of pre-[SORNA] offenders." 132 S. Ct. at 981.  The Court also found support for its interpretation in the rule of lenity.  *Id*. at 982 (citing *United States v. Lanier*, 520 U.S. 259, 266 (1997)).  "A  ruling from the Attorney General," the Court reasoned, "could diminish or eliminate * * * uncertainties" about the applicability of the statute – and its criminal penalties – to pre-Act offenders.  *Id*.  Finally, the Court rejected the government's arguments that reading the statute to require an Attorney General specification was at odds with Congress's overarching goal of registering pre-Act sex offenders and would lead to absurd results.  *Id*. at 982-84.

Having concluded that SORNA does not apply absent a valid specification by the Attorney General, the Court reversed the court of appeals' ruling that Reynolds had no stake in challenging the Attorney General's February 2007 Interim Rule applying SORNA to all sex offenders.  132 S. Ct. at 984.  The Court left it to the court of appeals to decide the validity of the Interim Rule on remand.

C.  Effect of Reynolds

The effect of *Reynolds* is that only on, or after, February 28, 2007 (the date the Interim Rule was issued by the Attorney General) could defendants with sex offense convictions (as defined in SORNA) be required to register and be subject to SORNA's penalties.  The Court did not decide, and it is not relevant to the instant case, whether the same is true for individuals

convicted of a qualifying sex offense after SORNA's enactment but before its implementation in the relevant jurisdiction, *see* 132 S. Ct. at 983, but the Court's logic suggests that the rule should be the same for this class of pre-implementation offenders.

The Court's ruling changed the law in the First, Second, Third, Eighth, and Tenth Circuits.  Regardless of pre-*Reynolds* circuit precedent, however, pre-Act and pre-implementation offenders ("pre-SORNA offenders") whose convictions under 18 U.S.C. § 2250(a) are predicated on offense conduct occurring between July 27, 2006 and February 28, 2007 will generally be entitled to relief in any pending direct appeal or upon a timely application for collateral relief.  The relevant offense conduct (hereinafter, "offense conduct" or "charged conduct") differs according to the statutory basis for conviction – for Section 2250(a)(2)(B) convictions predicated on interstate travel, the relevant conduct is the defendant's travel, whereas for defendants previously convicted of a federal or tribal sex offense and prosecuted under Section 2250(a)(2)(A), the relevant conduct is the failure to register.

## II.  Application of *Reynolds*: SORNA's Effective Date

### A.  Overview

*Reynolds* does not resolve a pre-existing circuit conflict over the date on which SORNA's registration requirements apply to pre-SORNA offenders; that date therefore continues to vary by circuit.  The five circuits, including the First, whose law was abrogated in Reynolds will have to decide on a date in resolving defense challenges to the February 2007 Interim Rule.  *Reynolds* leaves the law unchanged in the remaining six circuits, which have variously held SORNA applicable as of February 28, 2007 (Fourth and Eleventh Circuits); August 1, 2008 (Sixth and Ninth Circuits); or, as a practical matter, March 30, 2007 (Fifth Circuit, which has treated any

error after that date as harmless).  No Circuit has held SORNA applicable as of December 29,

2010 (publication of the finalizing Interim Rule) which is the date this Court would have to adopt

in order to grant any relief to the defendant.

    B.  Background

       The statutory and regulatory background relevant to determining the length of the "gap

period" between SORNA's enactment in July 2006 and the application of its registration

requirements to pre-SORNA offenders is set forth below.

       1.  SORNA requires that every "sex offender shall register, and keep the registration

current, in each jurisdiction where the offender resides, where the offender is an employee, and

where the offender is a student."  42 U.S.C. § 16913(a). A "sex offender," in turn, is defined as

"an individual who was convicted of" an offense that falls within the statute's defined offenses.

*Id*. § 16911(1) and (5)-(7).  SORNA provides that a sex offender "shall initially register" either

"before completing a sentence of imprisonment with respect to the offense giving rise to the

registration requirement" or, "if the sex offender is not sentenced to a term of imprisonment,"

"not later than 3 business days after being sentenced for that offense."  *Id*. § 16913(b). SORNA

further provides that, "not later than 3 business days after each change of name, residence,

employment, or student status," a sex offender "shall * * * appear in person in at least 1

jurisdiction involved pursuant to subsection (a) [i.e., where the sex offender resides, is an

employee, or is a student] and inform that jurisdiction of all changes in the information required

for that offender in the sex offender registry." *Id*. § 16913(c).  The statute also specifies the kinds

of information that must be collected as part of registration (id. § 16914), the length of time

offenders must remain registered (id. § 16915), and the frequency with which a sex offender

must appear in person and verify the registry information (id. § 16916).

At the same time, Congress recognized that administrative guidance and rules would be necessary.  SORNA thus broadly directs that "[t]he Attorney General shall issue guidelines and regulations to interpret and implement this subchapter." 42 U.S.C. § 16912(b).  In addition, SORNA authorizes the Attorney General to issue rules in certain specific contexts.  As relevant here, Section 16913(d), entitled "Initial registration of sex offenders unable to comply with subsection (b)," provides:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter [SORNA] to sex offenders convicted before the enactment of this chapter [July 27, 2006] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

42 U.S.C. § 16913(d).  This subsection, the Court held in *Reynolds*, modifies SORNA's general registration requirements and renders those requirements applicable to pre-SORNA offenders only upon valid specification by the Attorney General.  *Reynolds*, 132 S. Ct. at 978, 980, 984.

2. On February 28, 2007, the Attorney General issued an interim rule, effective on that date, specifying that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3  In the preamble to the rule, the Attorney General explained that "[c]onsidered facially, SORNA requires all sex offenders who were convicted of sex offenses in its registration categories to register in relevant jurisdictions, with no exception for sex offenders whose convictions predate the enactment of SORNA." 72 Fed. Reg. 8894, 8896 (2007) ("Interim Rule").  The Interim Rule, however, served the purpose of "confirming SORNA's applicability"

to "sex offenders with predicate convictions predating SORNA," and thus to "foreclos[e] any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA." *Id*.

The Attorney General made the Interim Rule effective immediately, invoking the "good cause" exceptions to the notice, comment, and publication requirements of the Administrative Procedure Act (APA). See 5 U.S.C. § 553(b)(B) and (d)(3) (setting forth good-cause exceptions); 72 Fed. Reg. at 8896-8897 (Attorney General's statement of good cause). The Attorney General explained that "[t]he immediate effectiveness of this rule is necessary" because postponing the rule's implementation could impede the effective registration of "virtually the entire existing sex offender population" and would thereby risk "the commission of additional sexual assaults and child sexual abuse or exploitation offenses  *  *  *  that could have been prevented had local authorities and the community been aware of [the] presence" of unregistered sex offenders.  *Id*.  The Attorney General concluded that this "would thwart the legislative objective of 'protect[ing] the public from sex offenders and offenders against children' by establishing 'a comprehensive national system for the registration of those offenders,'" id. at 8897 (brackets in original) (quoting 42 U.S.C. § 16901), because "a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule," *id*.

3. The Attorney General promulgated two other sets of rules and guidelines that are relevant here.  *See Reynolds*, 132 S. Ct. at 979 (identifying post-2007 Attorney General actions). On July 2, 2008, the Attorney General (in coordination with the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, or SMART) issued final

guidelines for the States and other jurisdictions on matters of SORNA's implementation.  *See* Office of the Att'y Gen., U.S. Dep't of Justice, The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (2008) ("Final SORNA Guidelines").  The Guidelines were issued after notice and comment, and they reaffirmed that SORNA applies to all sex offenders, including those convicted before SORNA's enactment or its implementation in a particular jurisdiction.  *Id*. at 38,035-38,036, 38,046, 38,063.

On December 29, 2010, the Federal Register published an Attorney General order finalizing the Interim Rule, with one clarifying change in an example to avoid any inconsistency with the Supreme Court's decision in Carr, supra.  *See* Office of the Att'y Gen., U.S. Dep't of Justice, Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81,849 (2010) (codified at 28 C.F.R. § 72.3 (2011)).   The preamble to the rule recognized that one court of appeals – the Sixth Circuit in *United States v. Utesch*, 596 F.3d 302, 310-11 (2010) – had held that the Final SORNA Guidelines "are, independently of the interim rule, a valid final rule providing that SORNA applies to all sex offenders, including those whose convictions predate SORNA."  75 Fed. Reg. at 81,850.  The preamble went on to explain that "[t]his rulemaking reflects no disagreement with that conclusion but rather aims to eliminate any possible uncertainty or dispute concerning the scope of SORNA's application by finalizing the interim rule."  *Id*.

### III.  SORNA's Effective Date: Circuits Unaffected by *Reynolds*

A.  *Reynolds* does not change the law in the Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits.  SORNA's application to pre-Act offenders is still governed by pre-*Reynolds* precedents in those circuits holding that SORNA applies to pre-Act offenders as of one of three

dates:  (a) the publication of the Interim Rule on February 28, 2007; (b) August 1, 2008, one

month from the issuance of the Final SORNA Guidelines; or (c) March 30, 2007, 30 days

following issuance of the Interim Rule.

1.  February 28, 2007 Circuits:  Three circuits have held that SORNA applied to pre-Act

offenders upon issuance of the Interim Rule on February 28, 2007.  The Fourth and Eleventh

Circuits rejected challenges to the Interim Rule under the APA, holding that the Attorney

General established "good cause" for dispensing with the APA's notice, comment, and

publication requirements.  *See United States v. Dean*, 604 F.3d 1275, 1280-82 (11th Cir. 2010);

*United States v. Gould*, 568 F.3d 459, 470-71 (4th Cir. 2009).  Without extended analysis, the

Seventh Circuit rejected an analogous APA challenge as "frivolous."  *United States v. Dixon*, 551

F.3d 578, 583 (7th Cir. 2008).  Accordingly, in these three circuits, SORNA's registration

requirements apply to pre-SORNA offenders as of February 28, 2007.

2.  August 1, 2008 Circuits: The Sixth and Ninth Circuits, by contrast, have held the

Interim Rule invalid under the APA.  *See United States v. Cain*, 583 F.3d 408, 420-23 (6th Cir.

2009); *United States v. Valverde*, 628 F.3d 1159, 1165-68 (9th Cir. 2010).

Both the Sixth and Ninth Circuit have fixed SORNA's effective date for pre-Act

offenders as August 1, 2008, "thirty days after publication of the final SMART guidelines along

with the Attorney General's response to comments."  *Valverde*, 628 F.3d at 1169; *Utesch*, 596

F.3d at 311; *see United States v. Stevenson*, 676 F.3d 557, 561-62 (6th Cir. 2012) (explaining that

the effective-date analysis in *Utesch* was technically *dicta*, but reaching the same conclusion after

additional analysis).  The Sixth Circuit alone has also held that the same date applies to pre-

implementation offenders – those convicted of a qualifying sex offense after SORNA's

enactment but before its implementation in a particular jurisdiction.  *See United States v. Trent*, 654 F.3d 574, 582-84 (6th Cir. 2011), *cert. denied*, 2012 WL 538789 (Feb 21, 2012).

      3.  Harmless-Error Circuit (likely effective date of March 30, 2007):  The Fifth Circuit has held that the Interim Rule is invalid under the APA, but that the violation of the notice, comment, and publication requirements was harmless as of March 30, 2007.  *United States v. Johnson*, 632 F.3d 912, 930-33 (5th Cir. 2011).  The court in *Johnson* found no prejudice from the violation of the APA's 30-day notice requirement, because the defendant there had traveled interstate and failed to register well over 30 days after the Interim Rule was issued and after the Attorney General gave notice of the rulemaking that culminated in the Final SORNA Guidelines. *Id.* at 930, 933.  Johnson also suffered no prejudice from the absence of a comment period, the court determined, because the Attorney General "considered the arguments Johnson has asserted and responded to [them] during the interim rulemaking," the question under consideration was "a binary decision" that would not "benefit from expert and regulated entity participation," Johnson had not proposed additional comments or otherwise participated in the final rulemaking process, and the comments received during that process had "not change[d] the Attorney General's decision."  *Id.* at 931-33.

      The *Johnson* court based its harmlessness conclusion on "the particular circumstances of th[at] case."  632 F.3d at 930.  But the court's reasoning strongly suggests that defendants whose Section 2250(a) convictions are based on offense conduct post-dating March 30, 2007 will not able to prove the required prejudice.  Indeed, the Fifth Circuit has subsequently found the same APA violations harmless – based on the same reasoning – for other SORNA offenders whose conduct post-dates the Interim Rule.  *See United States v. Byrd*, 419 F. App'x 485, 490-91 (5th

Cir.) (unpublished), *cert. denied*, 132 S. Ct. 756 (2011) (No. 10-11224); *see also United States v*

*Doyle*, 438 F. App'x 288 (2011) (APA violations harmless where defendant traveled after Final

SORNA Guidelines).  As a practical matter, then, prosecutors in the Fifth Circuit should be able

to defend on harmless-error grounds any Section 2250(a) conviction based entirely on conduct

post-dating March 30, 2007.

**IV.  SORNA's Effective Date: Circuits Affected by *Reynolds***

      A.  *Reynolds* abrogated case law in the First, Second, Third, Eighth, and Tenth Circuits

holding that SORNA applied to some (or all) pre-Act offenders upon enactment, that is, as of

July 27, 2006.  *See* foot note 2, *supra* (collecting relevant cases); *see also United States v.*

*Fernandez*, 671 F.3d 697, 698 (8th Cir. 2012) (recognizing that *Reynolds* abrogated prior

precedent).  In addition, it forecloses the argument in the D.C. Circuit – the one court of appeals

not to have decided the question – that SORNA applied to pre-Act offenders upon enactment.  In

most of these circuits, APA and nondelegation challenges to the Interim Rule remain unresolved,

as is the question whether SORNA became applicable upon issuance of the Interim Rule or at a

later date.

**V.  GOVERNMENT'S POSITION IN THIS CASE**

      The government's position is that the February 2007 Interim Rule is valid and that

SORNA therefore applies to pre-Act and pre-implementation offenders as of February 28, 2007.

Thus, relief is warranted under *Reynolds* only where the pre-Act or pre-implementation

defendant's offense conduct ended before February 28, 2007, which is not the case here.  The

Interim Rule was valid under the APA.  The arguments in support are set forth in the Fourth and

Eleventh Circuit decisions cited above.  Any violation of the APA's notice, comment, and

publication requirements was harmless with respect to offense conduct after March 30, 2007. *See Johnson*, 632 F.3d at 930-33; *United States v. Dean*, 604 F.3d 1275, 1288-89 (Wilson, J., concurring).

In the alternative, SORNA applies to pre-SORNA offenders no later than August 1, 2008, 30 days after publication of the Final SORNA Guidelines, consistent with the Sixth and Ninth Circuits holdings that the Final SORNA Guidelines validly applied SORNA's registration requirements to pre-SORNA offenders. *See Trent*, 654 F.3d at 581, 594; *Valverde*, 628 F.3d at 1169; *Utesch*, 596 F.3d at 311. If so,relief is warranted under *Reynolds* only where the pre-Act or pre-implementation defendant's offense conduct ended before August 1, 2008, which is not the case here.

The Final SORNA Guidelines, although generally framed as directives to implementing jurisdictions, followed notice and a comment period and included the Attorney General's response to comments on the precise issue of SORNA's application to pre-Act offenders. *See* 73 Fed. Reg. at 38,031 (summarizing comments and response); *id.* at 38,035-38,036 (explaining, after reviewing comments, that "no changes have been made in the final guidelines relating to retroactivity based on the comments alleging an adverse effect on sex offenders"); *see also Utesch*, 596 F.3d at 310 (process that led to Final SORNA Guidelines was "precisely what the APA requires"); *Stevenson*, 676 F.3d 561 (reaffirming this conclusion).

Because the defendant is alleged to have traveled between July and November of 2010, in order for the defendant to prevail, this Court would need to find that the Attorney General did not validly apply SORNA to pre-SORNA offenders until the December 29, 2010 Final Rule. There is no legal support for the that position, and the government is not aware of any court to have

accepted that argument.  *See United States v. Ross*, 778 F. Supp. 2d 13, 23 n.6 (D.D.C. 2011)

(rejecting argument), *appeal pending*, No. 11-3115 (D.C. Cir.).  As noted above, the preamble of

the Final Rule reflects that there is no disagreement with the Sixth Circuit's conclusion in *Utesch*

that the Final SORNA Guidelines constitute "a valid final rule providing that SORNA applies to

all sex offenders, including those whose convictions predate SORNA," and instead "aims to

eliminate any possible uncertainty or dispute concerning the scope of SORNA's application by

finalizing the interim rule."  75 Fed. Reg. at 81,850; *see Stevenson*,  676 F.3d 561, 564 n.6

(rejecting contention that "[t]he Attorney General's recent finalization of the Interim Rule * * *

establish[es] that the SMART guidelines were not a final substantive rule").  Additionally, this

Court should take note of the Sixth Circuit's conclusion against the argument that the Final

SORNA Guidelines did not validly apply SORNA because those Guidelines are directed to

implementing jurisdictions and do not govern offenders themselves.

No Court has gone as far as this Court would need to go to grant the relief sought by the

defendant.  For the reasons set forth above, the government respectfully requests that the Motion

(docket #87) be denied.

WHEREFORE the government respectfully requests that the defendant's Motion (docket #87) be

denied.

May 31, 2012

Respectfully submitted,

JOHN P. KACAVAS
United States Attorney

/s/ Arnold H. Huftalen
Arnold H. Huftalen
Assistant U.S. Attorney
NH Bar Association #1215
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552
arnold.huftalen@usdoj.gov

## CERTIFICATION OF SERVICE

I certify that a copy of this Objection has been served upon counsel of record via ecf filing notice today, May 31, 2012.

/s/ Arnold H. Huftalen
Arnold H. Huftalen