UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | |
| ) | 1:11-cr-0006-JL |
| BRIAN MAHONEY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO DISMISS (DN 92)

I.      INTRODUCTION.

Defendant Brian Mahoney is charged with one count of violating the Sex Offender

Registration and Notification Act (SORNA or the Act), 18 U.S.C. § 2250(a).  The indictment

alleges that the defendant (1) was required to register under SORNA; (2) traveled in interstate

commerce between July 31, 2010 and November 5, 2010, and (3) knowingly failed to update his

sex offender registration in the State of New Hampshire as required by SORNA.  Docket Number

(DN) 1.  The underlying offense that rendered the defendant a sex offender required to register

under the Act is a 1983 Massachusetts conviction for assault with the intent to rape.  DN 25.

The defendant has moved to dismiss the indictment, see Fed. R. Crim. P. 12(b), claiming

that SORNA does not apply to individuals whose underlying sex offense predates SORNA's

enactment.  In this regard, the defendant contends that the Attorney General's efforts to extend

SORNA's reach to pre-Act sex offenders are invalid because the Attorney General's interim rule

and so-called SMART guidelines were both improperly promulgated in so far as they purport to

make SORNA retroactive.  Under the defendant's theory, since there is no legal authority making

SORNA retroactive, this Court must dismiss the indictment because the defendant's conviction

long predates SORNA's 2006 enactment.

Regardless of whether the interim rule promulgated by the Attorney Guideline is valid, the SMART guidelines, which became effective July 2, 2008, certainly are. These guidelines were promulgated under Administrative Procedure Act's notice and comment procedure and expressly make SORNA retroactive to pre-Act sex offenders. Since, at the latest, SORNA became retroactive in 2008, when the SMART guidelines went into effect, which was two years before the defendant violated the Act, the defendant's dismissal argument fails.

II.   <u>SORNA OVERVIEW</u>.

SORNA was signed into law by President George W. Bush on July 27, 2006.  <u>United States v. DiTomasso</u>, 621 F.3d 17, 20 (1ˢᵗ Cir. 2010).  In so far as it applies retroactive to sex offenders whose underlying sex offense predates SORNA's enactment, SORNA provides that "the Attorney General shall have the authority to specify the applicability of the [Act] to sex offenders convicted before the enactment of [the Act]." 42 U.S.C. § 16913(d).  This specific retroactivity authority is within the general authority afforded to the Attorney General "to issue guidelines and regulations to interpret and implement the Act."  42 U.S.C. § 16912(b).

Following SORNA's enactment, on February 28, 2007,  the Attorney General promulgated an interim rule that unambiguously declared that the Act's registration requirements "apply to all sex offenders, including sex offenders convicted of offenses for which registration is required prior to the enactment of [the Act]."  28 C.F.R. § 72.3.  The Attorney General promulgated this rule under the "good cause" and "contrary to the public interest" exceptions to the notice and comment requirements of the Administrative Procedures Act.  5 U.S.C. §§ 553(b)(3)(B) and (d)(3).  The Attorney General believed that acting without notice and

comment was required because "delay in implementation of this rule would impede the effective

registration of [pre-Act] sex offenders and would impair immediate efforts to protect the public

from sex offenders who fail to register through prosecution and the imposition of criminal

sanctions." 72 Fed. Reg. 8894-01 at 8896 (Feb. 28, 2007). After the interim rule was passed,

there was substantial litigation over whether the Attorney General acted lawfully by

promulgating the rule with a period for notice and comment. The circuit court of appeals divided

on the question. United States v. Gould, 568 F.3d 459 (4th Cir. 2009) (valid); United States v.

Dixon, 551 F.3d 578 (7th Cir. 2008) (valid); United States v. Dean, 604 F.3d 1275 (11th Cir.

2010) (valid); United States v. Cain, 583 F.3d 408 (6th Cir. 2009) (invalid); United States v.

Valverde, 628 F.3d 1159 (9th Cir. 2010) (invalid).

On May 30, 2007, the Attorney General, following notice and comment procedures,

published proposed guidelines from the Office of Sex Offender Sentencing, Monitoring,

Apprehending , Registering and Tracking, called the SMART guidelines. These regulations were

promulgated by the Attorney General pursuant to his general power under 42 U.S.C. § 1692(b) to

issue guidelines and regulations to implement and interpret the Act, and were promulgated using

notice and comment procedures. The SMART guidelines stated the Attorney General's

previously expressed position on retroactivity that the Act's requirements apply to all sex

offenders, "including those whose convictions predate the enactment of the Act. The guidelines

were open to comment until August 1, 2008. In the final version of the guidelines, the Attorney

General rejected comments challenging the decision to make the Act retroactive.[1]

---

[1]As discussed infra, the SMART guidelines have also sparked litigation. Although these
challenges have uniformly failed, the Attorney General, out of an abundance of caution, finalized
the interim rule by allowing notice and comment. This "final rule" became effective on January

III.    THE SMART GUIDELINES WERE VALIDLY PROMULGATED.

The defendant spends much of his memorandum convincing the Court that the interim rule is invalid because the Attorney General acted without allowing a period for notice and comment.  It is the United States' position that the Attorney General acted lawfully under the good cause and contrary to the public interest exceptions to notice and comment for the reasons stated by the Attorney General in the interim rule itself.  72 Fed. Reg.8,894-01 at 8,896-97.  But, as already discussed, this issue has divided the court of appeals.  There is, however, no reason to enter this thicket here because the applicability of the interim rule is beside the point.  The defendant is alleged to have committed his SORNA offense beginning in July 2010.   By that time, the SMART guidelines, making SORNA retroactive, had been in effect for over 2 years.  Thus, the dispositive question here is whether the Attorney General acted lawfully by promulgating the SMART guidelines to make SORNA retroactive.

"Every court that has considered a challenge . . .in the context of a post-SMART Guideline offense has concluded that a valid SORNA offense has been alleged."  United States v. Mee, 2012 WL 1638436, at *6 (D. Vt. May 9, 2012).  The defendant asks this court to be the first to reach a different conclusion but has provided no sound reason for doing so.

The defendant's objection to the SMART guidelines is based on the Attorney General's reliance on 42 U.S.C. § 16912(b) as the legislative authority for the regulations.  The defendant contends that the Attorney General may not rely on the general authority to promulgate regulations that implement the Act, 42 U.S.C. § 16912(b),  to make the Act retroactive because

---

28, 2011.  Since the defendant's SORNA offense occurred before the final rule became effective, its validity is irrelevant to the pending motion to dismiss.

there was a more specific statutory provision that specifically permitted the Attorney General to determine retroactivity, 42 U.S.C. §16913(d).

This argument fails for a number of sound reasons.  First, a whole reading of the regulatory record that led to the SMART guidelines demonstrates that the Attorney General appreciated his authority under § 16913(d).  To be sure, the Attorney General identified his general authority to make regulations to interpret and implement the Act as the overall authority for the SMART guidelines, and the aspect of the post-comment rule concerning retroactivity does make an explicit reference to § 16913(d)  73 Fed. Reg. 38,030, 38,030 (July 2, 2008).  But the proposed SMART guidelines do make an explicit reference to § 16913(d) as the basis for the aspect of the rule that concerns retroactivity.  72 Fed. Reg. 30,210, 30,212.  Further, the post-comment regulation states that, despite the negative comments received, "no changes [were] made in the final guidelines relating to retroactivity.  73 Fed. Reg. 38,030, 38,036.  Thus, since there were "no changes made" to the final guidelines concerning retroactivity, it is fair to read the final guidelines as incorporating the proposed guideline's reference to § 16913(d).  United States v. Stevenson, 676 F.3d 557, 565 (6th Cir. 2012).  Accordingly, the predicate for the defendant's argument, i.e., that the Attorney General did not cite his authority for making SORNA retroactive, is faulty.

Second, and perhaps more fundamentally, the general authority for the Attorney General to implement SORNA undoubtedly includes his subsidiary power to determine whether the Act should be retroactive.  Section 16912(b) is the grant of authority that allows the Attorney General to enact substantive rules, i.e., rules that affect individual rights and obligations.  Chrysler Corp. v. Brown, 441 U.S. 281, 301-02 (1979).   Rules that implement a statute are substantive rules,

which have the force of law, and must be promulgated through notice and comment.  Id. at n. 30.[2]

       Undoubtedly, the retroactivity provision of the SMART guidelines is a substantive rule, since it applied the Act to a large class of pre-Act offenders and thus imposed individual obligations on these offenders.  Accordingly, the authority for the Attorney General to enact such an implementing rule was § 16912(b).  To be sure, within the statute governed by § 16912(b), Congress explicitly told the Attorney General that its implementing authority included the authority to determine retroactivity.  42 U.S.C. § 16913(d)  But "when Congress broadly authorizes an agency to implement the remainder of a statute in one section and then specifies in the very next section a specific type of rule the agency is expressly authorized to make, [a court] can hardly fault the agency for citing the section giving it broad authorization when issuing substantive rules including the specific one expressly authorized in another section of the exact same statute."  Stevenson 676 F.3d at 564

       Third, the defendant's suggestion that the Attorney General was not intending to make a substantive rule in the SMART guidelines as it pertains to retroactivity, but rather wanted only to restate the interim rule, is belied by the agency record.  In the final SMART guidelines, the Attorney General recited all of the comments received concerning retroactivity and offered substantive responses to these comments.  It then concluded that, in light of its responses, "no changes have been made in the final guidelines relating to retroactivity based on the comments alleging an adverse effect on sex offenders."  73 Fed. Reg.. 38,030, 38,036.  This language unambiguously shows that the Attorney General considered altering his position on retroactivity

---

[2]In contrast, interpretive rules do not have the force of law and are issued by the agency to inform the public about an agency's construction of a statute that it administers.  Id.

but decided not to do so because the comments opposing retroactivity lacked merit. See Stevenson, 676 F.3d at 565 n.7.  Thus, the defendant's claim that the SMART guideline notice and comment process did not involve a consideration of retroactivity is incorrect.

Relatedly, the defendant misreads the Attorney General's response to the comments opposed to retroactivity as suggesting that the Attorney General believed he did not have the authority in the SMART guidelines to revisit the retroactivity issue.  The Attorney General stated that it could not reverse its retroactivity position on the basis of comments suggesting that the entire SORNA registration requirement was unfair and thus should be mitigated by excluding pre-Act offenders.

This statement in no way suggests the Attorney General's refused to consider retroactivity in the SMART guideline comment process; rather it is a recognition of the basic administrative law principle that agencies enact regulations to implement a statute passed by Congress, not to thwart Congress' will.  Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1069 (D.C. Cir. 1998).  In other words, the Attorney General was simply indicating that he cannot base his retroactivity decision on a basic disagreement with the underlying SORNA endeavor, since Congress, in enacting SORNA, made clear that it believed SORNA was a good idea.  Other responses by the Attorney General (not quoted by the defendant) make this abundantly clear.  See Fed. Reg. 38, 030, 30, 035-36 ("The comments received do not establish that this legislative judgment is wrong, and in any event such a premise could not be accepted in the formulation of the guidelines whose objective is to interpret and implement SORNA's standards, not second-guess the legislative policies they embody.").

In sum, the SMART guidelines were enacted after notice and comment and expressly provide that SORNA applies to pre-Act offenders.  The defendant's assertion that the SMART guidelines did not actually consider the retroactivity issue, relying on the statutory authority cited and the responses to the comments on retroactivity,  fail.  Since the SMART guidelines became effective in 2008, two years before the defendant allegedly violated SORNA, the defendant is covered by the Act, even though he is a pre-Act offender.  Accordingly, this Court should deny the defendant's motion to dismiss.

IV.     CONCLUSION.

For the reasons stated, this Court should deny the defendant's motion to dismiss the indictment.

June 8, 2012                              Respectfully submitted,

                                         JOHN P. KACAVAS
                                         United States Attorney

                                         By:  /s/ Arnold H. Huftalen
                                         Arnold H. Huftalen
                                         Assistant U.S. Attorney
                                         NH Bar Association #1215
                                         53 Pleasant Street, 4th Floor
                                         Concord, New Hampshire 03301
                                         (603) 225-1552
                                         arnold.huftalen@usdoj.gov


                                         By:  /s/ Seth R. Aframe
                                         Seth R. Aframe
                                         Assistant U.S. Attorney
                                         Mass. Bar No. 643288
                                         53 Pleasant Street, 5th Floor
                                         Concord, NH  03301-3904
                                         (603) 225-1552
                                         seth.aframe@usdoj.gov

## <u>CERTIFICATION OF SERVICE</u>

I certify that a copy of this Objection has been served upon counsel of record via ecf filing notice today, June 8, 2012.

/s/ Arnold H. Huftalen
Arnold H. Huftalen