**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO
10/31/12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


```
* * * * * * * * * * * * * *
                          *
UNITED STATES OF AMERICA  *
                          *   11-cr-06-01-JL
          v.              *   October 6, 2011
                          *   10:55 a.m.
BRIAN MAHONEY             *
                          *
* * * * * * * * * * * * * *
```


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

For the Government:    Arnold Huftalen, AUSA
                       U.S. Attorney's Office
                       53 Pleasant Street
                       Concord, NH 03301


For the Defendant:     Paul J. Garrity, Esq.
                       14 Londonderry Road
                       Londonderry, NH 03053


Court Reporter:        Diane M. Churas, CSR, CRR
                       Official Court Reporter
                       U.S. District Court
                       55 Pleasant Street
                       Concord, NH   03301
                       (603) 225-1442

```
 1                        BEFORE THE COURT
 2              THE CLERK:  The Court has before it for
 3  consideration this morning a status of counsel hearing
 4  in Criminal Case 11-cr-06-01-JL, United States of
 5  America versus Brian Mahoney.
 6              THE COURT:  All right.  We're here on two
 7  motions filed pro se by Mr. Mahoney.  One is a motion
 8  for status of counsel.  One is a motion for me to recuse
 9  myself from the case.
10              THE DEFENDANT:  Absolutely.
11              THE COURT:  Just for the record, when I was
12  not in chambers but when I was in the conference room
13  behind the courtroom, there was some shouting going on
14  in here.  So I wanted to come in and put that on the
15  record and ask what's going on.
16              THE DEFENDANT:  Well, one, I just want to make
17  the Court very aware and I want to make the prosecutor
18  very aware that when you were a prosecutor, Judge, you
19  gave a man, Bruce Belton, a five-year pre-indictment
20  offer, you gave to this man to give to his client.  He
21  failed to give that to his client.  This man went to
22  trial and he got 23 years.
23              THE COURT:  Yeah.  That's in your motion.
24              THE DEFENDANT:  Right.  And I just wanted to
25  make sure.
```

```
 1              Also, the motion -- the case that he's trying
 2    to use that I was a sex offender 29 years ago, that case
 3    is very active and is still active.
 4              THE COURT:  All right.  Sit down.  I
 5    understand.
 6              Look, when you put things in motions, you can
 7    be confident that I'm going to review them and consider
 8    them.  Coming into court and yelling about them isn't
 9    going to do you any good.  You made that point about the
10    Belton case in your motion and it's something the Court
11    needs to consider in that motion.
12              THE DEFENDANT:  Right, your Honor.
13              THE COURT:  But don't come into court and yell
14    and scream.
15              THE DEFENDANT:  Your Honor, when he's
16    submitting half the reports without the raised seal,
17    which Prosecutor Arnie Huftalen did, that's committing
18    fraud upon this Court.  I'm not going to allow him to do
19    that anymore, Judge.
20              THE COURT:  All right.  So --
21              THE DEFENDANT:  And I'm going to put that in
22    front of him if he continues to do his game.  You have
23    to get order in the court somewhere.  You either have to
24    make a decision, Judge, one, under the Fourteenth
25    Amendment -- I've been in here 12 months for nothing
```

1  whatsoever.  You're continuously holding me.  This is a

2  financial emergency that we are in.  This is a

3  recession.  You have an innocent person in prison.  I

4  can't be released today?  You can release me today,

5  Judge, and I can file my motions properly through

6  typing.  But if we don't have order in the court, and of

7  course what you did as a prosecutor, I have no

8  confidence in you, your Honor.  I'm sorry.

9          THE COURT:  All right.  Understood.

10          THE DEFENDANT:  And I cited case law on that

11  by the way.  It's D New Hampshire 113, Bruce Belton

12  versus United States, July 15th.  I think the judge was

13  Judge DiClerico.  Although I don't know if he was in

14  this conspiracy against Bruce Belton.  There is not

15  going to be a conspiracy against Brian Mahoney.

16          THE COURT:  I have two motions in front of me.

17  I have to have an orderly courtroom just to get through

18  these motions.

19          THE DEFENDANT:  Right.  Well, the first one --

20          THE COURT:  Stop.  Order in the courtroom

21  means one person at a time talking.

22          THE DEFENDANT:  I'm sorry, your Honor.

23          THE COURT:  So I'm going to tell you, I really

24  do want to get through these motions today and give them

25  full consideration.  The problem is if you keep jumping

1   up and yelling, I'm going to have to have you brought

2   downstairs until you calm down.  A courtroom has got to

3   be a place where we can have a conversation, not a

4   shouting match.  The right thing to say in that

5   situation is, yes, sir, I get it.

6          THE DEFENDANT:  These are medical records that

7   I have medication, a court order.  We are going to try

8   that again today.  Medication has not been given to me.

9   I have been on medication for seven years.  I know

10   you're not a doctor, but there is medication here that

11   says Seroquel should be administered.  Go ahead.

12          THE COURT:  Did you file something about your

13   medication that I'm not aware of?

14          THE DEFENDANT:  Your Honor, I've been on this

15   medication for high anxiety.

16          THE COURT:  I didn't ask you that.  You keep

17   telling me you're a lawyer.  Here's how it works in

18   court, counsel.  I ask you questions.  You answer them.

19   You don't make speeches about what's been asked.  Did

20   you file something about your meds that I'm unaware of?

21   Did you?

22          THE DEFENDANT:  I did not, your Honor.

23          THE COURT:  Okay.

24          THE DEFENDANT:  I did --

25          THE COURT:  If you or your counsel does, I

```
 1   will consider it.  I also don't want to just blow it
 2   off.  I mean it's about your health.  But I'm trying to
 3   talk about one thing at a time and you can't seem to
 4   stay on one point at a time.
 5              THE DEFENDANT:  Okay, Judge.  I'll do my best.
 6              THE COURT:  I don't want to suspend this
 7   hearing until you calm down, but I'm going to have to if
 8   you don't calm down pretty soon.
 9              Now, you've got two motions.  One is on your
10   lawyer.
11              THE DEFENDANT:  Right.
12              THE COURT:  And one is on the Court.
13              THE DEFENDANT:  Right.
14              THE COURT:  Okay.  Before now we did send you
15   to have a psychiatric evaluation conducted regarding
16   your competency.
17              THE DEFENDANT:  That's correct, your Honor.
18              THE COURT:  And we got an opinion that said
19   you were competent to stand trial.
20              THE DEFENDANT:  That's correct.  That was just
21   on his opinion, not on the testing.  They refused to
22   submit the testing to the Court, which could have been
23   favorable to Brian Mahoney.
24              THE COURT:  Okay.  There was testing?
25              THE DEFENDANT:  There was testing.  It was the
```

1    Minnesota -- it was the one that -- she refused to

2    submit that to the Court because she said I manipulated

3    it.   Obviously I never had testing like this in my life.

4    That could have been favorable in my decision.   So I

5    said, you know what?   I've got my own doctors.

6              THE COURT:   When you say favorable --

7              THE DEFENDANT:   Favorable, right.

8              THE COURT:   In other words, because the

9    finding was that you were competent is that not a

10   favorable decision?

11             THE DEFENDANT:   The decision on here was

12   favorable based on an opinion, based on federal rules of

13   criminal --

14             THE COURT:   Are you saying that it would have

15   been more favorable to you if the opinion had been that

16   you were not competent?

17             THE DEFENDANT:   We don't know, your Honor,

18   because she never gave the Court the testing results.

19   She withheld them because Mr. Mahoney manipulated them.

20   Read the documentation.   I did go to Suffolk University

21   Law School to become number one just as Christa

22   McAuliffe was number one.   She inspired me.

23             THE COURT:   All right.   Since that time I've

24   approved funds to have you evaluated further by Dr.

25   Mart; right?

1                    THE DEFENDANT:  Right.

2                    THE COURT:  Dr. Mart -- I have a letter from

3    Dr. Mart.  Have you seen this letter?

4                    THE DEFENDANT:  That's the letter.

5                    THE COURT:  The letter suggests at least a

6    couple things.  Number one, that he hasn't completed the

7    evaluation yet.

8                    THE DEFENDANT:  Right.

9                    THE COURT:  And it appears to me that Dr. Mart

10   may be of the opinion preliminarily, okay, that you're

11   not competent to stand trial.  In other words,

12   incompetent to assist your counsel in conducting your

13   defense or conducting it on your own.

14                   Now, with that opinion in front of me, I'm in

15   a little bit of a difficult situation, Mr. Mahoney.

16   Here's why.  If you want to proceed pro se --

17                   THE DEFENDANT:  Yes.

18                   THE COURT -- I don't want to stand in your

19   way, okay?  But to do that -- and you know this because

20   you filed a very good motion on it.  I have to ask you

21   some questions to determine if you can knowingly and

22   voluntarily and intelligently waive your right to

23   counsel and proceed pro se.  Okay.  The problem is I

24   have in front of me a letter which calls into question

25   your ability to make that waiver.

1           THE DEFENDANT:  Right.

2           THE COURT:  So it's hard for me to -- I want

3    to give you the relief you want, if that's what you

4    want.

5           THE DEFENDANT:  Yes.

6           THE COURT:  But the problem is with this, even

7    if I conduct the questions and answers, those questions

8    and answers -- the answers will be under a cloud of

9    question and doubt because Dr. Mart preliminarily seems

10   to be indicating, he thinks you might not be competent.

11          THE DEFENDANT:  I haven't taken anything with

12   him.  I understand the Court's reasoning for that, but I

13   haven't signed anything.  The only thing he spoke about,

14   why are you firing your counsel.  And I just said that I

15   think we are all done with this conversation today.

16          And of course there was another cited case law

17   that has influenced since we last met that has been

18   entered into the First Circuit.

19          THE COURT:  All right.  So Dr. Mart in this

20   letter here, September 26, 2011 letter which is part of

21   the record, he has confirmed some of the things you just

22   told me, that you didn't get very far, and he has

23   characterized your behavior in a way that seems

24   consistent with what I'm observing, which is a little

25   bit grandiose and pressured speech.  Doesn't mean you're

1    not competent.

2            THE DEFENDANT:  That's correct.

3            THE COURT:  It's just a description.

4            THE DEFENDANT:  That's correct.

5            THE COURT:  Now, I think what I need to do is

6    let him complete this evaluation of you because if

7    you're not competent, I can't take your waiver of your

8    right to counsel.  So I'm going to ask you a question.

9            THE DEFENDANT:  Right.  That's correct.

10           THE COURT:  Are you willing to cooperate with

11   him just to complete his evaluation?  He will bring the

12   right forms.  I also would think -- I'm going to ask

13   counsel about this -- if we could get him those

14   results -- if we can get him the raw data from the prior

15   evaluation so Dr. Mart can review that.  Whether or not

16   it's subject to manipulation is up to somebody else.

17   What I'm saying is, is there any problem with doing

18   that?

19           MR. HUFTALEN:  I don't know.

20           THE COURT:  I don't think so.

21           MR. HUFTALEN:  I will call BOP.  I will talk

22   with them.  I will do everything in my power to get them

23   to voluntarily produce it.  If they won't, I will report

24   to the Court that they won't voluntarily produce it.

25           THE COURT:  In other words, those are records

1    that pertain to you.  I don't see why an expert assigned

2    to evaluate you wouldn't be allowed to read them and

3    even retest if you wanted to.  But certainly, you know,

4    if you think it's important for the Court to see those

5    records, I want to see them, too.

6              THE DEFENDANT:  Well, your Honor, I object to

7    that because of the fact that she had made me competent.

8    I would state as a competency I want to have -- as far

9    as her opinion of competency, I think in this court we

10   have to realize that I am competent based on the rules

11   and regulations of the court.  I am fully well aware of

12   the way the procedure works.

13             Second of all, the fact that I am competent, I

14   want to be able to represent myself pro se now that I am

15   competent, but because there has been a decision on

16   August 23rd, a week after I last saw you, by Chief

17   Justice John Woodcock, Jr. -- I believe you might be

18   aware of him.

19             THE COURT:  I am.

20             THE DEFENDANT:  His decision states that under

21   a competency evaluation, under a temporary competency

22   evaluation, as far as insanity goes, Judge Woodcock made

23   the first decision in the First Circuit Court of Appeals

24   stating that temporary insanity is a legal grounds to

25   have a case dismissed based on the fact if something was

1    done wrong to you.

2            We know now today through Prosecutor Huftalen

3    and my own attorney that I was the first person in the

4    United States placed on the Worldwide Web page for sex

5    offender 25 years after being acquitted.

6            Now, I'm going to take an exception to this.

7    If you were placed on a web page after you were

8    acquitted of a vicious and violent gang rape by a jury

9    of your peers, under the Fifth Amendment in order for

10   that to ever be brought out -- but it was.  It was

11   officially marked.

12           These two gentlemen stated, even my own

13   doctor, yeah, Mr. Mahoney was placed on that web page

14   wrongly.  That is temporary insanity when someone is put

15   on the web page.  I became temporarily insane from

16   November 18, 2009, to that point and I still am that

17   because I'm still locked up and incarcerated for a crime

18   I was merely acquitted for.  Woodcock has made a

19   decision --

20           THE COURT:  If I understand you correctly,

21   what you're trying to tell me is you have a defense to

22   the case -- let me finish.  I'm trying to understand.

23   You have a defense to the case involving your mental

24   state.

25           THE DEFENDANT:  Temporary insanity,

1   absolutely.

2            THE COURT:  Insanity is a defense you want to

3   assert at trial.

4            THE DEFENDANT:  Well, I think what Judge

5   Woodcock had done -- this is a man by the name of Derek

6   Sander -- in space last year threatened a crew of an

7   airplane, was facing 25 years.  Mr. Woodcock, the judge,

8   and the prosecutor and his own defense lawyer -- I think

9   the defense lawyer was MacFee (ph).  I think the

10  gentleman was someone from -- a Counsel MacFee out of

11  Maine.  They all agreed Derek Sander was temporarily

12  insane.  In the end his case was dismissed.  He can get

13  his life back.

14           I want that to be rendered in this decision.

15  I want my life back, Judge, for something that was done

16  to me, cruel and unusual punishment under the Eighth

17  Amendment.  Not only was it placed on the web page.  I'm

18  held on no bail and I'm an innocent person.

19           I do understand the prosecutor -- he did say

20  nonetheless we are going to go back to the 1992 case.

21  Well, we have a judge in Massachusetts whose name is

22  Patti Saris.  She sat with the great and powerful Bruce

23  Selya.  Bruce Selya says any sex offender willing to

24  challenge the laws, you have to trace the subseqent long

25  history back.

1            In 1989 when I was released for asking a woman

2     for oral sex only, period, she said I punched her in the

3     face.  She said I kicked her in the back.  She said I

4     kicked her on both legs.  She said I had a knife to her

5     throat.  And she still got away.

6            My punches are violent, Judge.  I'm an

7     ironworker for 21 years.  If I punch you, him, or him in

8     the face, you're never getting up.  Never mind a

9     five-foot, two-inch, 104-pound lady.

10            Then he says, what Mr. Mahoney got eight years

11     in prison for, about five, six -- back then there was no

12     truth in sentencing.  Mr. Mahoney had to commit a

13     vicious crime.  Not only was it 12 years old, not only

14     was it 14 years old -- that's what they put down on me,

15     that I asked a 12-year-old for oral sex.  I'm not a sex

16     offender, Judge.  The woman was 16 years old.  Back to

17     subsequent history in 1982, 16 was the legal age.

18            THE COURT:  Can I look at the letter you held

19     up about Judge Woodcock?

20            THE DEFENDANT:  Sure.

21            THE COURT:  Thank you.  That's authority you

22     want me to read; right?

23            THE DEFENDANT:  Right.  I'm asking for the

24     estimated copies.  I'm asking for that decision and it's

25     an oral decision.  That's Judge Woodcock's decision.  It

1    was verified by my own attorney a couple weeks ago.

2              THE COURT:  One thing I want to make clear

3    about.

4              THE DEFENDANT: Sure.

5              THE COURT:  Any more documents passing back

6    and forth, I'd like the court security officer to handle

7    that.  I don't want the deputy clerk anywhere near this

8    defendant.

9              THE DEFENDANT:  I was just giving it to her.

10             THE COURT:  I know it's not your fault.  The

11   deputy clerk walked up.  If you're going to sit there

12   and talk about punching me and counsel and everybody, if

13   you're going to sort of litter your comments with sort

14   of thinly veiled physical threats, I don't want the

15   deputy clerk anywhere near him.

16             THE DEFENDANT:  You have to look at my

17   position, Judge.  I'm held with no bail.  I'm an

18   innocent person.

19             THE COURT:  I am not saying you're not

20   frustrated.

21             THE DEFENDANT:  Right.  I want you to sit in

22   jail for twelve months night and day and see how you

23   feel by the twelfth month. (Pause.)

24             THE COURT:  Oh, this was a letter where you

25   asked for a copy of that decision?

1                THE DEFENDANT:  I asked for it.  They have it.

2    That is an official document.  Of course the funds could

3    be -- that could cost as much as $500.  I'm waiting for

4    the estimate now.

5                THE COURT:  A copy of the decision?

6                THE DEFENDANT:  No, no.  I need the estimated

7    copies.  It's an oral decision.

8                THE COURT:  Oh, the transcript.

9                THE DEFENDANT:  So it could be as much as

10   $500.  That's my theory.  That's a decision where the

11   guy was facing 25 years and he walked out the door and

12   got his life back.  Interfering with space now which of

13   course under Homeland Security, he should have went to

14   prison for 25 years.  I'm going to get less than that.

15   I'm not even going to get ten months.

16                THE COURT:  Stop just for a minute.  In his

17   September 26, 2011, letter Dr. Eric Mart, who is a

18   forensics psychologist who has testified in this court

19   on several occasions and who I have seen his testimony,

20   he's been qualified as an expert.  He writes the

21   following:  That he met with Mr. Mahoney on

22   September 23, 2011.  He says, quote, when I spoke to Mr.

23   Mahoney he appeared quite manic and it was difficult to

24   follow him.  His speech was quite rapid and pressured

25   and it was very difficult for me to ask him questions or

1    elicit relevant responses, unquote.

2           I will state for the record that's precisely

3    the observation I'm making today.  It's not that I think

4    Mr. Mahoney is necessarily irrational or cannot exercise

5    reason, but he does appear manic.  It is difficult to

6    follow him.  His speech is rapid and pressured, and it

7    is difficult for me to ask him questions to elicit

8    relevant responses because the questions I ask tend to

9    elicit responses that go in different directions,

10   directed mostly by his frustration with his current

11   situation.

12          Back to the letter, quote, Mr. Mahoney appears

13   to have some basic misunderstandings regarding his legal

14   situation, some of which appear to border on the

15   delusional.  He is grandiose and I believe this may be

16   affecting his judgment and decision-making process

17   regarding his case, closed quote.

18          Again, that's precisely the observation I'm

19   making today.  We are discussing an insanity defense of

20   a different case which may or may not have bearing on

21   this case.  It might.  I don't know.

22          THE DEFENDANT:  It's the same exact symptoms

23   that I was hospitalized for at Baylor.  I have the

24   report here.

25          THE COURT:  Here's the problem.  Again, you

1   keep telling me you understand how it works in court,

2   but we're not talking about that right at this second.

3   We're talking about something else and you keep throwing

4   it at me.  That makes me -- it makes me question whether

5   you can represent yourself in court.  There's more to

6   this than shouting what comes into your mind when it

7   hits the top of your head.  There's more to it.  It's

8   much more challenging to persuade a Court or a jury or

9   to prevent a prosecutor from doing something.  All

10  right?  So just take it easy a minute.

11          THE DEFENDANT:  Again, Judge, I'm an innocent

12  person held in consternation.  This happened to me in

13  the Billerica house of correction.  I walked out the

14  door.  I have a Massachusetts appeal court saying, oh,

15  by the way, Mr. Mahoney was incarcerated on that crime.

16          I'm not going to continue to sit in prison

17  while I'm waiting for another judge.  Like I said, you

18  go 12 months and see how you feel.  Believe me, it's

19  more than being at that level.  I'm innocent, there's no

20  question about it.  And that decision is a very big

21  decision.  It's a First Circuit Court decision, and

22  Chief Woodcock is a legend, trust me.

23          THE COURT:  I was with Judge Woodcock

24  yesterday.  I know him very well.

25          THE DEFENDANT:  He's a legend.

1          THE COURT:  Back to the letter.  Quote, under

2     the circumstances the Court may wish to consider whether

3     a new psychiatric assessment and possible treatment may

4     be helpful in ameliorating the symptoms to the point

5     where a forensic psychological evaluation would provide

6     more and better information, closed quote.

7          THE DEFENDANT:  Well, Judge, I would just

8     further add to that that I was just examined by Dr.

9     Kissin.  She's a forensics pathologist and she said that

10    I'm competent and she gathered all these facts and

11    information and she said that I'm competent to stand

12    trial.  But of course she didn't know about this

13    temporary decision.  When you're temporarily insane, you

14    have a right to get your life back.

15         THE COURT:  See, you say you can represent

16    yourself.  Those two concepts have nothing to do with

17    each other in any decision the Court has to make.  One

18    is a defense to a charge, and one goes to the issue of

19    whether you can even be tried for the charge in the

20    first place.  They're not the same.  They're not

21    related.  All right?  That's not unimportant information

22    and you're not demonstrating that you grasp that.

23         THE DEFENDANT:  Well, I am demonstrating one

24    thing.  We've already had a court-ordered psychiatric

25    evaluation.  I'm going to object to any further

1  psychiatric evaluation.  She made a ruling I'm competent

2  to stand trial, and I can truly go pro se.  And that's

3  it.  I'm going to object to anymore competency

4  evaluations.

5          THE COURT:  Your objection is noted.  But --

6  wait a minute.  I already ordered one at your request.

7          THE DEFENDANT:  Exactly, Judge.  And it was

8  court ordered and I --

9          THE COURT:  No, no, no, a follow-up one by Dr.

10  Mart.

11          THE DEFENDANT:  That's independent.  I don't

12  have to be subjected to an independent evaluation,

13  Judge.  We know this.  Come on.  I've been doing this

14  for 28 years.  Seventeen is number one.  In the country,

15  that is.  I'm very brilliant at law, Judge.

16          THE COURT: I can tell.

17          THE DEFENDANT:  I can cite case laws.  I know

18  that much.

19          (Pause.)

20          (Mr. Mahoney conversing with Mr. Garrity.)

21          THE COURT:  I'm looking for a criminal code.

22  I only have two civil codes up here.  You wanted to say

23  something, Attorney Garrity?

24          MR. GARRITY:  Yes, your Honor.  Mr. Mahoney

25  just showed me a document that he authorized me to show

1    you.  I think it sheds further light on this issue.

2                THE COURT:  Okay.

3                THE DEFENDANT:  That was a year before the

4    indictment, Judge.  I've been seeking psychiatric help

5    for years.

6                MR. GARRITY:  I've just had a brief chance to

7    scan this.  I didn't read the whole report, but it talks

8    about Mr. Mahoney perhaps having psychotic issues and

9    psychosis along with bipolar.

10               THE COURT:  Just for the record -- we'll have

11   to docket this.  This is -- it is a September 20, 2011,

12   document.

13               THE DEFENDANT:  That's when they sent it to

14   me, Judge.

15               THE COURT:  Okay.  It's actually --

16               THE DEFENDANT:  May 25, 2010.

17               THE COURT:  Actually April 21, 2010.

18               THE DEFENDANT:  Right.  A year before the

19   indictment, and this is why I was seeing the

20   psychiatrist -- the psychologist because of the fact

21   that I was on that web page wrongfully.

22               THE COURT:  Hold on.  It's from Goodwin

23   Community Health located in Somersworth, New Hampshire.

24   Let me just read it, okay?  It's going to take me a

25   minute.

1            THE DEFENDANT:  Yeah.

2            (Pause.)

3            THE COURT:  Okay.  I've read it.  It's a

4    report written by Diana -- is it Haile.

5            THE DEFENDANT:  Diana Haile, she's my

6    psychiatrist.

7            THE COURT:  Haile.  Okay.  Is she a

8    psychiatrist or a registered practitioner in psychiatry?

9            THE DEFENDANT:  She's a doctor in psychiatry.

10   She has a ph.D.

11           THE COURT:  All right.  Her degree here says

12   APRN which I thought was a nurse practitioner.  But

13   anyway, it doesn't matter.

14           THE DEFENDANT:  That was Rachel Wenzel.  She's

15   a nurse practitioner.

16           THE COURT:  Anyway, this document describes a

17   visit that this defendant made to her in April of 2010.

18   I draw two things from it.  One is that -- you made some

19   points in it that were consistent with the points you

20   made today, that you think you may have a defense in

21   this case that led to your psychosis, psychosis

22   generated from being treated unjustly in court

23   proceedings in the past, and that may provide you

24   somewhat of an insanity defense to these charges.

25   That's number one.

1            THE DEFENDANT:  Because I always said that I'm

2     the first person in the United States to be placed on

3     the web page since the law was enacted October 31st,

4     1994.  That's Megan's Law on July 27, 2006.

5            THE COURT:  That's point number one that I

6     take from this.

7            Point number two though is she said that when

8     you visited her, quote, he was impossible to direct to

9     the matter at hand, his medication.  I let him speak for

10    a bit.  Very rapid speech, almost impossible to follow.

11    Undertones of some irrational thinking and possible

12    delusions of grandeur.  Quote, single man is going to

13    take down the judicial system, unquote.  Quote, I am a

14    legend.  No one has ever overturned that many

15    convictions, closed quote.  Open quote, I am an expert

16    on law, closed quote.  Also mentioned something about

17    Galileo giving him guidance.

18           THE DEFENDANT:  He's the one that started

19    democracy.  It's talking about the Constitutions before

20    September 25th, I believe, 1789, Constitutions that were

21    ratified.

22           THE COURT:  Continuing with this note from

23    Diana Haile.  Brian comes off as either bipolar with

24    possible -- Bipolar I with possible psychotic features

25    or schizo-affective disorder as well as possible anti-

1    social personality disorder traits and narcissism,

2    unquote.

3            THE DEFENDANT:  I think if I may tell the

4    Court one thing.  I'm not getting psychiatric counseling

5    right now at the jail.  Number two, I'm deprived from

6    Xanax and the Seroquel I've been taking for the past

7    seven years.  I think the third issue here is that was

8    done eight months before this indictment.  It's clearly

9    showing that there was wrongdoing done to me, and she

10   asked me -- she didn't put that in why I haven't

11   committed suicide, because I told her I was acquitted on

12   May 25, 1984.  And of course the government has all my

13   past down since I was ten years old.  They have

14   confirmed that I was acquitted.  And I'm being held, and

15   it puts a big strain on you, Judge, because I should be

16   released today to get that psychiatric help and to get

17   on that medication because by just merely keeping me in

18   the jail is depriving me of my appointments with my

19   doctor.

20           THE COURT:  What's putting a strain on me is

21   this.  I want to grant defendant the relief I can to

22   enable a fair trial to be conducted.  I'm having a lot

23   of difficulty though getting to the issues with you at

24   all today because of the same things observed by Diana

25   Haile and by Dr. Mart, pressured speech, what appears to

1    be manic behavior, rapid speech, inability to stay on

2    point, delusions of grandeur, and some irrational

3    thinking.  It concerns me because -- if you want to

4    represent yourself, I want to allow you to do that if

5    you can make that waiver knowingly, intentionally, and

6    voluntarily.

7            Secondly, I also want to give you a chance to

8    argue in a rational way why this Court, this judge,

9    should recuse himself in the case.

10           Those are things you're entitled to do, but I

11   can't do them because you can't seem to stay on point

12   today or even present even a little bit rationally.

13           You told me you don't want to submit to any

14   more competency evaluations, but I don't have a choice

15   in this situation.  You are exhibiting conduct which

16   seriously calls into question whether you can even

17   participate.  We might be at a point where I have to

18   have a hearing and determine either, A, you're competent

19   and we go on to trial to let you present this defense

20   you've identified, or B, you will be subjected to the

21   procedures when someone is declared to be incompetent.

22   I can't allow you to proceed on this course now.

23   There's too many serious questions about your competency

24   despite your strenuous objections.

25           THE DEFENDANT:  Well, I would say one thing,

1    Judge.  I'd say that the Federal Medical Center in Ft.

2    Devens, which is a federal facility, Dr. Kissin has made

3    the determination that Mr. Mahoney is competent to stand

4    trial.  Her decision is the only decision that this

5    Court is bound by at this particular time because I have

6    not --

7              THE COURT:  Stop.  You don't understand.  She

8    made no decision.  She made a recommendation.  I'm not

9    bound by anything she says.  It's my job to consider

10   what she says at a hearing.  We decided earlier that we

11   wouldn't have to have a hearing because the evidence

12   seemed to suggest, based on what she said, that you

13   appear to be competent.

14             THE DEFENDANT:  Right.

15             THE COURT:  There's two problems with that.

16   First of all, you've told me that I should not consider

17   what she said because she wouldn't submit certain

18   evidence to me because she has unjustifiably said you

19   manipulated the testing.  That's a problem.

20             THE DEFENDANT:  Right.  In that case put it on

21   on the 16th as all of us agreed that I am competent to

22   stand trial, and the prosecutor agreed, and he just

23   stated that Mr. Mahoney -- and he went further and said

24   Mr. Mahoney -- we all have issues, but I believe he's

25   competent.  So I'm saying the same thing.

1           THE COURT:  I don't even think the court

2    reporter can keep track of what you're saying.  Step one

3    of the trial, we have to have a record.

4           THE DEFENDANT:  There shouldn't even be a

5    trial, Judge Laplante.  There should not even be a

6    trial.

7           THE COURT:  I know that's what you think.

8           THE DEFENDANT:  I'm innocent.  That's a

9    problem right now.  When you're innocent you're trying

10   to fight for your freedom.  You're trying to fight for

11   justice.  You have to continue.  Even my own attorney

12   last night said, Mr. Mahoney -- he said, Brian -- I

13   never lived in Massachusetts.  This isn't even a federal

14   crime, Judge.  I clearly lived in New Hampshire for the

15   last 12 years and that has been confirmed by the

16   evidence as well.  My own attorney said, hey, there's

17   not one shred of evidence that I ever lived in

18   Massachusetts since 1999.  That is a fact.  This is not

19   a federal crime.

20          THE COURT:  Counsel, I want to ask you a

21   question.  Is there any question that as a forensic

22   psychologist as opposed to a psychiatrist, that Mr. Mart

23   is qualified to give the Court an opinion as to

24   competency?  In other words, he's a psychologist instead

25   of an M.D.  Does it matter?

1              MR. HUFTALEN:  That's fine.  Dr. Kissin is a

2      psychologist.

3              THE COURT:  Thank you.  Any disagreement

4      there?

5              MR. GARRITY:  No, your Honor.

6              THE COURT:  All right.  I'm going to issue a

7      written order, but for -- based on the statements I've

8      made so far on the record in this case and the two

9      documents that have been submitted to me, the

10     September 26, 2011, letter from Eric Mart and the

11     April 21, 2010, note to the Goodwin Community Health

12     filed by Diana Haile, APRN, the Court finds that the

13     defendant may presently be suffering from a mental

14     disease or defect rendering him mentally incompetent to

15     the extent that he is unable to understand the nature

16     and consequences of the proceeding against him or to

17     assist properly in his defense.  I'm therefore

18     ordering -- I'm ordering whatever resources are

19     necessary to allow Dr. Mart to continue the evaluation.

20     I'm ordering the prosecution to get the raw data from --

21     Dr. Kissin is it?

22             MR. HUFTALEN:  Kissin.

23             THE COURT:  The prior psychiatric examination

24     and evaluation made, I want that submitted to Dr. Mart.

25     I can't believe there's any reason it's prohibited, and

1    I think Mr. Mahoney is correct that all the results

2    should be considered by anybody, any physician or

3    myself, in making this determination.

4            Mr. Mahoney, it does not make me happy to

5    delay your proceedings in this way, but I don't see how

6    I have any choice because the way you want to proceed is

7    without a lawyer.  To allow you to do that I've got to

8    determine that you are able to make that waiver.  Based

9    on what I've seen today, I don't think you are and I'm

10   going to need to be persuaded otherwise.

11           I'm also going to ask counsel to continue

12   their efforts, all right, at reaching a resolution of

13   this case, if they can, for this reason.  There are

14   times when Mr. Mahoney has been in this court, more than

15   once, where he has appeared to me to be competent.  Not

16   only competent but understanding some of the more

17   sophisticated aspects of litigation and plea

18   negotiations.  And if he can be reasoned with and you

19   can reason with each other to effect a resolution of

20   this case that everyone can live with, I encourage you

21   to do so.  But don't slow down the process of getting

22   this evaluation done because whether I agree with many

23   of the things Mr. Mahoney has said today or not, he is

24   entitled to a speedy resolution of the case the best we

25   can do under the limitations we have.  And I want him to

1   have that.

2           So I will issue a written order.  That's the

3   order.  Competency evaluation under Section 4241 of

4   Title 18 of the U.S. Code based on these records which

5   will be placed in the documents.

6           All right.  Is this the only copy we have of

7   this?  I'd like to return it to you.

8           MR. GARRITY:  I believe so, Judge.

9           THE COURT:  I will have Charli make a copy and

10  I will give you that back.

11          All right.  We're in recess.

12          (Adjourned at 11:30 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2                    C E R T I F I C A T E

 3

 4          I, Diane M. Churas, do hereby certify that the

 5   foregoing transcript is a true and accurate

 6   transcription of the within proceedings, to the best of

 7   my knowledge, skill, ab

 8                            _____
                             DIANE M. CHURAS, LCR, CM
 9   Submitted: 8/2/12       LICENSED COURT REPORTER, NO. 16
                             STATE OF NEW HAMPSHIRE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```