UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                            \*
UNITED STATES OF AMERICA                    \*
                                            \*   11-CR-06-01-JL
            v.                              \*   June 1, 2012
                                            \*   2:55 p.m.
      BRIAN MAHONEY                          \*
                                            \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE


APPEARANCES:


For the Government:        Arnold H. Huftalen, AUSA
                           U.S. Attorney's Office



For the Defendant:         Paul J. Garrity, Esq.
                           Garrity Law Office

                           Andrew R. Schulman, Esq.
                           Getman, Schulthess & Steere, P.A.



Court Reporter:            Susan M. Bateman, LCR, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

```
 1                     P R O C E E D I N G S
 2              THE CLERK:  The Court has before it for
 3     consideration this afternoon a motion hearing in
 4     criminal case 11-CR-06-01-JL, United States of America
 5     versus Brian Mahoney.
 6              THE COURT:  All right.  There are a number of
 7     motions pending and a pretrial conference scheduled
 8     for today.
 9              I heard some elevated voices when I was back
10     in the conference room outside the courtroom.  Is
11     there anything anybody needs to tell me about what was
12     going on out here?
13              MR. MAHONEY:  I do, your Honor.  I do.  On
14     the document that -- the motion that the government
15     has put into evidence on discovery 122 clearly says
16     that September 23, 1983, I was convicted of rape, sir.
17              I would ask if you could just let the Judge
18     take a look at this.
19              THE COURT:  Stop, stop.  That's not what I
20     was asking.
21              Step one.  If counsel does not want to sit at
22     counsel table with the defendant in this condition, I
23     don't have a problem if you want to sit at the counsel
24     table behind him.
25              MR. MAHONEY:  You haven't even ruled on any
```

1    issue of competency or my status of counsel.  You

2    haven't even ruled on it yet, Judge.

3              THE COURT:  No, I haven't.

4              MR. MAHONEY:  That's right.  So how can you

5    say I cannot be heard in court?

6              THE COURT:  Here's how I can say it.  I've

7    been trying to be patient with you, all right?  I can

8    say any time I want who gets to speak in court and

9    how --

10             MR. MAHONEY:  Yes, your Honor, you can.

11             THE COURT:  And right now I'm telling you to

12   stop talking while I try to work something out.

13             Step one is this.  You're so animated, all

14   right, and the security personnel are so concerned

15   about the safety of the people in the court right now,

16   because of how you're behaving, that I want to ask

17   your counsel, who are still your counsel, if they

18   would prefer to sit at the counsel table behind you

19   during the hearing so you can't reach them.

20             MR. MAHONEY:  Your Honor, I've never once --

21             THE COURT:  I'm not asking you.  I'm asking

22   them.

23             MR. MAHONEY:  Okay.  Ask them.

24             THE COURT:  That's all.  If they want to stay

25   there, they can.  If they want to sit behind, they

1  can.  It's up to you, counsel.

2          MR. GARRITY:  I'm fine, Judge.

3          THE COURT:  You're fine?

4          MR. SCHULMAN:  I'm fine and comfortable with

5  Mr. --

6          MR. MAHONEY:  And I've never used my hands,

7  your Honor -- and I just wanted to put that on the

8  record that I've never used my hands before with

9  attorneys; nor would I ever.

10          THE COURT:  All right.  Now -- okay.  My

11  initial plan for today was to simply rule on

12  competency and then, if necessary, proceed to a final

13  pretrial before the trial.

14          However, I received a motion, which is

15  document number 92.  Hold on a minute.  I'm sorry.

16  Document number -- yeah, document number 92, and a

17  motion to allow late entry of that, which was number

18  91.  It's a motion to dismiss regarding the issue of

19  "the lack of a valid rule making SORNA applicable to

20  pre-act defendants".  That's document number 92.

21          That's actually the same issue that you

22  filed, Mr. Mahoney, pro se.

23          MR. MAHONEY:  I also did file, your Honor,

24  under United States versus Miller in the Sixth

25  Circuit, and the Sixth Circuit made clear --

1          THE COURT:  On the venue issue.

2          MR. MAHONEY:  -- on the venue issue that I

3    was never physically in Massachusetts more than three

4    days even.

5          THE COURT:  Listen, that's not what I'm

6    talking about.  The way you're behaving now --

7          MR. MAHONEY:  Yes.

8          THE COURT:  -- is why I'm convinced that

9    while you may very well be competent to stand trial

10   you are not competent to proceed pro se.  You are

11   totally going sideways.  While I'm trying to talk

12   about one issue, you're going on to a different issue.

13   That's not how it works in court.

14          MR. MAHONEY:  I understand.

15          THE COURT:  We can only talk about one issue

16   at a time.  I'm talking about SORNA.  You're talking

17   about venue.  First, we're going to talk about SORNA.

18          MR. MAHONEY:  Yes, sir.  My apologies to the

19   courts.

20          THE COURT:  Now, look, you had already raised

21   this issue with me in document number 87 in a

22   handwritten pro se motion.  The problem is, I read it

23   and I couldn't understand a word you were saying.

24          However, Attorney Schulman has filed the same

25   issue -- it looks like he's covering the same issue in

1    a very thoughtful, well-presented legal argument which

2    may very well require me to dismiss this case against

3    you.  It may need to be dismissed because of the issue

4    that you tried to raise in document number 87.  You

5    did raise the issue.

6            MR. MAHONEY:  I raised the issue.  But I also

7    cited case law, Judge, which is very, very crucial.

8    Because you've got to cite the case law under Trent --

9    United States versus Trent.  I know what I filed.

10   When you read that, it can tell you -- common sense

11   will say, hey --

12           THE COURT:  See, I get lots of motions every

13   day.

14           MR. MAHONEY:  I do understand that.

15           THE COURT:  And I need people to frame an

16   argument for me so I understand what they're talking

17   about.

18           MR. MAHONEY:  I even cited case law which

19   should be just as good.

20           THE COURT:  Well, actually, it's not.  That's

21   the problem.  That's something that if you were

22   competent to represent yourself you would understand.

23           MR. MAHONEY:  Well, I thought we were raising

24   the issue right now with the motion to dismiss based

25   on the administrative procedure act.

1            THE COURT:  Well, it's a very important

2    issue.

3            MR. MAHONEY:  Yes, it is.

4            THE COURT:  And the problem is this.  It's an

5    interesting issue and it might require the dismissal

6    of your case, which would be the dropping of these

7    charges.

8            The problem is the U.S. Attorney's objection

9    to that motion is not due until June 11th, which is

10   right in the middle of your trial.

11           MR. MAHONEY:  I was under the impression,

12   your Honor, that under the rules of federal -- under

13   the criminal rules of federal procedure that he only

14   has ten days to file an objection.  That was filed on

15   May 24th.

16           THE COURT:  Well, he's got 14 days, number

17   one.  Number two, I didn't even allow --

18           MR. MAHONEY:  Okay.  I make mistakes.

19           THE COURT:  It's not a mistake.  It's a

20   misunderstanding.

21           MR. MAHONEY:  I make mistakes.

22           THE COURT:  I didn't allow late entry of that

23   motion till yesterday, because what I thought Attorney

24   Schulman was moving for late entry for was your

25   handwritten motion on the same issue, and I understood

```
 1   his motion for late entry and I didn't understand your
 2   handwritten motion enough to think it was worth even
 3   considering, frankly, except like at a pretrial
 4   hearing.
 5           MR. MAHONEY:  Well, I just take issue under
 6   the administrative procedure act law that it has to be
 7   that.  I mean, I was indicted on January 18, 2011, but
 8   the law became finalized on January 28, 2011.  But of
 9   course it was filed on December 29, 2010, Judge.
10           THE COURT:  Well, you've made note of the
11   issue, as we say.  What Attorney Schulman has done,
12   though, is explained why it's a problem in a very
13   detailed and thoughtful way.  And Mr. Huftalen
14   needs to -- he needs to file an objection to that
15   because if he doesn't file an objection to it the case
16   will be dismissed.
17           MR. MAHONEY:  I understand that point.  But
18   again, I filed it on April 30th, and of course we
19   didn't have status of counsel so mine should stand
20   since I've even cited case law.
21           It did say specifically:  On December 29,
22   2010, the Attorney General, Eric Holder -- who was up
23   in New Hampshire not too long ago.  We can actually
24   subpoena him in and I will subpoena him in to find out
25   what he did mean under that law, and that's a factual.
```

1    I mean, we want to find out why he kept changing this.

2    But when I raised the issue and gave you the citing

3    case law, he only had ten days -- had 30 days.

4              THE COURT:  I want to make a note for the

5    record, because I'm going to have to rule on -- I may

6    have to rule on this eventually.  Statements like

7    you're going to subpoena the Attorney General of the

8    United States into court --

9              MR. MAHONEY:  I have that right.  I can

10   subpoena anybody that's exculpatory.  And believe me,

11   Judge, I know the Federal Rules of Criminal Procedure.

12   Anything exculpatory.  We'll ask Eric Holder what he

13   said and what he meant on that.

14             THE COURT:  I am telling you that you have a

15   misunderstanding of the law on that issue, and that is

16   yet another reason why if I have to get to that point

17   I will be ruling that you are not competent to

18   represent yourself and may not proceed pro se.

19             MR. MAHONEY:  But I also did file in the

20   First Circuit Court of Appeals -- and I believe it's

21   United States versus Proctor -- that you have to give

22   me a thorough, thorough conolopy (sic) on why I can't

23   represent myself.

24             THE COURT:  Colloquy.

25             MR. MAHONEY:  Conolopy.  Excuse me.  On why I

1  cannot represent myself.

2          THE COURT:  Hold on.  It's not a conolopy.

3  It's a colloquy.

4          MR. MAHONEY:  A colloquy.  Excuse me.

5          THE COURT:  Well, it's important.  You're in

6  court.  You want to represent yourself.

7          MR. MAHONEY:  Well, I'm deaf in one ear, and

8  I can never hear the words right anyway.

9          THE COURT:  Okay.  So here's my question for

10  you.

11          MR. MAHONEY:  Yes.

12          THE COURT:  I want to know if you support

13  this idea.  I want to consider this motion to dismiss

14  your case.  There's authority out there that says it

15  should be dismissed and also authority that says it

16  shouldn't and --

17          MR. MAHONEY:  Well, there's good grounds.

18          THE COURT:  -- the First Circuit, the court

19  that I'm bound by, has not ruled on this issue yet.

20  So in our circuit there's not a lot of developed

21  precedent, but there is precedent from other parts of

22  the country and I need to consider that precedent.  I

23  would like to get the U.S. Attorney's objection to

24  that.

25          I would like to consider whether I should

1    dismiss your case before the trial is held, not during

2    or after, okay?  So what I would like to know -- and I

3    think Mr. Schulman could make a good argument under

4    this law.  He's filed a good brief.  He could make a

5    good argument on your behalf.  I would like to give

6    him the opportunity to do that.

7              My question for you is this.  I know you

8    don't want him to represent you at trial.

9              MR. MAHONEY:  It's not that, Judge.

10             THE COURT:  Here's my question.  Here's my

11   question.  Would you permit -- would you allow me not

12   to rule on their motions to withdraw and your motion

13   to fire them long enough just so we can litigate this

14   motion?

15             MR. MAHONEY:  I would permit that, Judge.  I

16   would permit them to do that just so that it doesn't

17   change anything on the status of counsel because of

18   the fact that, you know, I knew where I was.  I knew

19   where I lived.  I knew what happened.

20             I mean, again, Judge, this is a case that in

21   all the circuits -- and you can even quote me on this

22   because we have a computer over there now in

23   Cheshire -- I'm the only one in the country that has

24   had to register to a 31 year old charge.  That is a

25   disgrace in itself.  When you look at that -- when you

1    look at Bruce Selya's decision where he says in United

2    States versus Stevens, that when you have a case that

3    far back you have to trace the law's subsequent

4    history.  The law's subsequent history says this:  If

5    your probation, your incarceration and your parole

6    were completed before October 31, 1994, you don't have

7    to register unless the sentencing judge said you did.

8           Neither was done.  The case is over.  This is

9    not even a case against me, Judge, because I --

10         THE COURT:  Slow down because the reporter is

11    having a little trouble keeping up with you.

12         MR. MAHONEY:  I'm sorry.  I don't even have

13    to register for that.  When you go back to 1983 --

14         THE COURT:  Slow down.  Slow down.  Here's

15    question number one.

16         MR. MAHONEY:  Sure.

17         THE COURT:  It sounds as if you have agreed

18    to this, but I want to make sure.  I want you to be

19    able to make the record you want to make here.

20         Is everyone here comfortable -- and that

21    means Attorney Schulman, Attorney Garrity and you, Mr.

22    Mahoney.  May I keep under advisement the motion to

23    determine status of counsel filed by Mr. Mahoney, the

24    motion by Mr. Schulman to withdraw, the motion by Mr.

25    Garrity to withdraw, and may I not rule on those until

1   after we've decided your motion to dismiss, Mr.

2   Mahoney, and Attorney Schulman's motion to dismiss on

3   SORNA, so they can stay in the case long enough to

4   argue the legal points on your behalf?

5           MR. MAHONEY:  And we're going to do that

6   today; is that correct?

7           THE COURT:  No.

8           MR. MAHONEY:  Then I would do this, Judge.  I

9   will raise the issue of bail since now we have an

10  issue of taking care of this and since you might be

11  thinking about "dismissing" it.

12          THE COURT:  I can't let you argue your motion

13  till -- his objection is not due yet.  He's not

14  required by the rules to have objected until June

15  11th.

16          MR. MAHONEY:  Your Honor, you just said -- my

17  motion went in April 30, 2012.  You just said that my

18  motion was first.

19          THE COURT:  You're not listening.  Your

20  motion was a pro se motion.

21          MR. MAHONEY:  Right.

22          THE COURT:  You're not allowed to file pro se

23  motions because you have lawyers.  There are rules.

24          MR. MAHONEY:  I understood the Federal Rules

25  of Criminal Procedure.  Those are the rules you've got

1    to play by.  It's like a ball field.

2              THE COURT:  And then Mr. Schulman filed the

3    same motion with much more detail a couple of weeks

4    later.

5              MR. MAHONEY:  Right.

6              THE COURT:  And a motion for late entry.  Now

7    that motion I paid attention to because I understood

8    it.

9              MR. MAHONEY:  Yeah, yeah, yeah.

10             THE COURT:  Okay.  Now, I paid attention to

11   yours by reading it, but I didn't understand it until

12   Mr. Schulman's motion came in and I said to myself,

13   this is what Mr. Mahoney's talking about.  This may be

14   an invalid prosecution based on the timing of the

15   regulations by the Department of Justice.  Now I get

16   it.

17             The problem is I would like to leave these

18   lawyers in the case long enough just to argue that

19   legal motion because I think, based on Attorney

20   Schulman's brief, he'll do a very good job with it.

21             MR. MAHONEY:  If he would, then I would ask

22   the Court to release me on bail since I have 19 months

23   in prison already.  I think to hold me -- under the

24   Eighth Amendment it's cruel and unusual punishment to

25   hold me when a judge is thinking about dismissing the

1  case.  I should be released automatically just based

2  on your wording, Judge.  If you're thinking about

3  something that is valid, that is law, in which we know

4  it is now because it's January 28, 2011, we know

5  that's the -- no matter what, that's the final law.  I

6  should be able to be released with bail on those

7  purposes if your Honor is thinking about dismissing

8  the case.

9          THE COURT:  Well, that's not the law of

10  detention under the federal law that if a motion to

11  dismiss is pending that you should be released on bail

12  as a matter of principle.  That's just not the law.

13          MR. MAHONEY:  Then I would argue a motion for

14  bail today then.

15          THE COURT:  That's a separate issue that if

16  you want to talk about it, we'll get to it, but I need

17  to know whether you will let these two gentlemen

18  sitting with you stay in the case long enough to argue

19  the motion to dismiss.

20          MR. MAHONEY:  Your Honor, in due respect to

21  you, I need to know when you're going to let me be

22  released on bail and when you're going to let me go.

23  That's what I need to know.

24          Now I'm going to ask you the same question

25  because -- I'm not entitled to a perfect trial, but I

1  am entitled to a fair trial.

2          THE COURT:  Right.  The answer to your --

3          MR. MAHONEY:  We'll go halfway.  When are you

4  going to release me?  This year?  Next year?  Ten

5  years from now?  Fifteen years?  Let me know.  That's

6  going to be the big hinge on what I let these two do.

7          THE COURT:  Well, if you want -- okay.  The

8  answer to your question is, you will not be released

9  on bail while that motion is pending.

10          MR. MAHONEY:  Okay.  So I am not going to

11  allow these two guys to -- right now -- I think at

12  this point -- I've been talking to a couple of

13  lawyers, even a friend of one of my friends, Professor

14  Nelson Lovins, who spoke very highly of my --

15          THE COURT:  Stop.  The reporter can't -- you

16  are talking a thousand miles an hour.

17          MR. MAHONEY:  Right.  I think my --

18          THE COURT:  Listen.  She can't keep up.  We

19  can't have a record if you talk that fast and it's --

20  based on my observations, it is difficult for you to

21  restrain yourself from talking that fast.

22          MR. MAHONEY:  It's hard because I'm innocent,

23  Judge.  I'm 100 percent innocent.  I've raised some

24  issues.  You see issues.  Not only did you see issues

25  in the discoveries that the government has put in --

1          THE COURT:  Stop.  We're talking about how

2     fast you talk, and you start talking fast again.

3          MR. MAHONEY:  Right.  I think you've got to

4     decide competency today right now.  You've had it for

5     19 months.  To hell with this.  I mean, if you are

6     going to find me incompetent -- I do have an attorney,

7     a couple of them, that I've been in touch with.  If

8     you want me to spend the money, then I'll have to

9     spend the money.  I don't like doing that because I

10    can represent myself.  But as far as being on bail

11    release, Judge, holding me for 19 months on

12    incompetency --

13         THE COURT:  Slow down.  Wait a minute.  Slow

14    down.

15         MR. MAHONEY:  I've never done that before.

16         THE COURT:  Slow down.  Are you telling the

17    Court that you have the means to hire counsel to

18    represent you?

19         MR. MAHONEY:  No.  I'm not saying that at

20    all.  I'm asking the Court why it's taking him so long

21    to find me competent or incompetent.  That's the

22    problem.

23         THE COURT:  Well, my plan was to rule on that

24    motion today.  However, I would have thought as

25    someone in your position -- and your lawyers may agree

1    or disagree and they can advise you -- but who was in

2    a position to have the case dismissed outright, you

3    might prefer that to a ruling on competency or at

4    least that it precede the ruling on competency.

5    Someone in your position might prefer to have the case

6    decided or dismissed before there was a competency

7    ruling.  You apparently don't even share that view,

8    but I think that maybe someone in your shoes

9    might --

10           MR. MAHONEY:  Right, and I don't --

11           THE COURT:  I would like to hear Attorney

12   Schulman.  He's on his feet.  Please be seated.

13           MR. SCHULMAN:  Thank you, Judge.  The only

14   reason that I rise is that I want to make sure as Mr.

15   Mahoney considers his options that he understands, as

16   we've explained to him, the consequence of whatever

17   determination on competency the Court may make.

18           It's my understanding that if Mr. Mahoney was

19   found incompetent -- and that clearly wouldn't be for

20   lack of intelligence but it would be for an inability

21   to cooperate in his defense and the other matters that

22   were discussed.  If he were found incompetent, the

23   Court would have no choice but to commit him for some

24   period of time, so there would be further commitment,

25   and that would indeed be followed by a determination

1  of whether he was --

2        THE COURT:  Excuse me for a moment.  I'm

3  listening.

4        Mr. Mahoney, I want you to listen to what

5  counsel is saying.

6        MR. MAHONEY:  I just did.

7        THE COURT:  You were shuffling papers.  I'm

8  going to let him continue, but it's important to me

9  that you're hearing it because he's trying to explain

10  to me that if the Court were to determine that you

11  weren't competent there would be a significant period

12  of commitment during the following proceedings, and

13  he's trying to make that point so I want you to hear

14  him, please.

15        MR. SCHULMAN:  Thank you, Judge.  There would

16  be some period of commitment, and then the Court would

17  need to determine whether Mr. Mahoney was restorable

18  to competency.  If he was, he could be committed and

19  restored.  And if he was not restorable -- while the

20  case would be dismissed months and perhaps months and

21  months down the down, as opposed to the time it might

22  take to determine a motion, what would then happen

23  would be a possibility of civil commitment under the

24  civil commitment statute that now I can't obviously

25  opine on.

1           THE COURT:  Right.

2           MR. SCHULMAN:  But a finding of incompetency,

3    while certainly not punitive and not intended as any

4    punishment, could have the result of essentially

5    confinement for a significant period of time.

6           A finding that Mr. Mahoney was competent,

7    while forfeiting a hearing on the motions that were

8    filed, would result in a trial in the near future.

9    But the motion to dismiss could not be decided in what

10   could only be called the most intelligent fashion in

11   terms of letting the government respond in writing and

12   obtaining a recent and deliberative decision from the

13   Court.  Without knowing how the Court might rule, I

14   know that all concerned would believe that when one

15   has a complicated written motion that requires some

16   deliberation for a decision the best way to do it

17   would be to have all parties have suitable time.  So I

18   think as he makes these decisions he should consider

19   those facts.

20           THE COURT:  Now, the only point of that, Mr.

21   Mahoney, and I want it to be clear, a minute ago I

22   said I thought you might want the decision made on the

23   dismissal before a decision made on competency

24   because, as Mr. Schulman points out, a decision on

25   competency could result in a lengthy commitment while

1  other issues are -- and you said to me a minute ago

2  bail is very important to you, being released is

3  important, and I understand that.  That's why I

4  thought it would be a good idea to possibly leave

5  counsel in the case long enough to litigate this

6  motion.  It's not going to take long.  It's due in ten

7  days, this objection.  We can schedule a hearing

8  really shortly right after that on that motion to

9  dismiss.

10          MR. MAHONEY:  That's fine with me, your

11  Honor, and I'm going to speak as quietly and as slowly

12  as I can.

13          THE COURT:  Yeah, do your best to speak

14  slowly.

15          MR. MAHONEY:  I think one of the most

16  important issues we raised, and I raised, and the

17  sister circuit in the Sixth Circuit in United States

18  versus Miller clearly, clearly states that when you

19  leave a state -- you go from New Hampshire, say, to

20  Massachusetts, for an example -- you have to be in

21  that state three -- longer than three business days.

22  Weekends do not count.  It clearly states in Miller.

23  I was not -- I didn't even know the United States

24  marshals were looking for me in October and November.

25          THE COURT:  Excuse me a second.  Counsel.

1          MR. SCHULMAN:  I would caution Mr. Mahoney

2    not to speak about the underlying facts of the case,

3    because whatever he says in this proceeding --

4          THE COURT:  Will be used against him.

5          MR. SCHULMAN:  -- might be used against him

6    at trial.

7          MR. MAHONEY:  I certainly did not think they

8    signed any affidavits in that case as well, if I'm not

9    mistaken, I think, under United States versus Miller.

10   I was not in Massachusetts --

11         THE COURT:  Slow down.

12         MR. MAHONEY:  -- longer than three business

13   days.

14         THE COURT:  What counsel was trying to say,

15   though, was to be careful about speaking about facts

16   because those factual statements you make --

17         MR. MAHONEY:  Right.

18         THE COURT:  Listen -- could be used against

19   you not only in a trial in this Court but in a trial

20   in state court where those very same statements could

21   prove your guilt.

22         MR. MAHONEY:  I understand that, Judge.

23         THE COURT:  Okay.  Just be careful.  He's

24   cautioning you.

25         MR. MAHONEY:  Right.  And the reason there is

1   that's why they haven't called an affirmative defense

2   on the 2250.  That's an affirmative defense because I

3   had a heart attack, Judge, and I was admitted to the

4   hospital.  And my girlfriend, Kimberley Delisle, right

5   there, we were there for two and half months.  I

6   couldn't even be released from that hospital until I

7   had a place to go.  So that would be an affirmative

8   defense.

9          I'm not worried about the state charges or

10  anything about what the state has to do because the

11  state brought forward these charges.

12         The first thing that Detective Pike said,

13  June 20, 2006, Mr. Mahoney pled guilty to a felony,

14  failure to register, in Strafford Superior Court, and

15  we know, and Attorney Huftalen will tell you, that is

16  false.

17         THE COURT:  All right.  Listen.  My question

18  to you was not about -- see, I'm asking you a specific

19  question and you're bringing up a different issue

20  because you feel the need to say it, but we can't

21  conduct court that way.  That's why you can't

22  represent yourself.

23         MR. MAHONEY:  That's why I want to get the

24  jury.  I want to pick the jury on Tuesday of 2012, and

25  let's get this show on the road.

1          THE COURT:  Here's the problem.  Here's why
2   you can't have a jury.  You can't have a jury next
3   week for this reason.  You cannot represent yourself.
4   You're not competent to represent yourself pro se.
5          MR. MAHONEY:  I would object to that because
6   of the fact that Professor Nelson Lovins and a few of
7   my attorneys who I've been with and who I've worked
8   with, including my girlfriend -- I know the law very
9   well, Judge.  I know the elements of the crime, the
10  nature and consequences of the charges.  I know
11  exactly what's going on.  None of you here are even in
12  my caliber.
13         THE COURT:  I know none of us are in your
14  caliber but --
15         MR. MAHONEY:  Not in the caliber of sex
16  offender registration.  No way.
17         THE COURT:  Listen.  Here's the problem.
18  Your knowledge and understanding of the law is not the
19  issue.
20         MR. MAHONEY:  What's the issue then on the
21  competency?  The other one is that I would be a threat
22  to myself, to others and to the community.
23         THE COURT:  No.  Listen.  It's not about --
24  representing one's self or being competent even to
25  stand trial with counsel is not just about

1    understanding the law.  It's about being able to

2    conduct a defense on your own or, if you had counsel,

3    to cooperate with counsel in your defense.  And you --

4    at least on the pro se end of it you are not capable

5    of -- you can't even have a conversation with me in

6    court.

7            MR. MAHONEY:  But, Judge, I get emotional

8    when it says right here, September 23, 1983, I was

9    convicted of rape, and this was in the discovery.

10   Yes, I get emotional about that.  That's a lie.

11           THE COURT:  I understand you do.  The

12   problem, Mr. Mahoney --

13           MR. MAHONEY:  Then you've got to commit me

14   then, if that's what you've got to do, Judge.

15   Nineteen months is nineteen months, and that's it.

16           THE COURT:  Listen, listen.  I understand

17   you're emotional.  The problem is, part of being in

18   court representing yourself is being able to control

19   your emotions well enough to conduct yourself, and my

20   observations and the observations of anyone who has

21   examined you is that you can't.

22           MR. MAHONEY:  Okay.  But you haven't asked me

23   the questions on --

24           THE COURT:  I don't need to ask you -- I can

25   ask you the questions, but I have watched you now for

1    several times.  You can't -- when I ask you a question

2    in court -- which would happen in a trial.  I would

3    ask you questions sometimes.

4          MR. MAHONEY:  Well, it would be objection is

5    sustained or overruled.

6          THE COURT:  Well, it's not just that.

7    Sometimes we talk to each other in court, and you

8    almost never answer my question.  You start in on a

9    speech about something that's bothering you, which is

10   maybe understandable because you're not in control of

11   your emotions.

12         MR. MAHONEY:  When you look at a document --

13   could I please get your Honor to look at this

14   document, please?  Can I please just give this to you

15   to look at?

16         THE COURT:  Sure.  The court security officer

17   will take it.

18         MR. MAHONEY:  Oh, I'm sorry.  I'm sorry.

19   Just look at that and just tell me what you think.

20   Tell me what that -- they both say attempted rape.

21   Let's see what September 23, 1983 says.  Thank you,

22   Judge.

23         THE COURT:  This is an example of what I'm

24   saying.

25         MR. MAHONEY:  This is why I'm upset.

1          THE COURT:  I understand why you're upset.

2    But even if you're upset, lots of people who sit in

3    that chair are upset.

4          MR. MAHONEY:  I know.  But let the jury

5    decide that.  That would be up to them, not up to me.

6          THE COURT:  Well, see, you won't let me talk

7    to you long enough to tell you why that can't happen.

8          MR. MAHONEY:  Okay.  Go ahead.

9          THE COURT:  You cannot represent yourself,

10   and you have "fired" every lawyer that has been

11   appointed for you.

12          MR. MAHONEY:  For good cause.

13          THE COURT:  Listen.  Two of them you've

14   reported to the professional conduct committee for

15   reasons I can tell you are not good cause.

16          MR. MAHONEY:  They didn't cite case law.

17   Ineffective assistance against Attorney Garrity.

18   That's a fact.

19          THE COURT:  Listen.  This is an example of

20   why you cannot represent yourself.

21          MR. MAHONEY:  When are you going to let me

22   out?  That's what I want to know.  You're not giving

23   me a fair trial in the United States District Court.

24          THE COURT:  Here's what I'm thinking.  You

25   want to let a jury decide?

1              MR. MAHONEY:  A jury.  I want it Tuesday to

2      start, as it should be.  No more delays.

3              THE COURT:  Here's the -- Mr. Mahoney, put

4      those papers down.

5              MR. MAHONEY:  That's a speedy trial.

6              THE COURT:  Put those papers down.  It's my

7      job to protect you from the prosecution, and the

8      system has got to be fair to you.  It will not be fair

9      to you if you go to trial on your own.  You're not

10     competent.  And you will not work with any lawyer.  So

11     if you want to get it to a jury, you've got to be able

12     to work with a lawyer.  There's no lawyer that you

13     will let represent you, at least not one that you've

14     met, and any lawyer that could represent you on

15     Tuesday -- listen -- could never be prepared by

16     Tuesday.

17             MR. MAHONEY:  If I may, just one thing?

18     Kimberley Delisle is right here.

19             Kimberley, how many jury trials have I done

20     in the last year?  At least three that I've won.

21             THE COURT:  Hey -- see, lawyers who are

22     competent know that they can't shout to someone in the

23     gallery and ask questions.

24             MR. MAHONEY:  I was just trying to get my

25     girlfriend's opinion because she was there.

1          THE COURT:  I'm not suggesting your
2    girlfriend doesn't know evidence that might be
3    relevant, but you cannot do things that way.
4          My only goal today was to see if you were
5    willing to let these lawyers represent you long enough
6    to argue a motion to dismiss on your behalf.  You've
7    said no.
8          MR. MAHONEY:  I ask you to read the document,
9    Judge, and that's the only part of discovery, and
10   that's a very key issue.  That's beyond reasonable
11   doubt.
12         THE COURT:  I'm about to read it.
13         MR. MAHONEY:  Thank you.  And I think you
14   should release me on that at well, but go ahead.
15   Sorry.
16         THE COURT:  Are you going to let me read it
17   now?
18         MR. MAHONEY:  Yeah, you can read it, Judge.
19         THE COURT:  Okay.  Now your point, of course,
20   is that -- by the way, it has nothing to do with
21   anything we're talking about here except to explain to
22   me why you're upset.
23         MR. MAHONEY:  No.  The document registration
24   form that I had to sign -- it was because of that,
25   Judge, that -- that's it, you know.  That's the truth.

1          THE COURT:  Your point is it states the crime

2    incorrectly.

3          MR. MAHONEY:  That's what -- she was the

4    commissioner at that time, not Holden.  She was the

5    commissioner at that time.  And when she was the

6    commissioner she said, Mr. Mahoney -- and I talked to

7    her on the phone, and as a matter of fact Kimberley

8    Delisle was -- and she said, Mr. Mahoney, you were

9    convicted of aggravated rape on September 23, 1983,

10   and she puts it in her own statement, and that's a

11   fact.  This case should be over just based alone -- on

12   her fact alone.  I had to sign and register to that,

13   Judge, when it was the wrong charge.  Fairness is

14   fairness.  That's why I looked at that.

15         THE COURT:  All right.

16         MR. MAHONEY:  How could a Court get around

17   the facts, the discovery that --

18         THE COURT:  I am not going to -- Mr.

19   Schulman, I am not going to allow your motion to

20   withdraw.  I'm going to request that you remain in the

21   case long enough to argue this motion to dismiss

22   you've filed.  All right?

23         MR. SCHULMAN:  Thank you, your Honor.

24         THE COURT:  I wanted to do it with Mr.

25   Mahoney's consent, but he's unwilling to.

1              MR. MAHONEY:  We're looking at facts that
2    were definitely -- those are not facts, Judge.  Those
3    facts are complete lies right there, and he knows it.
4              THE COURT:  Because I think it would be in
5    Mr. Mahoney's best interest -- for the reasons that
6    you tried to explain a minute ago on the record -- for
7    the motion to dismiss to be resolved before the issue
8    of competency.  Because I don't think he needs to be
9    competent to stand trial for you to represent him on a
10   motion to dismiss.  It's a purely legal argument that
11   he has no role in assisting you with.
12             Mr. Huftalen, your objection is due June
13   11th.  I would like you to do your best to get that
14   filed timely so I can give Mr. Mahoney his hearing as
15   soon as possible.  Because he is right about one
16   thing.  This case is taking too long.
17             MR. MAHONEY:  It is, Judge.  And the speedy
18   trial law just was changed five months ago by Judge
19   Lostoceny Galley and he clearly states, 148 days on
20   incompetency is a disgrace.  It's a disgrace to this
21   Court and to me and to my integrity, and to anyone
22   else in here to say that I'm incompetent to stand
23   trial.  I might be hyper, but that doesn't mean I'm
24   incompetent.  There's a big difference right there.
25   And I do know the laws.  I do know the elements of the

1    crimes.  I do know everything.  But when you look

2    at -- I want Jill Rockey here.  That's my first

3    witness right there on that trial.  And I know you can

4    make me incompetent so I can't have a trial, but in

5    this case, Judge, I'm really, really competent.  And

6    believe me, I'm not incompetent based on facts.

7    Emotions?  Yes, you're right.  But look at that,

8    September 23, 1983, discovery -- and he puts it in

9    discovery.  That should be dismissed right there.

10          THE COURT:  All right.  Now, Mr. Mahoney,

11   I'm going to ask you a question, and I want a straight

12   and calm answer, and I'm going to ask some people in

13   the courtroom if they can add to it.

14          What is the state right now of your

15   medication at Cheshire County?  Are you getting your

16   meds?

17          MR. MAHONEY:  Yes.  I'm getting my own

18   correct medication of Xanax three times a day, and I'm

19   getting my Seroquel three times a day.

20          The only problem we have -- if you notice, I

21   have a cast.  This was done by -- I think I showed you

22   the pictures of the five Rochester police officers who

23   manhandled me.  I do need an operation.  I can no

24   longer walk anymore, but I do need to get my 30

25   milligrams of Oxycodone, which I was getting on the

1    street, and I do need surgery, and I've had this for

2    five weeks.  They do have all the --

3              THE COURT:  Now, see, here's the problem.

4    You're making statements about drugs you were

5    obtaining on the street.

6              MR. MAHONEY:  Well, you're going to hold me

7    incompetent.  I've got to get surgery.

8              THE COURT:  It's very difficult to let you

9    say things and incriminate yourself.

10             MR. MAHONEY:  The pain level alone is very,

11   very aggravating, believe me, and then you've got the

12   90-degree weather.

13             THE COURT:  You are in the county facility in

14   this state which has the most liberal, flexible

15   narcotics policies of any.

16             MR. MAHONEY:  But anything you can try to do

17   to get this pain away that I've been dealing with --

18   and I can't get out and I've been in 19 months.

19             THE COURT:  You're getting your Seroquel.

20             MR. MAHONEY:  I'm getting my Xanax and

21   Seroquel three times a day, morning, noon and night,

22   and I wouldn't ask to go anywhere else.  If the Court

23   found me incompetent, I guess I would ask to remain at

24   the Cheshire County Jail because I'm getting the

25   correct medication and I'm seeing a psychiatrist once

 1 | a week, I mean, but --
 2 | THE COURT: No. If you were found
 3 | incompetent, the proceedings would require that you be
 4 | committed to a federal facility for an evaluation on
 5 | dangerousness -- well, on the ability to restore your
 6 | competency first.
 7 | MR. MAHONEY: Right.
 8 | THE COURT: But that would not be in Cheshire
 9 | County. That would be somewhere --
10 | MR. MAHONEY: Remember, under 4241 your Honor
11 | does have -- under (e), under 4241(e), you do have a
12 | right to release me on a conditional discharge back to
13 | my psychiatrist that I've been seeing for seven years.
14 | Your Honor does have the right.
15 | You have two choices here. One, does he need
16 | to go back and get medication to be turned over to the
17 | Attorney General; or two, I'm making a decision that
18 | Mr. Mahoney can be released on a conditional discharge
19 | back to his doctors.
20 | THE COURT: Slow down. I'm not prepared to
21 | do that.
22 | MR. MAHONEY: I didn't think you would, no.
23 | I mean, I've been held 19 months for nothing. I mean,
24 | you might as well hold me for another goddamn 19
25 | months for nothing with facts like that right there.

1    I want to get her job because, your Honor, she said

2    she was under oath.  She's coming down.  She's being

3    fired for that.  I do have an extra one.  So you can

4    keep that one and put it on your fridge.

5            THE COURT:  When you say "she", who are you

6    talking about?

7            MR. MAHONEY:  Jill Rockey.  September 23,

8    1983, what does that charge say, Judge?  It says rape.

9            THE COURT:  Sit down.

10           MR. MAHONEY:  It doesn't say attempted.  I'm

11   just trying to get this on.  Excuse me here.  You can

12   hold me in contempt, fine, but I have to make a valid

13   excuse.

14           She put on September 23, 1983, as rape.  I

15   signed all those 16 documents for rape, not for

16   attempted rape.

17           Thirty years later he said, nonetheless,

18   we'll bring up a 30 year old case.  Then you've got to

19   change the law's subsequent history.  No, because

20   that's not -- that's not -- this is trial by ambush,

21   Judge.

22           MR. SCHULMAN:  I wanted to address the

23   Court's concern about medication.  Shortly after I

24   began representing Mr. Mahoney I received a list of

25   his medications, which I don't have with me today, and

1    Mr. Mahoney waived his privilege.  I got it directly

2    from the jail at his request.  It sounds like what

3    he's taking now.  I don't know that there's been any

4    change.

5              I've had no cause to go back and seek any

6    sort of evaluation to figure out whether that's the

7    right medication or not.  What I've been told

8    basically from everybody is that the reason he's in

9    Cheshire is because of their medication policy.

10             THE COURT:  Yes.

11             MR. MAHONEY:  Right.

12             MR. SCHULMAN:  So we would presume he's

13   getting the best medication possible but --

14             THE COURT:  It doesn't seem to be controlling

15   his moods here.

16             MR. MAHONEY:  Of course my ankle is numb,

17   too, Judge.  I mean, I have excruciating pain.  This

18   is pain that's chronic.  I have a brace at home that's

19   all metal.  In fact, that was courtesy of the

20   Rochester Police, which I gave you.  I know you don't

21   want to hear that because you don't want to -- you can

22   go to the press conference tomorrow and get those five

23   animals who did this to me -- those five Rochester

24   police officers.  I sent you the colored photographs.

25             THE COURT:  Please be seated.  Mr. Schulman

1  can be seated.  Mr. Garrity.

2          MR. GARRITY:  On the issue of medication, I

3  can tell the Court I've had a couple of conversations

4  with the individual who prescribes medication at

5  Cheshire County, and right now I can't remember his

6  name.  I've got the materials in my file.  He's

7  indicated that Mr. Mahoney has been given the

8  appropriate medication and that he's as --

9          THE COURT:  I guess the stress of today is --

10 go ahead.

11         MR. GARRITY:  -- in as good a state as

12 possible.

13         THE COURT:  I guess the stress of today might

14 have wound things up a little bit, and that's

15 understandable.

16         MR. MAHONEY: Excuse me.  I'm sorry, your

17 Honor.  But like I said, when I see documentation that

18 have been admitted into discoveries -- I mean, she was

19 totally wrong when she said rape.  And I'm sorry.

20 That's a crucial part of this because, you know --

21 first of all, you can go across state lines, so it's

22 not a federal charge.  If you can make me incompetent

23 and then civilly commit me, then of course I would

24 have to hire somebody to take that and then look at

25 the situation and say, hey, did he have a valid

1  federal charge to begin with, and of course --

2          THE COURT:  Let me ask you -- I want to have

3  a calm conversation with you about something.  I'm

4  going to try to do it calm once.  If we can't do it

5  calm, I'm not going to have the conversation, me and

6  you.  Here's my question for you.

7          MR. MAHONEY:  Yes, sir.

8          THE COURT:  I understand you didn't want

9  Attorney Levin and you reported him to the PCC.  You

10  think he did something unethical, and you want him out

11  of the case.  I understand you've done the same thing

12  with Attorney Garrity.  You don't think he should be

13  in the case because he's violated the rules of

14  professional conduct, according to you.  I don't agree

15  with you, but I do understand you.

16          MR. MAHONEY:  It is in the law.

17          THE COURT:  Listen.  I don't agree, but I do

18  understand.

19          MR. MAHONEY:  It just has to be good cause,

20  Judge.  It doesn't have to be specific but just good

21  cause to remove counsel.

22          THE COURT:  So let's get to the next

23  question.

24          MR. MAHONEY:  Yes.

25          THE COURT:  Sitting next to you, to your

1  left, is Attorney Schulman.

2          MR. MAHONEY:  Right.

3          THE COURT:  I think both of your lawyers up

4  till now did a good job for you, but Attorney Schulman

5  is your new lawyer.  He's doing a very good job.  I

6  guess what I need you to do without talking a hundred

7  miles an hour and without yelling --

8          MR. MAHONEY:  I'm sorry.  I'm hyper.

9          THE COURT:  -- I want you to tell me why you

10  want to do something which I view as very unwise,

11  which is proceed without his very able assistance.

12          MR. MAHONEY:  And I'll explain that, Judge.

13  On this instant case that we're at, the September 23,

14  1983 trial, not only did I go to trial on that date

15  way back 30 years ago, but I never in my life ever

16  received from my attorney, Charles Clifford at that

17  time, who I will start litigation when I get out, he

18  never even showed me any evidence.  I was just a

19  21-year-old kid at that time.

20          Now I'm a man.  I've studied law for 28

21  years.  I've done every single case since 1984.  My

22  record, 97 charges, 62 dismissals.  I've had a great

23  record as far as representing myself.  This is a case

24  that went back 30 years ago.

25          Attorney Schulman, he's great.  No way am I

1   more intellectual than him.  But again, he mentioned

2   the fact -- and I know he only parroted it.  He said,

3   hey, September 23, 1983, you have been charged on this

4   motion with attempted rape.

5           But then I come in here a little bit

6   hyperactive saying, wait a minute, this discovery says

7   Jill Rockey.  I had to register for the September 23,

8   1983 charge of rape.  That says rape.

9           THE COURT:  Just take a deep breath.  It

10  sounds like what you're trying to tell me, if I'm

11  reading you -- my question for you is, why would you

12  want to proceed without very good counsel?  I think

13  you're trying to tell me that you just think that --

14          MR. MAHONEY:  He doesn't know the facts,

15  Judge, basically.

16          THE COURT:  Okay.  Is that what it is?

17          MR. MAHONEY:  Absolutely.  He will say

18  September 23rd, but he will say this, attempted rape,

19  but Commissioner Jill Rockey in 2007, five years ago,

20  said, no, you're registered to rape, which was

21  aggravated rape, which is equivalent to aggravated

22  felonious sexual assault.  Every single --

23          THE COURT:  Okay.  I guess what I'm saying

24  is, I think Attorney Schulman has demonstrated to you

25  with his filings that on the law he's very, very able,

1  right?

2        MR. MAHONEY:  Right.  Where I see the

3  inconsistency with this, with your Honor, that it's

4  rape.  Which is it?

5        THE COURT:  Wait a minute.  You're so focused

6  on this little --

7        MR. MAHONEY:  That's a big issue, Judge.

8  That's part of the whole case.

9        THE COURT:  Okay.  But what I'm asking you is

10  this.

11        MR. MAHONEY:  Yes, sir.

12        THE COURT:  He's a very good lawyer.  Don't

13  you think that with very little time and study he

14  could master the facts of this case just as well --

15  not as well as the person who lived through it, but

16  just as well as everybody?  Because remember this and

17  just think about this.  I'm not going to let you

18  represent yourself.

19        Given that that's the case, wouldn't it be

20  wise for you to proceed with a lawyer who is very

21  able, willing to put the time in, willing to obviously

22  fight on your behalf, because he's already fighting?

23        MR. MAHONEY:  Right.

24        THE COURT:  Wouldn't that make more sense to

25  let him do that at your side, litigate this motion to

1   dismiss, and then if possible proceed to trial?

2          MR. MAHONEY:  Right.  And I think at that

3   point -- I think because I'm not going to take the

4   stand, I think it's very essential in any case that

5   I've done and what I've been doing the last three --

6   I'm 3 and 0 in the last three jury trials that I've

7   picked in the panel, and I got one overturnment in the

8   Massachusetts appeals court, but I want the jury to

9   hear from me.  I want them to look me in the face and

10  say -- and let them know that I never lived in

11  Massachusetts from July 31, 2010, till November 5,

12  2010.  I want the jury to hear my voice.  So if I

13  don't take the witness stand I'm not going to --

14          THE COURT:  So as I understand you -- so what

15  you're telling me is really the reason you don't want

16  to proceed with Attorney Schulman or really any

17  lawyer --

18          MR. MAHONEY:  I want the jury to hear from

19  me.

20          THE COURT:  Okay.  Right.  So you think

21  there's no lawyer that would allow you to testify in

22  your own behalf, is what I'm asking you.

23          MR. MAHONEY:  Judge, when you hear from me,

24  what do you hear?  You do hear emotion.  You see

25  discovery that the government put in that says a

1    different charge.  But one thing you're looking at, I

2    never lived in Massachusetts on July 31st.  I'm not

3    showing deception.  You should dismiss this today and

4    hit that hammer.

5              THE COURT:  I'm trying to ask you a question.

6              MR. MAHONEY:  Right.  And my answer is I am

7    innocent and I am going to do what I think is in the

8    best interest of me.  By sitting here being deaf, dumb

9    and mute is not going to cut the cake.

10             But by explaining it to the jury and being

11   cool, calm and collected, because this is my job --

12   although these two lawyers don't think that I'm an

13   attorney, but I am an attorney.  He spoke with Nelson

14   Lovins, he'll tell you, but I want the jury to hear

15   from me, because you know why?  Hey, who gives a shit

16   what he did 31 years ago.  He's --

17             THE COURT:  I'm going to ask you not to

18   swear.

19             MR. MAHONEY:  I'm sorry.  But who cares what

20   he did 30 years ago.  I want to hear it from him.  And

21   then I'll have my suit on and then they can hear it

22   from me.

23             But one thing they don't hear from me, nobody

24   does, you don't hear deception.  They will tell you --

25   my witnesses are there, those are the two girls right

1   there I live with -- I never lived in Massachusetts.

2           THE COURT:  So is it that you don't think an

3   attorney would ever let you testify or is it --

4           MR. MAHONEY:  I can't because --

5           THE COURT:  Let me finish the question.

6           MR. MAHONEY:  Right.

7           THE COURT:  Or is it that you just think a

8   jury needs to see you conduct this litigation?

9           MR. MAHONEY:  I think what I think of this --

10  Judge, what I look at is because of my record.  And

11  I'm not an angel and I'm not trying to tell you I'm an

12  angel.  I did 21 years as an iron worker, but we don't

13  know nothing.  We're dummies.  But anyway, that's what

14  I've always liked about iron workers.  We're just

15  dummies.

16          I want a jury to hear from me.  If I have to

17  sit here -- I cannot take the witness stand just based

18  on my record alone, and I'm not going to.  But if a

19  jury hears from me and they see, oh -- Judge, you know

20  I never lived in Massachusetts, and I can bet you your

21  life you already know the decision.  Mr. Mahoney is so

22  adamant.  I never did.  And those two girls can back

23  me up.

24          THE COURT:  I think I understand now.  I'm

25  going to try to say it, and tell me if I'm wrong.  So

1  your point is -- don't interrupt me, please.  I want

2  to finish the thought.

3          MR. MAHONEY:  I won't Judge.  I won't.

4          THE COURT:  Your point is no lawyer would put

5  you on the stand because of your record.

6          MR. MAHONEY:  I won't go on the stand.  Oh,

7  sorry.

8          THE COURT:  Even if you were a lawyer you

9  wouldn't put yourself on the stand.

10          MR. MAHONEY:  I wouldn't put myself.  I

11  wouldn't put any of my clients on the stand if I'm an

12  attorney.

13          THE COURT:  It allows you to be heard by the

14  jury --

15          MR. MAHONEY:  Right.

16          THE COURT:  -- without taking the stand.

17          MR. MAHONEY:  Right.  And they could hear the

18  deception.  Because you know I never lived there.  Now

19  let's be honest.  You see the record there on 122.

20  Clearly it's September 23, 1983 rape.  You should

21  dismiss it.  The hammer should be down now, case

22  dismissed automatically, and not based on competency.

23  I am an emotional person, but that's part of being

24  emotional.  My leg has been fractured in 17 places.

25          THE COURT:  Okay.  Charli --

1           THE CLERK:  Yes, Judge.

2           MR. MAHONEY:  So like that's my information

3    as to --

4           THE COURT:  Well, I think I understand you

5    now.  I actually do see your point now.

6           MR. MAHONEY:  You do?

7           THE COURT:  I can't let you represent

8    yourself.

9           MR. MAHONEY:  But I can fight that, too, in

10   the First Circuit.  That's why we've got the First

11   Circuit, so we can file appeal requests, which I will

12   do if you deny that.  Because that is a perfect

13   motion, by the way, motion to dismiss and proceed pro

14   se.  I think that was very well put together, Judge,

15   but you didn't give me the credit for that, but it

16   was.  I did that myself.

17          THE COURT:  All right.  Now, the motion for

18   recusal, to recuse me, number 47, that's denied as

19   baseless.

20          The motion to determine status of counsel,

21   number 83, that remains under advisement.

22          Number 84, the motion for Andrew Schulman to

23   withdraw, that remains under advisement pending

24   resolution of document number 92, the motion to

25   dismiss the case under SORNA.

1          Number 85, the motion to dismiss counsel and

2     proceed pro se, that is under advisement.

3          Motion number 86, motion for Paul Garrity to

4     withdraw, that's granted.  There's no reason for the

5     taxpayers to pay two counsel for this case.  Mr.

6     Schulman appears to be -- and because Mr. Mahoney is

7     laboring under the impression -- I say a delusion --

8     but under the impression that Mr. Garrity has

9     committed some type of unethical conduct and that

10    there's good cause to discharge him, I'm going to

11    allow him out of the case.

12          MR. MAHONEY:  We seek labor that's the truth,

13    Judge.  That's all.

14          THE COURT:  The motion to dismiss, number 87,

15    that Mr. Mahoney filed pro se, it's a pro se motion

16    and therefore an improper motion.  It will be

17    considered, though, in light of motion number 92,

18    which is the same motion.  It's the same motion.

19          MR. MAHONEY:  It's status of counsel.

20          THE COURT:  No, it's not status of counsel.

21    It's the motion to dismiss which Mr. Schulman filed.

22    It's making the same point you raised in motion number

23    87, but it's making it in a much more detailed way.

24          MR. MAHONEY:  I would just hope Tuesday that

25    we would have the trial, Judge, and we would be able

1   to get it underway really, because I've got 127

2   witnesses I have to call, including Eric Holder, and

3   I'll insist that he gets this case because I want to

4   hear what his administrative procedural act is and

5   when he made that retroactive.  I believe that's

6   crucial.

7           THE COURT:  Those issues are going to be

8   actually decided and resolved in the concept of a

9   motion to dismiss.  I can assure you with great

10  certainty that we will not be hearing evidence from

11  the attorney general on that.

12          MR. MAHONEY:  It's exculpatory.  It's in my

13  favor.

14          THE COURT:  Yeah, I know.  I know you think

15  you understand how that part of the constitution

16  works, but your understanding while in some ways valid

17  is flawed in many others and has holes in it.  And I

18  wish I could explain that to you, but I can't because

19  I don't think you will listen to me.  The whole

20  exculpatory evidence analysis doesn't really pertain

21  to that issue.

22          The issues about the applicability of SORNA

23  and when it became applicable, whether it had

24  retroactive effect and the ways that you have

25  questioned are issues yet to be decided without the

1    testimony of the Attorney General of the United

2    States.

3                MR. MAHONEY:  Right.  Well --

4                THE COURT:  I'm ruling here on motions.

5    Please don't interrupt me.

6                Number 91 was already granted, and that is as

7    far I'm willing to go today.

8                I asked about the meds only because you're

9    agitated today but I think -- I'm told that your meds

10   are working well.

11               MR. MAHONEY:  Yeah.

12               THE COURT:  In general, I think it's just the

13   stress of today that's got you a little bit excited.

14               MR. MAHONEY:  My leg and my arm.  And of

15   course the documents that have been presented in this

16   case to me under the discovery rules, Judge, under

17   Brady versus Maryland and --

18               THE COURT:  Do you want me to keep this

19   letter that you gave me?  Do you want to keep it?  Do

20   you have another one?

21               MR. MAHONEY:  I have another one, Judge.  You

22   may keep that one, if you like.  I have another one.

23   But I think it speaks really, really for itself.

24   That's one of the key issues.  She will be the first

25   witness.  If I am lucky enough to get a jury trial,

1    she'll be the first witness on this case because she

2    clearly said rape.

3           THE COURT:  Well, if you're competent to

4    stand trial and to assist your counsel in the conduct

5    of trial, you will get a jury trial hopefully in

6    fairly short order.  But I'm not going to make that

7    decision until I decide if I should dismiss your case

8    outright under the applicable law that you and

9    Attorney Schulman have raised.  Yes, sir.

10          MR. SCHULMAN:  Judge, I don't think -- I

11   could be wrong -- when you were listing off the

12   motions that you ruled on Mr. Mahoney's pro se motion.

13   He called it a motion in limine to dismiss for

14   improper venue.

15          THE COURT:  Yes.

16          MR. SCHULMAN:  And he had an attached case.

17   There was an objection that was filed by the

18   government to that motion.

19          THE COURT:  Let me ask you this question.

20   Will you be supplementing that motion in any way?

21          MR. SCHULMAN:  I certainly can.  I think --

22   as the government noted, there's an issue of proof

23   aspect to it that might come up in the context of a

24   Rule 29 motion, and I think at least -- I think at

25   least --

1          THE COURT:  Right.  You're telling me that

2   you think it's a colorable issue but perhaps in a

3   different procedural posture?

4          MR. SCHULMAN:  I think that it's a colorable

5   issue that if it were mine to raise I would not likely

6   have raised it in this posture.  It having been

7   raised, do I think it's colorable to argue?  I suppose

8   it's colorable to argue, and I can supplement it.

9          I'm not arguing at all against what Mr.

10  Mahoney is suggesting by saying that the same issue --

11  as frequently happens -- can come up at different

12  junctures in a case, and the best juncture for it to

13  come up --

14          THE COURT:  Rule 29.

15          MR. SCHULMAN:  -- would be one with facts.

16  But nonetheless, I think I would like the opportunity

17  to supplement it seeing as he went to the trouble to

18  brief an issue that does have some law behind it.

19          THE COURT:  Okay.  I agree.  What I'll do is

20  this.  I will let you adopt that motion as counsel, so

21  it's no longer an improper motion, it's filed with

22  counsel, and I'll let you supplement it.  How much

23  time would you like?

24          MR. SCHULMAN:  A week.

25          THE COURT:  All right.  A week.  The U.S.

1  Attorney has already objected.  If you need to

2  supplement your objection, we'll let you do that.

3          MR. HUFTALEN:  Thank you.

4          THE COURT:  All right.  So a week would be --

5  a week from today is the 8th.  All right.  Thank you,

6  counsel.

7          MR. SCHULMAN:  Thank you.

8          MR. MAHONEY:  Thank you.

9          THE COURT:  I just leave you with this, Mr.

10  Mahoney -- with just something to think about.  You've

11  had very able counsel throughout the case, and you've

12  got very able counsel now.  I think you should -- I

13  understand your point that you would like the benefit

14  of the jury hearing from you and seeing --

15          MR. MAHONEY:  Deception.  There's no

16  deception in my voice.

17          THE COURT:  -- and seeing that you're earnest

18  and --

19          MR. MAHONEY:  Absolutely.

20          THE COURT:  -- not deceiving them without

21  having to take the stand.

22          MR. MAHONEY:  Absolutely.

23          THE COURT:  It's a tactical decision.

24          MR. MAHONEY:  It's a strategical decision.

25          THE COURT:  Right.

1           MR. MAHONEY:  I want to correct that.

2           THE COURT:  We have strategy and we have

3    tactics --

4           MR. MAHONEY:  Right, right.

5           THE COURT:  -- in furtherance of strategy,

6    and those are decisions counsel makes.

7           I will say this to you.  Given that you

8    know -- and you know this -- I'm not going to permit

9    you to proceed pro se, you should consider the

10   possibility of allowing Mr. Schulman to continue.  If

11   you're devoted to the idea of taking it all of the way

12   up to the circuit and the Supreme Court that you

13   should be allowed to represent yourself, I guess

14   there's nothing I can say to dissuade you, but you

15   should consider Mr. Schulman continuing as your

16   counsel.

17          MR. MAHONEY:  Again, Judge, I just want to

18   reflect that -- I mean, this isn't an instant case

19   where this just happened.  We're talking about a 30

20   year old case, Judge, and we're talking about police

21   reports that are unreadable.  So, first of all, we're

22   going to need an expert to read those documents which

23   I think the government is saying that I had to

24   register to.

25          I sent Attorney Schulman those discoveries

1    and he's -- not one person in this courtroom can read

2    the 1983 police report.

3              THE COURT:  Okay.  That said --

4              MR. MAHONEY:  That's crazy.  That's what I'm

5    being charged with.

6              THE COURT:  I want to hear from Mr. Schulman

7    in a minute, but you just said you're going to need an

8    expert to read the reports.  You want to go to trial

9    Tuesday.

10             MR. MAHONEY:  I'm ready Tuesday, Judge.  I'm

11   ready to pick a jury, and then I'll have my witnesses

12   subpoenaed.

13             But you've got to remember one thing, Judge.

14   When the United States marshals went into my house and

15   they asked me if I lived at 115 Elm Street -- first,

16   this is just for the record -- not only did my mother

17   and father and sisters say I didn't live there, but

18   they haven't seen me or talked to me in eleven years.

19   That's the only woman I've talked to in eleven years

20   right there.  Period.  This is factual.

21             THE COURT:  It sounds like you're telling

22   me -- tell me if I'm wrong.  It sounds like you're

23   telling me that it's more important to you that the

24   jury hear you than it is that you successfully

25   represent yourself and achieve an acquittal; is that

1 true?

2          MR. MAHONEY:  I would think at this point

3 because of the fact that --

4          THE COURT:  Before you go on a speech, answer

5 me yes or no.

6          MR. MAHONEY:  Yes, because of the fact that

7 if I win this jury trial I'm going to ask your Honor

8 to dismiss it with prejudice, which means it will

9 never ever be brought up again, meaning I will never

10 ever have to register again.  I think that's really

11 the point I want to get across.

12          THE COURT:  Oh, you'll never have to register

13 again.  Okay.

14          MR. MAHONEY:  I'll never have to register

15 again.  Oh, no.  That will be me back here.  This is a

16 30 year old case.

17          THE COURT:  And you think that would be the

18 result of an acquittal?

19          MR. MAHONEY:  I believe I would have to get

20 an acquittal because I never lived in Massachusetts or

21 went across state lines.

22          THE COURT:  Well, my question to you was --

23 and I want to hear from Attorney Schulman because I

24 cut him off a minute ago.  Did you understand me?  It

25 sounds to me like it's more important for you to be

1    able to tell your story to a jury than it is to

2    achieve an acquittal.

3              MR. MAHONEY:  Well, I mean, I think it would

4    be because I want to set a precedent in this case that

5    you cannot just federally charge people that you

6    assume went across state lines.

7              I'm presumed innocent, Judge.  Remember that.

8    I'm presumed innocent.  I never, ever, ever lived in

9    Massachusetts from July 31, 2010 to November 5, 2010.

10   How many times do I have to -- I'll stay here -- you

11   can hang me today.

12             THE COURT:  Slow down.  Slow down.  She's

13   trying to keep up.

14             Mr. Schulman, what did you want to say?

15             MR. SCHULMAN:  What I think I need to say is

16   the following:  I'm delighted to stay on as counsel of

17   record.  I would be delighted to stay on as standby

18   counsel.  I would be delighted if Mr. Mahoney wants me

19   to withdraw and the Court ordered that.  Whatever the

20   Court orders, I am happy with and clearly have no

21   personal interest in the outcome of what my status is.

22             But if I am counsel of record, my

23   understanding is that what my job would then be to do,

24   and is presently because I am counsel of record, would

25   be to develop the trial strategy certainly in

conjunction and consultation with Mr. Mahoney.  But at the end of the day my -- if I am ordered to be counsel of record -- and I need to make this clear really in this setting because it sort of plays into whether that would work -- I would be ethically responsible -- responsible from a Sixth Amendment point of view and responsible as an attorney to develop the trial strategy, to decide what witnesses to call, and Mr. Mahoney's legal responsibility would be to decide whether to plead guilty or not and whether to testify.

I would have a job to listen to him, but I can tell the Court I'm not calling 127 witnesses.  I submitted a witness list that had something like six. Of those six probably four would be called and a couple might be called by the government.

THE COURT:  Okay.  Understood.

MR. MAHONEY:  It's exculpatory.  We've got to look at the word exculpatory.  Nelson Lovins is coming in here, and he's my attorney.  He doesn't have my witness list.  He's coming in here.  He's the one that I had the appointment with.

And he said I was arrested in Boston, which I was, but I was arrested on a train platform on the fourth day going back home to New Hampshire.

MR. SCHULMAN:  Well, he actually was on the

1 | witness list.

2 | THE COURT:  You were going to call counsel?

3 | MR. SCHULMAN:  I was going to call him, but

4 | since we don't have a release of information it's a

5 | little difficult to know precisely what he would

6 | testify to.

7 | The offer of proof is that there was to be

8 | perhaps an appointment on November 3rd or November 4th

9 | and that would explain why Mr. Mahoney was in Boston

10 | at that time because that's what he was doing.  He was

11 | seeing that attorney.

12 | THE COURT:  All right.

13 | MR. SCHULMAN:  However, it's a little bit

14 | difficult without the release to know what he's going

15 | to say.

16 | But putting that aside.  For instance, we've

17 | heard today a great deal about what Trooper Rockey put

18 | in that letter.  No disrespect at all intended to Mr.

19 | Mahoney whether or not the letter is correct, but that

20 | would not --

21 | THE COURT:  Make any difference.

22 | MR. SCHULMAN:  That would not make any

23 | difference at trial.  I would not focus on it.

24 | THE COURT:  I understand.

25 | MR. SCHULMAN:  Within the bounds of ethics,

1    and as counsel of record, the trial strategy I think

2    needs to be up to counsel.  That's why you have

3    counsel.

4              MR. MAHONEY:  If I may, Judge.

5              THE COURT:  No, you may not.

6              Mr. Huftalen, is there anything you want to

7    say before we wrap this up?

8              MR. HUFTALEN:  No.  Thank you.

9              THE COURT:  Okay.  All right then.  We are on

10   track to litigate the motion to dismiss, which is a

11   very interesting issue, under SORNA.  We will do that,

12   and then if necessary proceed to a competency

13   evaluation from there.  I guess no one else has

14   anything to say.

15             Mr. Garrity, I want to thank you for your

16   service to the Court.  I know it's been trying.  Not

17   every case -- it's not every case where you have your

18   clients accusing you of misconduct and reporting you

19   to the PCC, but I want you to know I appreciate the

20   zeal with which you've represented Mr. Mahoney, the

21   professionalism that you exhibited and the patience.

22             MR. GARRITY:  No problem, Judge.

23             THE COURT:  But your motion is granted.

24             MR. GARRITY:  I appreciate it.

25             THE COURT:  You are released from your

1    representation of Mr. Mahoney.

2              MR. GARRITY:   Thank you.

3              THE COURT:   We are in recess.

4              (Conclusion of hearing 3:50 p.m.)

1                     C E R T I F I C A T E

2

3

4          I, Susan M. Bateman, do hereby certify that the

5   foregoing transcript is a true and accurate

6   transcription of the within proceedings, to the best of

7   my knowledge, skill, ability and belief.

8

9

10  Submitted: 8-3-12      /s/   Susan M. Bateman
                           SUSAN M. BATEMAN, LCR, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25