*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 11/1/12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
UNITED STATES OF AMERICA          *
                                  *  11-cr-06-JL
            v.                    *  April 21, 2011
                                  *  1:25 p.m.
BRIAN MAHONEY                     *
                                  *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SHOW CAUSE HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

| | |
|---|---|
| For the Government: | Arnold Huftalen, AUSA<br>U.S. Attorney's Office<br>53 Pleasant Street<br>Concord, NH 03301 |
| For the Defendant: | Paul Garrity, Esq.<br>14 Londonderry Road<br>Londonderry, NH  03053 |
| Court Reporter: | Sandra L. Bailey, LCR, CM, CRR<br>Official Court Reporter<br>United States District Court<br>55 Pleasant Street<br>Concord, NH  03301<br>(603)225-1454 |

1               BEFORE THE COURT

2          THE CLERK:  The court has before it for

3   consideration this afternoon a show cause hearing in

4   Criminal Case 06-cr-05-JL, United States of America

5   versus Brian Mahoney.

6          THE COURT:  All right, we're here for a couple

7   reasons for Mr. Mahoney.  He's filed a motion to dismiss

8   his case for failure to state a claim as well as an

9   alternative request for a bill of particulars to more

10  specifically describe the claim.

11         He also filed a pro se motion, wrote a

12  handwritten motion, I think, Mr. Mahoney, was to get

13  your counsel replaced, right, you want a new lawyer?

14         THE DEFENDANT:  I want to represent myself.  I

15  think we have made that very perfectly clear I think on

16  February 18th that day.  I really didn't want an

17  attorney appointed.  You said that was the federal law.

18  But I think at this point I think it's very important

19  that I take this case myself pro se.

20         THE COURT:  You can do that.

21         THE DEFENDANT:  Thank you, judge.

22         THE COURT:  I assume you're going to want

23  counsel to assist you standby at trial?

24         THE DEFENDANT:  Judge, at this point I don't

25  really trust anybody in the federal level at this point

 1   as far as attorneys go.  This is the same exact carbon
 2   copy of November 16 when I walked out the front door,
 3   and I was hoping I could walk out the front door today.
 4   But I don't think at this point that I really want
 5   anybody to be standby at this point.  I think I'll go
 6   pro se specifically myself, and that is my right under
 7   the Sixth Amendment to the United States Constitution.
 8   I believe it's a guaranteed fundamental right under the
 9   Sixth Amendment that I can represent this case myself.
10              THE COURT:  Yeah, you're right.  Yeah, we can
11   do that.  I think what I'll probably do, and I'll ask
12   you some questions about that when the time comes about,
13   just to make sure you understand what you're giving up
14   and that's what you want to do.
15              THE DEFENDANT:  Yes, I want to sign a waiver,
16   and then of course we can get into an abandonment,
17   especially forfeiture to waive, but I do want to sign a
18   waiver voluntarily to waive my rights to counsel.
19              THE COURT:  Okay, what I'll probably wind up
20   doing, now think about this, because you can go pro se.
21   I may appoint a lawyer not to be with you as standby
22   counsel, literally just to be in the courtroom away from
23   you to -- if I have questions, if I want to consult, and
24   if I want to give you an opportunity to do it once in a
25   while.

1             THE DEFENDANT:  You know, I think there's one
2    question we could really start at the beginning is since
3    I've been incarcerated here in the state of New
4    Hampshire and removed forcibly from the state of
5    Massachusetts, I have yet under Rule 16, I have never
6    seen one piece of paper regarding any discovery, and I
7    believe, you know, that's a rule, federal, you know --
8             THE COURT:  It's a rule of federal procedure.
9             THE DEFENDANT:  I haven't seen anything, sir,
10   I haven't seen one documentation but yet we're going to
11   go forward with these motions, and I think in this
12   instance and I think the government has to come up with
13   some sort of discovery, judge, and I haven't got a piece
14   of paper, not one.
15            THE COURT:  Attorney Garrity, what's the
16   status of discovery?
17            MR. GARRITY:  I received about three packets
18   of material from Attorney Levin's office, and I've been
19   receiving ongoing pieces of information from Mr.
20   Huftalen.  I received just yesterday a copy of a
21   transcript and I received, I can't give you the exact
22   date, another transcript with respect to the detention
23   hearing, and Mr. Huftalen and myself had discussions
24   about additional information coming my way.
25            THE COURT:  All right.  Attorney Huftalen,

5

```
 1   what's your position on the state of discovery now in
 2   terms of where are you on your obligations?
 3            MR. HUFTALEN:  We've complied with Rule 16.
 4            THE COURT:  All right.  So you, at least as
 5   far as you know, with what you have you've turned over
 6   to defense counsel.
 7            MR. HUFTALEN:  Yes.
 8            THE COURT:  Consistent with your obligations
 9   under the rule; right?
10            MR. HUFTALEN:  Yes.
11            THE COURT:  All right.  What's your normal
12   practice in a case like this, Attorney Garrity, with
13   respect to providing copies to your client?
14            MR. GARRITY:  To copy it and give a copy to
15   the client.
16            THE COURT:  And have you done that in this
17   case?
18            MR. GARRITY:  Not all of it, judge, no.
19            THE COURT:  Any of it?
20            MR. GARRITY:  I've given copies of the
21   transcript I believe and court orders and pleadings, but
22   I have not given all of the copies to Mr. Mahoney.
23            THE COURT:  Well, let's do that right away.
24            MR. GARRITY:  Sure.
25            THE COURT:  All right, let's get that done
```

 1  right away.

 2          THE DEFENDANT:  I haven't received anything,

 3  judge.  So I just want to make that clear to the court

 4  that Attorney Garrity hasn't given me one ounce of

 5  documentation so that is perfectly understood, because I

 6  don't want to mislead you, judge, or this court, but I

 7  haven't received one documentation.

 8          THE COURT:  To make sure, then, maybe there's

 9  been a miscommunication here, the bottom line is let's

10  make sure everything you have you make a copy of and get

11  it over to the facility where Mr. Mahoney is being

12  incarcerated.

13          MR. GARRITY:  I will, your Honor.

14          THE COURT:  Thank you.  Now, okay, one step at

15  a time here.  I really wanted to ask you about, you

16  know, you filed a motion, I'm not accustomed to

17  receiving motions where people use the F word directed

18  at me.  This shows contempt of the court.  I want to ask

19  your lawyer about that, so let me do that first, okay.

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  But I think it's -- I'm less

22  concerned about that now than I was before, because I

23  can tell you're very, very, right now you're very, very

24  wound up.

25          THE DEFENDANT:  I haven't received any of my

                                                                   7

1    psychotic medicines since February 4, judge, I've been
2    on medications for seven years.  I'm hyperactive and I'm
3    bipolar and I think that's essential for when you do
4    anything, especially for my condition, I have a chemical
5    imbalance of the brain, but I will tell you one thing, I
6    haven't had my medications to balance myself off and
7    I've been taking them for seven years and the Strafford
8    County House Corrections has not provided even though my
9    doctor and my wife of 18 years, remember, went to the
10   jail on numerous times and the jail has refused to give
11   me those, so before we leave maybe you can give me a
12   court order to make sure I get that medication.  That's
13   very essential.  Even though it's medications for
14   psychiatric behavior, it still does not interfere with
15   my 27 career as a pro se attorney.
16            THE COURT:  Do you know anything about this,
17   Attorney Garrity?
18            MR. GARRITY:  I didn't know that he was not
19   actually getting medication.  I know from --
20            THE COURT:  He said he's not getting his
21   medication.
22            THE DEFENDANT:  I'm not.  I gave medical
23   reports that clearly states that I get Xanax, that I get
24   Seroquel, that I get oxycodone.  I was beaten half to
25   death by two different police forces over this

8

1   particular case of failure to register, and I haven't

2   registered, and I will never registered ever again, nor

3   will I register at all --

4           THE COURT:  Don't say too much about that.

5           THE DEFENDANT:  Well, I know, but I just want

6   to make it perfectly clear and I just want to make sure

7   I'm perfectly clear, I'm never going to register.

8   That's what this whole thing is about, judge, we're

9   talking about a Fifth Amendment right.

10          THE COURT:  Let me stay on your medication

11  right now.

12          THE DEFENDANT:  Thank you.

13          MR. GARRITY:  The little I knew about it was

14  from speaking with Mr. Huftalen where he talked about

15  perhaps the jail should address his meds, but I did not

16  know that he was not receiving any medication while at

17  Strafford.

18          THE COURT:  Okay.  Just so I'm clear, is

19  anybody here from the Marshal Service who is in a

20  position to really know about that issue?

21          DEPUTY MARSHAL:  We can check on it, judge.

22          THE COURT:  Right now nobody is?

23          DEPUTY MARSHAL:  No.

24          THE COURT:  All right.  Who would be?

25          DEPUTY MARSHAL:  We will have to check with

                                                                  9

```
 1    Strafford County itself.
 2            THE COURT:  Well, there's got to be somebody
 3    in the Marshal Service who knows his situation.
 4            DEPUTY MARSHAL:  We will go down and check
 5    with our clerk to see if she has any paperwork on it.
 6            THE DEFENDANT:  I do, I gave it to my
 7    attorney, you know, I gave it to him a month ago, yes,
 8    Mr. Mahoney does take bipolar medication and attention
 9    deficit hyperactivity medication as well as chronic
10    pain, oxycodone 30 milligrams.
11            THE COURT:  Are you getting anything in the
12    facility?
13            THE DEFENDANT:  Zero.  It is causing a very
14    serious problem because of the fact that, hey, I'm
15    different than everybody else.  I'm very hyperactive,
16    but that doesn't mean that it takes away my knowledge of
17    law.
18            THE COURT:  No, I know, it doesn't.  However,
19    I'm concerned about your competency for this reason.
20            THE DEFENDANT:  Well, you know, you should be
21    at this stage because I haven't received medication.
22    There's been some instances here in the jail, here at
23    the holding tank, and even with Mr. Garrity last night,
24    there have been instances that I don't think it's fair
25    to me when I don't have my medications.
```

1          THE COURT:  Try to take a deep breath.  Listen
2    to me.  I'm agreeing with you.  What I'm saying is I
3    have concerns about your competency because in the state
4    you're in right now, I think it would be very difficult
5    for you to be a competent -- a defendant who is
6    competent to stand trial maybe because -- maybe because
7    you haven't had your meds, it may be something else, but
8    right now you're so wound up that it would be difficult
9    to imagine anybody working with you on a defense which
10   you need.
11         THE DEFENDANT:  Well, that's --
12         THE COURT:  Now wait, hear me out.  And I was
13   considering sending you for an evaluation, however, one
14   thing I didn't know, I might have forgotten, Attorney
15   Levin is here, he might have told me this before, I
16   don't remember, but if you received serious medication
17   for seven years and then since you've been in the jail
18   you haven't received any, that might go a long way to
19   understanding why you're having difficulty now and why
20   you might not be competent to stand trial in your
21   current state.
22         Are you comfortable talking to me about this,
23   Attorney Levin, on the record?
24         MR. LEVIN:  Yes, your Honor.  My understanding
25   was when, when I was representing Mr. Mahoney that he

1   was not getting his medication at the jail.  Now, he had
2   just come in and he had just been there for a couple
3   weeks at that point.  And so I was hopeful that, you
4   know, it takes them a while to assemble his records and
5   to evaluate him, but I was hopeful that, you know, after
6   not too much more time passed he would be getting his
7   medications.  I'm not sure what the situation is now.  I
8   think, you know, I could go down to the marshal's office
9   and ask Wanda to call over and come back up.  But my
10  understanding is, at least when I was still representing
11  him, he had not been receiving his medications and that
12  he does need medications for bipolar disorder and ADHD.
13          THE COURT:  Okay.
14          MR. GARRITY:  And, judge, if I could say, I
15  think the medication issue interplays with --
16          THE COURT:  That might very well be the key to
17  this whole problem.
18          MR. GARRITY:  It could.
19          THE COURT:  I mean, if you're bipolar and you
20  have ADHD and those medications would even out your mood
21  and help you focus a little bit, it would probably be a
22  lot less likely that you would be incompetent.  Let's
23  face it.
24          So the bottom line was, Attorney Levin, when
25  the case was only a few weeks old you weren't as

```
 1   concerned at that point.  Now we're months later and
 2   still no meds.
 3           MR. LEVIN:  Well, I mean, I was concerned but
 4   I felt confident that after they evaluated him based on
 5   having presented over there that they would make sure
 6   that he had his medications.  They certainly knew that
 7   he had mental health issues at that point.
 8           THE COURT:  All right.
 9           MR. LEVIN:  I just don't know what the
10   situation is now, and if he isn't getting his meds, I
11   don't know why.
12           THE COURT:  Okay.  I don't either.
13           MR. GARRITY:  And, judge, I guess I, I can
14   only say I'm shocked that he hasn't received meds the
15   way he presents.
16           THE COURT:  The last thing before we, we're
17   going to probably shut this hearing down just for a few
18   minutes.  Any light you can shed on this, Attorney
19   Huftalen?
20           MR. HUFTALEN:  No.
21           THE COURT:  Okay, here is what I want to do.
22   I want to get to the bottom of the situation with the
23   U.S. Marshals who probably, they are in the best
24   position to let me know what the jail knows about you
25   and what they've been giving you, which you say is
```

13

```
 1    nothing.  I'm going to ask you to wait for a few minutes
 2    while I look into this.
 3              THE DEFENDANT:  They tried an alternative
 4    medication but it didn't work well, your Honor, it broke
 5    out my face.
 6              THE COURT:  Oh, they tried one with you?
 7              THE DEFENDANT:  They tried something that --
 8    Depakote, but Depakote is far from Xanax and far from
 9    Seroquel, things that I need to sleep and things that I
10    need to relax, and I'll tell you why, because it's a
11    very, very hectic case, it's a case that, you know, this
12    is a case that, and I do understand your position, that
13    you really are concerned about my mental health issues,
14    but I tell you what, judge, after seeing the objection
15    letter from prosecutor Huftalen, there is not one thing
16    right about that, judge, and when you see a document
17    like that, you want to attack that document ASAP
18    immediately to the court and bring it to your attention
19    that, hey, he's mentioning an assault with an intent to
20    rape.  I always fought to clear my name on an issue of
21    aggravated felonious --
22              THE COURT:  Calm down.  But if you get your
23    wish here you're going to be representing yourself, and
24    you're going to be able to do all the attacking of the
25    papers you want to do, okay?
```

1             THE DEFENDANT:  Yes, sir.

2             THE COURT:  But what I want to ask you to do,

3    I don't want to make you sit in there --

4             THE DEFENDANT:  I've been in jail already for

5    six months.

6             THE COURT:  Well, I mean sitting there in the

7    chair in the courtroom while I look into this for a few

8    minutes.

9             THE DEFENDANT:  Okay.

10            THE COURT:  Okay?  So I'm going to have you

11   brought back into a cell, all right?

12            THE DEFENDANT:  Okay.

13            THE COURT:  You need to keep it, try to keep

14   it down for a little bit.

15            THE DEFENDANT:  Yeah, like I say, I'm just

16   anxious to get this case over with.  I'm anxious to get

17   this case in front of you, judge.  You seem like a very

18   ethical and diligent judge, more than I can say for

19   Massachusetts, and the judges in Massachusetts have been

20   totally against me, so every time I go to a court, it's

21   me against everybody else, so.

22            THE COURT:  Okay.  We're going to be in

23   recess.  I'm going to ask you to detain -- keep him in

24   your custody and I'll look into this matter on my own.

25   It should just be a few minutes.

15

1          (Recess taken.)

2          THE COURT:  All right, we're in for a little

3    bit of time pressure here because we have other

4    proceedings lined up that we need to get to.

5          What I've been spending some time doing, Mr.

6    Mahoney, through the U.S. Marshal Service, is trying to

7    get to the bottom of your medical situation at the jail.

8    The limitation has been, you know, predictable, their

9    computer system is down, but we did speak to the nurse

10   that spoke to you about your medical condition, your

11   psychiatric conditions, and they made an initial

12   determination about what you ought to take, and I guess

13   after that you did see a doctor.  You did see a doctor.

14   But the bottom line, it sounds like to me that their

15   position is you haven't been cooperative with them about

16   what you need.  You've told them what you used to get

17   and that's what you want, and that's understandable.

18   But when they're not willing to give you exactly what

19   you want you then are not willing to continue the

20   conversation with them.

21         THE DEFENDANT:  I have tried alternate

22   medication, I don't know if she told you that, judge.

23         THE COURT:  Gave you a rash, right?

24         THE DEFENDANT:  They gave me a rash on my face

25   and broke me out quite a bit, so, and I have a very

16

```
 1   unique system because like you said, I have seizure
 2   problems, so I did give them the documentation and of
 3   course my doctor did call them up and I gave them
 4   irrefutable evidence which is prima facie evidence, I
 5   gave them documentation I've been on it for seven years,
 6   so to make the determination to give some alternative
 7   medication when I've been on it for so long, it's
 8   really, really, it's really uncalled for, but if --
 9            THE COURT:  Well, you my be right about that.
10   Let me look into it.  What's your doctor's name?
11            THE DEFENDANT:  My psychiatrist is Dr. Diana
12   Haile.
13            THE COURT:  Diana Haile?
14            THE WITNESS:  Yes.
15            THE COURT:  And where does she practice, Mr.
16   Mahoney.
17            THE DEFENDANT:  She's out of Avis Goodwin
18   Health Center on Old Rollinsford Road, Dover, New
19   Hampshire.
20            THE COURT:  In Dover.
21            THE DEFENDANT:  Yes.  03821.
22            THE COURT:  Here's what I want to do.  I want
23   to get -- rather than have a jail decide what you need,
24   I want to have you evaluated; okay?
25            THE DEFENDANT:  If that's what the court
```

1  likes.

2           THE COURT:  I want to have you evaluated by a
3  psychiatrist who you can talk to.  And I also want to
4  make sure that the psychiatrist gets your whole medical
5  file from the jail, plus I want to leave Attorney
6  Garrity on the case just for now.  I know you don't want
7  him.

8           THE DEFENDANT:  Okay.

9           THE COURT:  Just to get in touch with your
10 wife to get whatever records she has.  Does she have
11 any?

12          THE DEFENDANT:  Yup.

13          THE COURT:  We can get those records, get them
14 down to the facility so the doctor can talk to you and
15 see everything you want him to see.

16          THE DEFENDANT:  Okay, I believe the jail
17 already has the records.  I have signed all the release
18 reforms for that and they do have --

19          THE COURT:  If they have everything, even the
20 better.

21          THE DEFENDANT:  They have everything.  They
22 should already, judge, when I signed the release form,
23 mental health counselor Linda, I don't know her last
24 name.

25          THE COURT:  Okay.  That's what I want to do.

1              THE DEFENDANT:  Okay.

2              THE COURT:  I'd like to leave Attorney Garrity

3    on the case until the evaluation is over.  If you still

4    don't want him, then I will release him.  But it will

5    just be someone to make sure the process is going

6    forward on your behalf.  Not the case, just the

7    evaluation for right now.

8              THE DEFENDANT:  I don't have a problem with

9    Attorney Garrity staying on the case at all as long as I

10   can be the lead attorney in this matter, judge, because

11   I think it's very essential when you go back 27 and

12   29 years, no one in this courtroom, including yourself,

13   cannot, cannot go back.  You don't know the context of

14   the case.  I know the context of the case, what happened

15   to me, what I was charged with, what I was acquitted of.

16   These things, this is the U.S. District Court, there is

17   a guaranteed constitutional right under the Fifth and

18   14th Amendment.  I don't have to explain anything to

19   anybody on the Fifth Amendment and the 14th which have

20   due process rights.  I mean, the 29-year-old case is

21   still active and I have an appeal, I shouldn't even have

22   to be speaking about that, and that's assault with

23   intent to rape by the way.

24             THE COURT:  All right, I don't want you to say

25   anything more, all right?

```
 1                THE DEFENDANT:  Yes, sir.
 2                THE COURT:  Here is how I'm going to do this.
 3    I view this, by the way, just for the record here, we're
 4    on the record, this is a joint motion by the defense and
 5    by the prosecution under 18 United States Code 4241 for
 6    a competency evaluation of Mr. Mahoney.  What I'd like
 7    to know is an opinion from a psychiatrist, A, if he's
 8    competent to stand trial; and B, if he's not in his
 9    current state, are there medications that would render
10    him -- that would bring him back to competence, and I
11    think there are.  That's a very layman's observation
12    right now, but that's what I think.  I'm hoping that's
13    the case so we can get you to trial, all right?
14                THE DEFENDANT:  Yes, sir.
15                THE COURT:  That's a joint motion.  It's
16    granted.  I'll issue an order in just a few minutes.
17    That's what is going to happen, okay?
18                THE DEFENDANT:  Okay.
19                THE COURT:  All right.  And then once we get
20    that answer we're going to deal with your motion to
21    dismiss for a bill of particulars and your motion to
22    represent yourself.
23                THE DEFENDANT:  Yes, I believe there also is a
24    motion that's very, very crucial to this case.  It's a
25    show cause motion to see if there is even enough
```

20

1  evidence to go forward with trial.  And you know what,

2  judge, I hate to say it, because I have gone to Suffolk

3  University Law School, they taught me to be the best,

4  guess what, there is no evidence to suggest this case

5  can go past --

6            THE COURT:  Well, I'll take it under

7  advisement for now, but I will address the motion when

8  we get back.

9            All right, so ordered.  I'll get this order

10 out the today.

11           THE DEFENDANT:  Thank you, your Honor.

12           THE COURT:  Thank you for your patience, Mr.

13 Mahoney.

14           (Court adjourned at 2:10 p.m.)

15              C E R T I F I C A T E

16

17           I, Sandra L. Bailey, do hereby certify that

18 the foregoing transcript is a true and accurate

19 transcription of the within proceedings, to the best of

20 my knowledge, skill, ability and belief.

21

22

23 Submitted: 8/3/12        _____

24                          **SANDRA L. BAILEY, LCR, CM, CRR**

25                          LICENSED COURT REPORTER, NO. 15
                            STATE OF NEW HAMPSHIRE