\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 11/1/12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                   *
UNITED STATES OF AMERICA           *
                                   *  11-cr-06-01-JL
              v.                   *  August 16, 2011
                                   *  2:05 p.m.
BRIAN MAHONEY                      *
                                   *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

For the Government:   Arnold Huftalen, AUSA
                      U.S. Attorney's Office
                      53 Pleasant Street
                      Concord, NH 03301

For the Defendant:    Paul Garrity, Esq.
                      14 Londonderry Road
                      Londonderry, NH  03053

Court Reporter:       Sandra L. Bailey, LCR, CM, CRR
                      Official Court Reporter
                      United States District Court
                      55 Pleasant Street
                      Concord, NH  03301
                      (603)225-1454

2

1      (Counsel in chambers with judge.)
2                IN OPEN COURT
3      THE CLERK: The court has before it for
4  consideration today a status conference in Criminal Case
5  11-cr-06-01-JL, United States of America versus Brian
6  Mahoney.
7      THE COURT: All right, this is a status
8  conference we're here for today, Mr. Mahoney.
9      THE DEFENDANT: Your Honor.
10     THE COURT: Good to see you again. How are
11 you feeling?
12     THE DEFENDANT: Good, doing good, your Honor,
13 thank you.
14     THE COURT: Good. All right, there's a number
15 of motions that have been filed, so let's sort of work
16 through them together and we will be able to figure out
17 where we are.
18     There's been motions filed by Mr. Mahoney
19 himself. There's been motions filed by his defense
20 counsel on his behalf and defense counsel on his own
21 behalf to withdraw, and so we need to figure out where
22 we are with status of counsel and the status of the
23 case.
24     So Mister, I guess we will start with, we will
25 move chronologically, Mr. Garrity, you moved to withdraw

1   from the case on July 26th, and that was, and the U.S.

2   Attorney objected to that motion.  You want to be heard

3   on that?

4           MR. GARRITY:  Judge, at this point in time I'm

5   asking to withdraw that motion to withdraw.  Mr.

6   Mahoney, I spoke with him today, he indicated different

7   than what I indicate in that motion, that he wishes to

8   have me remain as his attorney.

9           THE COURT:  All right.  Is that true, Mr.

10  Mahoney?

11          THE DEFENDANT:  That is true, your Honor, that

12  is true, I think we've got together, finally getting all

13  the facts together for the first time, so I'm very

14  pleased with the representation of attorney Paul

15  Garrity.

16          THE COURT:  Okay, so number 33 is withdrawn,

17  Kellie.  You can sit down.

18          THE DEFENDANT:  Thank you, your Honor.

19          THE COURT:  Now, there's a related motion to

20  that would be a motion for ineffective counsel which I

21  construe as basically a motion on your part to discharge

22  Attorney Garrity.  Do you withdraw that motion?

23          THE DEFENDANT:  Yes, I do, your Honor.

24          THE COURT:  All right.  That motion is

25  withdrawn.  You want Mr. Garrity to remain your counsel?

1           THE DEFENDANT:  I do, your Honor.

2           THE COURT:  And you no longer think that the

3  allegations of ineffectiveness that you made in that

4  motion, you no longer stand by them?

5           THE DEFENDANT:  No, your Honor, I do not.

6           THE COURT:  All right.  Now -- so that's two

7  of the motions.  Document number 36 -- oh, by the way,

8  Kellie, that was motion number 35 that's withdrawn as is

9  33.

10          Motion to compel, it's a pro se motion, and

11  there's a couple of letters that sort of go along with

12  it, but Document 36 is a motion to compel.  I'm not sure

13  I understand what you're asking me in this motion, but

14  the bottom line is that since you have counsel, what I'm

15  going to do is this, since you have counsel I'm going to

16  let Mr. Garrity review that motion and decide what he

17  wants to do with it.

18          Are you prepared to talk about that now, Mr.

19  Garrity, or do you want me to give you some time?

20          MR. GARRITY:  Could I have some time on that,

21  judge?

22          THE COURT:  Sure.  Here's the ruling.  The

23  motion to compel is denied without prejudice.  It's

24  denied without prejudice because pro se motions, when

25  you have counsel, are improper, however, I am ordering

1    Mr. Garrity to review document number 36, the motion to
2    compel, and if it's relief that you would like to
3    request, you should refile the motion.  So it's only
4    denied without prejudice; all right?
5              THE DEFENDANT:  Thank you, your Honor.
6              THE COURT:  36 is without prejudice.  Okay.
7    Now document number 40 was a motion for a hearing which
8    I granted in part and we're here for today just to sort
9    of go through things.
10             Okay, and I look at document number 40 which
11   is a motion for a hearing and I'm construing it
12   basically in conjunction with document number 42 which
13   is a motion for services other than counsel.  Mr.
14   Mahoney, in case you're not up to speed on this, I think
15   you are, Mr. Garrity, we've all reviewed the competency
16   evaluation that was conducted.  It appears to indicate
17   that you are competent to stand trial, that you
18   understand these proceedings, and you're able to assist
19   your counsel --
20             THE DEFENDANT:  I do, your Honor.
21             THE COURT:  -- in preparing your defense.  I
22   don't have any reason to disbelieve that.  Counsel has
23   represented to me, though, he thinks it would be best to
24   have an independent evaluation done really on your
25   behalf.

6

1        THE DEFENDANT: Yes, your Honor.
2        THE COURT: An expert appointed for you. I'm
3   prepared to do that if you don't have a problem with
4   that.
5        THE DEFENDANT: I don't, your Honor, I'll
6   accept that and I'll have another second opinion as to
7   the competency again with an independent doctor.
8        THE COURT: Okay. So I'm going to grant
9   document number 42, Kellie. That's granted.
10       Now, document number 40, then, requests a
11  competency hearing, Attorney Garrity. Why don't I --
12       MR. GARRITY: Judge, if I could, I don't think
13  we need that at this point in time until I hear from my
14  expert.
15       THE COURT: Exactly, so here is what I'll do.
16  Again, document number 40 which asks for this hearing
17  and some other things, is granted in part to the extent
18  that this hearing was granted. The rest of it is denied
19  without prejudice to you refiling a request for a
20  competency hearing if you in consultation with your
21  client sit and determine that you want such a hearing.
22       MR. GARRITY: Thank you.
23       THE COURT: Are you satisfied with that, Mr.
24  Huftalen?
25       MR. HUFTALEN: Yes. In the ordinary course

7

1   the court usually schedules an evidentiary hearing
2   whether both sides agree or disagree, and Mr. Aframe is
3   telling me he's researched the issue thoroughly and if
4   all of the parties agree that the defendant is competent
5   based on the reports, an evidentiary hearing is not
6   required, so I think it's appropriate for you to defer
7   and at the conclusion of the independent eval address
8   the issue.
9           THE COURT:  Yeah, I agree.  I will say this,
10  though, I don't think that -- and it has not been my
11  practice to schedule an evidentiary hearing on
12  competency evaluations, and I talked to a couple other
13  members of the court about this, which is to only, once
14  the report comes in, to provide it to counsel and if
15  they want to request relief such as a hearing based on
16  the report, to proceed with that, but I agree with
17  Attorney Aframe that if everyone agrees that no
18  competency hearing is necessary, there's no reason to
19  schedule one.
20          MR. GARRITY:  I don't think so, judge, but I
21  think the court still has to make the determination that
22  he is competent.
23          THE COURT:  I see, okay.  Well, we will cross
24  that bridge when we come to it.
25          Okay, then, now there's a motion, we're almost

8

1   at the end here of the motions and then we will talk
2   about whatever you want to talk about in terms of going
3   forward.  Document number 41 is a further motion to
4   dismiss that was filed pro se by Mr. Mahoney, and I've
5   read it, I've reviewed everything that's attached to it,
6   including a letter to the clerk.  What I'll do with this
7   again, since it was filed pro se, procedurally improper,
8   I will deny it without prejudice, but Attorney Garrity,
9   if that's a motion that you want to reassert on your
10  client's behalf, you're free to do that.
11            MR. GARRITY:  I will, thank you.
12            THE COURT:  All right.  All right, that covers
13  the court's issues.  Anything else anybody wants -- do
14  we have a trial date?
15            MR. HUFTALEN:  We do.  I believe it's
16  September 7th.  I'll represent to the court that Mr.
17  Garrity and Mr. Mahoney and I spoke before we spoke with
18  you in chambers, and I suggested to Mr. Mahoney that he,
19  his attorney and I sit down and review what has now
20  become voluminous discovery.  We intend to pursue that
21  and hope to get it done within the next week, and if we
22  can move this case forward, we'll advise the court in
23  that regard.
24            THE COURT:  So nobody is asking for a
25  continuance at least yet?

1          MR. GARRITY:  Can I have one second, judge?

2          THE COURT:  Sure, take your time.

3          (Pause.)

4          MR. GARRITY:  Judge, Mr. Mahoney is asking

5    that the case be continued given that we don't know

6    exactly when I can get Dr. Mart over there to evaluate

7    him.  I guess everybody's intent is that we come

8    together and hopefully come to an agreement soon, but I

9    don't know what Dr. Mart's schedule is.

10         THE COURT:  Having this discussion, yeah, the

11   competency evaluation is going to have to occur before a

12   plea anyway, a plea or a trial.

13         MR. GARRITY:  Right.

14         THE COURT:  So, the bottom line is have your

15   discussions.  If you need -- what is the, Kellie, do you

16   know when the final pretrial is?

17         THE CLERK:  It is scheduled for August 29th at

18   11.

19         THE COURT:  August 29th, so, obviously if you

20   do want a continuance, get that filed before the

21   pretrial.

22         MR. GARRITY:  I will.

23         THE COURT:  A few days in advance, okay?

24         MR. GARRITY:  And Mr. Mahoney is, he's asking

25   that it be continued.

```
 1              THE COURT:  Well, understood, and we have that
 2   on the record, but that's a written motion that we need
 3   with this pretrial waiver, and if you decide you want to
 4   go that route, you file a motion.
 5              MR. GARRITY:  I will, thank you.
 6              THE COURT:  Mr. Huftalen, anything else?
 7              MR. HUFTALEN:  No, sir.
 8              THE COURT:  Okay, then, I appreciate
 9   everybody's approach to these issues.
10              Mr. Mahoney, is there anything, you know,
11   you've been down to be evaluated and you're back,
12   anything you want to say to me?
13              THE DEFENDANT:  Your Honor, one thing is the
14   medication that I was prescribed, it really is too heavy
15   for me.  It really made me, it made me really, you know
16   it really wasn't as effective as I thought it would be.
17   I talked to him up in the Federal Medical Center.  He
18   did say if that medication didn't work or I didn't feel
19   as though that mood medication is working, that mood
20   stabilizer, and since I've been on a mood stabilizer for
21   three years with my own psychiatrist, and that was
22   Seroquel 300 milligrams, and all he allegedly did is put
23   me on 900 milligrams and said use that medication.  The
24   medication is really, really strong.  And I think the
25   medication of Seroquel and Xanax which I've been getting
```

1    for the past seven years, I would like to see that the
2    court order today.  I did talk to the mental health
3    advisor and she told me if there's a court order by
4    Judge Laplante to give him medications of Xanax and
5    Seroquel, which I've had every time I've ever been at
6    the Strafford County House of Corrections, except for
7    this one instance here that I have not been able to get
8    that.  I think it's important to get the correct
9    medication, and I think that at this point is the
10   correct medication now that I have counsel, and if I can
11   get a court order today, judge, and they can start that
12   medication next week.
13           THE COURT:  Well, I do agree with you that the
14   correct medication is important.  However, I think what
15   I'd like to do is hear what Dr. Mart says about that.
16   And let's ask him to make a recommendation in that
17   regard.
18           MR. GARRITY:  Judge, I'm sorry to interrupt,
19   he's a psychologist, not a psychiatrist.
20           THE COURT:  Oh.
21           MR. GARRITY:  But I think he could at least
22   indicate what he thinks the proper medication is.
23           THE COURT:  Yeah, I think so.  You may be
24   right.  I mean, you certainly, as a mood moderator,
25   whatever they've given you now seems to be working very

```
 1   well.  You're less agitated than the last time we spoke.

 2   Even when you're agitated, you usually express yourself

 3   very clearly.

 4             THE DEFENDANT:  I try to.

 5             THE COURT:  But today it's even more clear

 6   because you've slowed down a bit and I'm following you

 7   much more easily.  So at some level this medication is

 8   doing you some good.  But if you think you're being

 9   over-medicated a bit, I understand.  Let's see what Dr.

10   Mart says about it and we will work from there.

11             THE DEFENDANT:  Okay.

12             THE COURT:  I'm not a doctor, so I'm not

13   prepared to -- nothing I read in the evaluation suggests

14   to me that I should be ordering a change in your

15   medication, but if a subsequent evaluation by Dr. Mart

16   tells me so, I'm certainly willing to consider it, and

17   I'm sure the U.S. Marshal Service are as well.

18             THE DEFENDANT:  Thank you.  The reason why I'm

19   more stable is because of the fact I've been getting all

20   the facts together finally.

21             THE COURT:  You got some discovery.

22             THE DEFENDANT:  Finally the discovery is

23   coming together clearly and hopefully we can come to a

24   resolution in this matter soon.

25             THE COURT:  Let me ask you this question.  You
```

1   mentioned doctor, what was his name, Himilaya (ph)?
2           THE DEFENDANT:  Dr. Hymabani (ph), he's a
3   psychiatrist.  I've seen him twice.  I have seen my own
4   psychiatrist for seven years, and she has been with me
5   for, and I stick with my own psychiatrist for the past
6   several years, so she has given me Xanax and Seroquel
7   for seven years now.
8           THE COURT:  Okay, so Dr. Hymabani (ph).
9           THE DEFENDANT:  Dr. Hymabani (ph), right.
10          THE COURT:  Hymabani (ph)?
11          THE DEFENDANT:  Dr. Hymabani (ph), right.
12          THE COURT:  Okay, and he saw you where?
13          THE DEFENDANT:  He saw me at the Federal
14  Medical Center in Fort Devens.  Rather than have to go
15  back there, which I wouldn't want to, I'd rather see if
16  I can get a court ruling here to get back to the
17  medications that I've been on for seven years, judge.
18          THE COURT:  Did Dr. Hymabani (ph) at least
19  appear to you, though, to be trying to work in your best
20  interest?
21          THE DEFENDANT:  He was.  Again, I've only seen
22  him two hours in two visits in the past eight weeks that
23  I was there, and I don't think that's really -- he did
24  say to try this and see if it could, you know, make me
25  competent, but it really was more making me incompetent

1    than it was making me competent because it was 900

2    milligrams two times a day, 18 hundred, that's a lot of

3    medication for me.

4             THE COURT:  But do you have any question he

5    was at least trying to do what's right for you?

6             THE DEFENDANT:  I think the medication that

7    I've done right is with my psychiatrist, Dr. Diana

8    Haile, and of course I had my medications right up to

9    November of 2010 which Dr. Kissin said that, so I think

10   the reasoning here is when I became a pretrial, on

11   pretrial detention, from that point on I could not get

12   the correct medication, and I did try other medications

13   like Depakote and got a rash on my face, I think we

14   talked about the last time in front of the court, your

15   Honor.

16            THE COURT:  What about Dr. Marion Kissin who

17   conducted your evaluation?

18            THE DEFENDANT:  She did my psychological,

19   she's a psychologist, your Honor, so she can't really

20   say anything about prescribed medication, but she did

21   confirm that I was on Xanax and Seroquel as well as Dr.

22   Hymabani with my primary care psychiatrist, Dr. Diana

23   Haile.

24            THE COURT:  Did you have any question about

25   Dr. Kissin, though, trying to work in your best

1   interest?

2           THE DEFENDANT:  No, no, Dr. Kissin is really,
3   for the most part, has said pretty much what it is.  I
4   think I put myself in a position to be at this level as
5   far as speaking clearly and well, I did go to college.
6   I did become an iron worker.  So I think she pretty much
7   summed it up.  I'm a little bit hyper, but that doesn't
8   make me incompetent.

9           THE COURT:  No, I think that's a, based on
10  what I've observed that's a very accurate evaluation.
11  Let me ask you this.  Who was it that told you if you
12  got a court order your medication would be changed?

13          THE DEFENDANT:  The last time I was down there
14  on April 22nd, when I came back I said that I should
15  have got a court order, and oh yeah, court order, it was
16  Linda, she's the mental health counselor.

17          THE COURT:  Where?

18          THE DEFENDANT:  This was in Strafford County
19  House of Corrections.

20          THE COURT:  Strafford County.  Well, look,
21  I'll just say to the marshals, look --

22          THE DEFENDANT:  She said any court order by
23  the court.

24          THE COURT:  The court doesn't order, as you
25  know, the court doesn't order change in medication, but

1    I'm just going to instruct the U.S. Marshal to instruct
2    the facility to, you know, to instruct the facility to
3    evaluate the situation and work with Mr. Mahoney to, you
4    know, to have the facility review the evaluation.  It's
5    sealed though, isn't it?
6              THE DEFENDANT:  It is sealed.  It's
7    confidential, your Honor, and I wouldn't want to make it
8    assessable to them, although I did give Linda my seven
9    years' worth of Xanax and Seroquel, which she does have.
10   She says any court order by Judge Laplante she'd abide
11   by it of course.
12             THE COURT:  Well, so I can't give you the
13   evaluation, but please instruct them to work with Mr.
14   Mahoney about possibly adjusting his meds in a way that,
15   you know, would make him a little more comfortable.  All
16   right?  Okay then.
17             THE DEFENDANT:  Thank you, your Honor.
18             THE COURT:  Anybody else have anything they
19   want to cover?
20             MR. GARRITY:  No, your Honor.
21             THE COURT:  I appreciate it and I'll see you
22   hopefully soon.
23             THE DEFENDANT:  Thank you, judge, very much.
24             (Court adjourned at 2:35 p.m.)
25

```
 1

 2                     C E R T I F I C A T E

 3

 4        I, Sandra L. Bailey, do hereby certify that

 5   the foregoing transcript is a true and accurate

 6   transcription of the within proceedings, to the best of

 7   my knowledge, skill, ability and belief.

 8

 9

10   Submitted: 8/3/12
                           SANDRA L. BAILEY, LCR, CM, CRR
11                         LICENSED COURT REPORTER, NO. 15
12                         STATE OF NEW HAMPSHIRE
13

14

15

16

17

18

19

20

21

22

23

24

25
```