\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 11/1/12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *  11-cr-06-01-JL
            v.                  *  November 8, 2011
                                *  2:10 p.m.
BRIAN MAHONEY                   *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

For the Government:   Arnold Huftalen, AUSA
                      U.S. Attorney's Office
                      53 Pleasant Street
                      Concord, NH 03301

For the Defendant:    Paul Garrity, Esq.
                      14 Londonderry Road
                      Londonderry, NH  03053

Court Reporter:       Sandra L. Bailey, LCR, CM, CRR
                      Official Court Reporter
                      United States District Court
                      55 Pleasant Street
                      Concord, NH  03301
                      (603)225-1454

```
 1              (Counsel in chambers with judge.)

 2                        IN OPEN COURT

 3              THE CLERK:  The court has before it for

 4   consideration this afternoon a status hearing in

 5   Criminal Case 11-cr-6-JL, United States of America

 6   versus Brian Mahoney.

 7              THE COURT:  When I came out from chambers, Mr.

 8   Mahoney was having a conversation with his lawyer.  Did

 9   you want to continue that conversation, did you have

10   enough time to talk to your lawyer?

11              THE DEFENDANT:  Yeah.

12              THE COURT:  Are you okay?

13              THE DEFENDANT:  Yup.

14              THE COURT:  All right.  This hearing deals

15   with a sealed exhibit, and I want to make sure, this is

16   a sealed courtroom right now, Charli?

17              THE CLERK:  No, judge.

18              THE COURT:  Should it be, counsel?  I don't

19   think so, actually, no, I don't think so as long as the

20   document remains sealed.  Okay.

21              What we have here, what's been before the

22   court here for a number of hearings are really two

23   primary issues that are preliminary.  One is the status

24   of counsel, and the second is the defendant's competency

25   to stand trial and competency to waive his right to the
```

1   assistance of counsel.

2          Let me ask you today, Mr. Mahoney.  Do you

3   still maintain your position that you'd like to, you can

4   remain seated, you can remain seated, do you still

5   maintain the position that you would like to either

6   proceed pro se without counsel?  In other words, you

7   don't want the assistance of Attorney Garrity?

8          THE DEFENDANT:  Well, I mean, I have him as

9   standby counsel.  I think at this particular level,

10  judge, I think I just explained that to Attorney

11  Garrity, that I've been studying these sex offender

12  registry laws since 1999 and of course since they've

13  been looking for me since 2003.  That was one of the

14  reasons why I actually moved to New Hampshire 1999, the

15  New Hampshire case which I cited right away, it was

16  cases that I've been familiar with the Megan's Law Act,

17  as well as the, of course I just became familiar with

18  the Adam Walsh Act which I didn't know even existed

19  until November 5, 2010.

20         THE COURT:  So if I found that you were

21  competent to waive your right to proceed with counsel,

22  you would like to proceed with Attorney Garrity as

23  standby counsel?

24         THE DEFENDANT:  That's correct.

25         THE COURT:  Just to advise you.  All right.

4

 1          THE DEFENDANT:  Yes.  We talked that over

 2    already about that issue because of the fact that at

 3    this point I think we're supposed to get into trial on

 4    December 6th if in fact it even goes to that level, I

 5    think at this point I'm really ready for trial.  Of

 6    course I have a few more motions today as well.

 7          THE COURT:  All right.  Now, okay, now I want

 8    to make sure about this because it's important.  You

 9    filed some papers in court alleging misconduct, okay, on

10    the part of Attorney Garrity and myself on a prior case

11    before I was a judge, and that's serious and --

12          THE DEFENDANT:  It's serious.

13          THE COURT:  And if you have questions about

14    Attorney Garrity's professional competence and his

15    ethics, that is important, even if he's just standby

16    counsel.  So, I mean, if you maintain those positions

17    we're going to have, at some point we're going to have

18    to talk about that.  Do you understand?

19          THE DEFENDANT:  I do.

20          THE COURT:  Because if those are things you

21    really believe about Attorney Garrity, that he did that

22    and that I was party to it, you know, it's something we

23    need to resolve before we had a trial, okay.  Because

24    afterward, if the trial, frankly, if the trial resulted

25    in your conviction, we wouldn't want to have to do the

1   whole trial over on the grounds that you claim that you

2   had a corrupt judge and an unethical lawyer.  Do you

3   understand?

4            THE DEFENDANT:  I understand that, that's

5   correct.

6            THE COURT:  So, as of today are you

7   maintaining those positions that you have a --

8            THE DEFENDANT:  Well, you know, judge, when

9   you get back to citing case law which I --

10            THE COURT:  Can you just tell me yes or no if

11   you maintain those positions?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Okay.  All right, so, we will

14   cross those bridges when we come to them.

15            THE DEFENDANT:  That's correct.

16            THE COURT:  Now, step one, are you competent.

17   Are you competent to participate in a criminal trial,

18   and as a preliminary to that, are you competent to waive

19   your right to the assistance of counsel.  So, I have an

20   October 20, 2011 report from Dr. Eric Mart from Highland

21   Psychological Services.  Have you had a chance to read

22   that?

23            THE DEFENDANT:  I did.

24            THE COURT:  Okay.

25            THE DEFENDANT:  I did, your Honor.

1              THE COURT:  Now, obviously Dr. Mart has opined

2    that you are not competent to stand trial.

3              THE DEFENDANT:  That's correct.

4              THE COURT:  We have the Bureau of Prisons that

5    said, as you pointed out last hearing, you are competent

6    to stand trial.  When I have that, I need to have a

7    formal competency hearing where I actually hear from Dr.

8    Mart, hear from the -- actually proceed whatever way

9    you'd like, but I think the best scenario here would be

10   to submit these professionals to live testimony and

11   cross-examination, especially -- I assume -- your

12   position is that you're competent, right?

13             THE DEFENDANT:  Yeah, well, I would have to

14   ask that I was competent in this position but the court

15   would have to render a decision if I'm competent or if

16   I'm incompetent and that decision would have to be

17   forthcoming today.

18             THE COURT:  No --

19             THE DEFENDANT:  If you can't, then what I have

20   to do is I mainly have to have all my doctors be

21   subpoenaed in as well, Dr. Haile, Dr. Bernard, Rachel

22   Wenzel, psychotherapist Dr. Lavoie.  That could be a

23   very costly situation.  It could be very time consuming.

24   I think at this point I think a negotiation level could

25   come to maybe an agreement at this particular time about

1   this particular crime as a crime that is essentially

2   non-violent, and of course I do have a motion today

3   about the modification of the judge's detention hearing

4   which I've been held for 12 months, and of course being

5   competent is one thing but being incompetent is another.

6   Of course I did read Dr. Mart's opinion.  He did state

7   that this man needs psychiatric counseling.  There's

8   none where I am at the jail.  This man needs medication.

9   There's none that's been given to me at this particular

10  time, and to put me back into that environment would be

11  a violation of the Fourth Amendment right under the

12  United States Constitution.  I believe that's a due

13  process right.  So I have a right to be released today

14  based on my opinion that I go back to my psychiatrist, I

15  go back to get the proper medication, at this point I

16  don't get any medications at all or do I have any

17  psychiatric counseling, judge, and I think that's a very

18  crucial issue that the court has to decide on today,

19  what's the best interest for Mr. Mahoney, per se, if

20  he's competent or incompetent, we have two different

21  opinions, but to really keep me incarcerated when I've

22  been in for 12 months when the charges, the evidence is

23  very weak at best and there's been new evidence that has

24  come forward.  Judge, I think the very, very crucial

25  part about this, there wasn't a violation of federal law

 1    which has to be violated in order for you to render an

 2    opinion.  You can't just say I'm going to make an

 3    opinion on Mr. Mahoney when no violation of federal law

 4    took place.

 5            THE COURT:  Well, the grand jury already

 6    determined there's probable cause, so that's why you're

 7    in court.  A jury doesn't have to find you guilty before

 8    I can address your competence.

 9            THE DEFENDANT:  But I'm also presumed innocent

10    until found guilty, but of course a prior investigator

11    has found witnesses that have, you know, substantially

12    come up with new evidence in the case that say, hey, Mr.

13    Mahoney never left the state of New Hampshire, and

14    that's factual.  That's not allegations.  And when you

15    have that type of determination, hey, the evidence is

16    weak, I should be released today and go back to my

17    doctor and go back to my medications, and of course like

18    I stated, you know, the court has to make that opinion

19    today because I'm being deprived of those liberty

20    issues.

21            THE COURT:  I do want to address today the

22    conditions of your confinement, I do.  Let's do this

23    first.  Let's schedule a competency hearing.  Does that

24    make sense to counsel?

25            MR. GARRITY:  It does, judge.

1            MR. HUFTALEN:  It does.

2            THE COURT:  Is there anything -- so on the

3     issue of the need for or the propriety of a competency

4     hearing, does either side want to add anything to the

5     record one way or the other.  Mr. Huftalen.

6            MR. HUFTALEN:  The government concurs that a

7     competency hearing should be conducted.  It will be the

8     government's position at that hearing, or the government

9     at that hearing will present the testimony of Dr. Kissin

10    from the Bureau of Prisons who examined the defendant,

11    and it was her opinion that he is competent.  That will

12    be the opinion absent intervening circumstances that I'm

13    not aware of when she testifies before the court.

14           THE COURT:  All right.  Mr. Garrity, do you

15    have anything to add?

16           MR. GARRITY:  Not really, judge.  I guess at

17    that hearing I would call Dr. Mart, but what Mr. Mahoney

18    said reminds me that perhaps I may want to flesh that

19    out somewhat with some of the prior treatment providers

20    that Mr. Mahoney dealt with, especially the provider

21    that was the author of that report that was submitted to

22    you at the last hearing.

23           THE COURT:  Yes.  It may be that counsel for

24    both sides want some access to prior, his treating

25    physicians, and may wish to present evidence from or

1    through those physicians.  I'll leave that to you,

2    though, to proceed as you wish.

3         All right, so we will schedule that.  How much

4    time do you want or need for that hearing to prepare.

5    In other words, when should we schedule it?

6         MR. HUFTALEN:  I would have to talk to Dr.

7    Kissin to get her schedule to find some dates that I

8    know she's available, and I would be happy to talk to

9    the deputy clerk to find time on the court's calendar.

10        MR. GARRITY:  I would have to do the same with

11   Dr. Mart because I know he goes all over the place.

12        THE COURT:  All right, I would only ask

13   counsel to proceed as expeditiously as possible so we

14   can get Mr. Mahoney's competency decided and get on with

15   this case one way or the other, and I know you'll work

16   with Charli to get that done.

17        MR. HUFTALEN:  I'll try to do that tomorrow.

18        THE COURT:  Now, in the meantime, I want to

19   talk about the medication that Mr. Mahoney is prescribed

20   and is receiving at the jail because while I'm not

21   likely to release him today, I do think he ought to get

22   the right meds that can put him in the best possible

23   frame of mind to participate in his defense.  So let's

24   talk about that.

25        What's your position as to that, Mr. Garrity?

1            MR. GARRITY:  Judge, I think Dr. Mart

2    references prior medication he was on, Xanax and

3    Seroquel.

4            THE COURT:  Can you show me that in the

5    report?

6            MR. GARRITY:  I think it's on the front page

7    there, he's referring to Dr. Kissin's report.  I think

8    she said -- Dr. Mart refers to her report and says she

9    knows that he requested the medical staff start his

10   psychiatric medication.

11           THE COURT:  Xanax and Seroquel.

12           MR. GARRITY:  Right.

13           THE COURT:  And it says that Mr. Mahoney was

14   apparently provided with Depakote, but he stopped taking

15   it after developing a rash.

16           MR. GARRITY:  Right.

17           THE DEFENDANT:  Allergic reaction, judge.

18           THE COURT:  So, is it your position, Mr.

19   Garrity, that he ought to receive Xanax and Seroquel?

20           MR. GARRITY:  Well, if Depakote is causing

21   this reaction of the rash and he's not taking it as a

22   result of that, I'm not a physician, so I can't be in a

23   position telling the court what is the appropriate

24   medication.

25           THE COURT:  Of course.

1          MR. GARRITY:  I would think based on both of

2   the psychiatrists, psychologists that looked at this

3   situation, that might be the best course of action to

4   have him take Seroquel and Xanax.

5          THE COURT:  My understanding based on other

6   detainees at Strafford is that Seroquel is available at

7   Strafford.  I don't know about Xanax.  Is there anybody

8   from the marshals here who knows the answer to that

9   question?

10          DEPUTY MARSHAL:  I can look into it.

11          THE COURT:  I would like it because, you know,

12   I don't want it to be a situation where it's a stalemate

13   over, you know, stubbornness on one side or the other.

14   I mean, my experience with the U.S. Marshals is they

15   facilitate the best possible care, medical care of

16   inmates, but it needs to happen in this case like every

17   other case.  And if Seroquel would be effective in

18   treating Mr. Mahoney's conditions, he ought to get it.

19          DEPUTY MARSHAL:  Yes.

20          MR. HUFTALEN:  Just before the hearing began I

21   received from the marshal's office 17 pages of medical

22   records that I had requested Strafford County produce.

23   I've given them to the deputy clerk and would ask that

24   the court maintain those under seal as a document in

25   this case.  I didn't have the opportunity to make copies

1    to give to Mr. Garrity or to keep for myself, so I'd

2    like to be able to get a copy and obviously Mr. Garrity

3    needs a copy of that as well.  I would point out to the

4    court the doctor who has seen Mr. Mahoney at Strafford

5    since June, the doctor had come back as a consultant

6    starting in June 2011, addressed the issue of Mr.

7    Mahoney's desire for Seroquel, and as I read the

8    doctor's notes he put him on Depakote instead because of

9    the potential for abuse with respect to Seroquel.  I

10   have not had the opportunity to talk with the doctor or

11   to look into that further, but I'm happy to work with

12   the Marshal Service and Strafford County and address the

13   issue that you've raised.

14            THE COURT:  So, Charli, let's docket those

15   sealed at level one until further order from the court

16   making sure that counsel for both parties get access to

17   that, and the U.S. Marshal Service -- I guess through

18   the U.S. Attorney the U.S. Marshal can see those

19   records.

20            MR. HUFTALEN:  They're the ones who gave them

21   to me.

22            THE COURT:  They gave them to you, so they

23   have them anyway.  But I would ask that consideration be

24   given to Seroquel as a possible means of alleviating

25   some of Mr. Mahoney's symptoms.

1           MR. HUFTALEN:  I would like to put something

2    else on the record, and not to be at all antagonistic,

3    but just so that we all have the same information that I

4    have, and I shared this with Mr. Garrity earlier.  I had

5    requested that the Marshal Service inquire of Mr.

6    Mahoney's medication regimen and his compliance with it,

7    and the information that I received is as follows.  That

8    Mr. Mahoney was prescribed a drug that is spelled

9    O-x-c-a-r-b-a-z-e-p-i-n-e, and that in July he was 68

10   percent compliant in taking that medication, in August

11   he was 24 percent compliant, and in September and

12   October he's been 0 percent compliant.

13           He was prescribed Trazodone,

14   T-r-a-z-o-d-o-n-e.  In between the 27th of April and

15   November 7th Mr. Mahoney took this medication only four

16   times.

17           He was also prescribed Depakote which Mr.

18   Garrity referred to earlier, and that was discontinued

19   because of the apparent skin irritation or rash that

20   developed.

21           THE COURT:  Mr. Garrity, do you want a minute

22   to talk to your client about what you just heard?

23           MR. GARRITY:  Yes.

24           (Pause.)

25           MR. HUFTALEN:  I should add, I neglected to

1    say the first two prescriptions were identified by the

2    Marshal Service and by Strafford County as being mood

3    stabilizers.  And my understanding of Depakote is that

4    Depakote is one of many drugs that are not unusually

5    prescribed to address or to deal with bipolar which I

6    understand Seroquel is as well.

7              THE COURT:  Yes.  Mr. Garrity.

8              MR. GARRITY:  Judge, just with respect to the

9    bipolar and Seroquel, I think Dr. Mart addressed that in

10   his report, the report that I submitted at the last

11   hearing, I think concluded that he was Bipolar 1, and

12   then some of my conversation with Dr. Mart he talked

13   about bipolar.  So Seroquel, on that basis, I think

14   sounds like it would be the appropriate medication.  And

15   Brian has related to me that he's been at Strafford on a

16   couple prior occasions in 2006 and '07 where they gave

17   him Seroquel and Xanax.

18             So if that's the appropriate medication and

19   they have it there, I don't know why they won't give it

20   to him.

21             THE COURT:  Well, let's look into it.

22             THE DEFENDANT:  If I may, your Honor, they had

23   given it to me in 2006 for ten months and I beat the

24   charge pro se that was a felony, and then in 2007 for

25   six more months they gave me Xanax and Seroquel, the

1   exact medication that I had been prescribed for seven

2   years.  That's what makes it difficult when you're

3   talking to your attorney and relate information that you

4   have firsthand knowledge of, and that firsthand

5   knowledge is the doctor from Philadelphia, not the

6   consultant, said Mr. Mahoney should get Xanax and

7   Seroquel.  For some unknown reason they stopped that,

8   and I have no problem, but that's where it becomes on a

9   modification of the magistrate's detention order.  Okay?

10  If he's not going to get the prescribed medication, Mr.

11  Mahoney is going to fight, stated by the magistrate

12  judge, I think Judge McCafferty, danger to the

13  community, and new evidence came forward, I've

14  been with my counselor for seven years, I volunteer my

15  services and I'm an asset to the community.  So, when we

16  get into those situations, especially when new evidence

17  has come forward, you as a judicial officer has the

18  right to, you may, you know, order, hear a detention

19  ordering you have a right to release me based on new

20  evidences, especially where the evidence for the

21  government is very weak.  That's a very essential part

22  of that, your Honor.

23              THE COURT:  Well, if your counsel files a

24  motion to modify --

25              THE DEFENDANT:  I have, your Honor.

1            THE COURT:  You can't file motions.  You're

2    not pro se.

3            THE DEFENDANT:  Well, I will ask that my

4    lawyer will file that.

5            THE COURT:  Well, he's not going to file it,

6    he's going to look at it and he's going to -- look,

7    that's the way it works.

8            THE DEFENDANT:  Yeah, I understand, but I

9    understand that that's the way it works, I should be

10   prescribed the medication if I'm going to be losing my

11   loss of liberty.

12           THE COURT:  I think you heard me for the last

13   few minutes trying to address that issue, right?

14           THE DEFENDANT:  That's fine.

15           THE COURT:  I very seriously am.  I think you

16   ought to get the meds that will put you in the best

17   frame of mind to proceed.

18           THE DEFENDANT:  Absolutely.  If not, I think

19   the modification of the magistrate's order in the weight

20   of the new evidence really is critical.

21           THE COURT:  And if your counsel agrees that

22   it's in your best interest, he'll file it, all right?

23           Now, okay, what I'm going to ask you to do,

24   counsel, so they are going to be working on your meds

25   together to get to the right solution.  If you need some

1    relief based on that, Mr. Garrity will request it from

2    the court and I'll do whatever is appropriate.  When you

3    pick a date for this competency hearing, what I'm going

4    to want you to do, counsel, is five days before the

5    hearing I want you to file with me proposed findings of

6    fact and rulings of law that are derived from the

7    competency statute.  And then, and Charli, five days

8    post findings and rulings, and the day before the

9    hearing, any time up till then a proposed order; all

10   right?

11           THE DEFENDANT:  Judge, what about the

12   psychiatric counseling with both Dr. Kissin and Dr. Mart

13   that stated that this gentleman, that I should receive

14   at this time.  By going to Strafford County again, I

15   will have no access to a psychiatrist whatsoever.

16           THE COURT:  Is that true?  At Strafford

17   County?  Is there a facility where we detain, where the

18   court detains pretrial detainees where that type of

19   counseling is even offered?  I don't even know the

20   answer to that.

21           THE DEFENDANT:  I did recommend New Hampshire,

22   the Concord state hospital, judge, through my counsel.

23           THE COURT:  Well --

24           THE DEFENDANT:  I could also give me the

25   prescribed medication --

1           THE COURT:  I view that, Attorney Garrity, as

2   part and parcel to the treatment he's getting for his

3   maladies, and if counseling is something that ought to

4   be happening along with a change in medication, and if

5   you can't get that arranged by consent working with the

6   U.S. Attorney and marshals, you should file a request

7   for relief.

8           MR. GARRITY:  I will, judge.

9           THE COURT:  But I certainly concur with doing

10   whatever we can within the confines of the system and

11   the resources to again best position Mr. Mahoney to

12   participate in his defense.  All right, then?

13           I'll leave -- let's move as expeditiously as

14   we can and proceed toward a competency hearing and then

15   a trial.

16           All right, we are in recess.  Mr. Mahoney, I

17   appreciate your effort here to be cooperative.   I

18   appreciate that.

19           THE DEFENDANT:  Oh, I am, your Honor, I think

20   it's an essential part of getting to the bottom of this.

21           THE COURT:  Thank you.

22           (Court adjourned at 2:50 p.m.)

23

24

25

1

2                     C E R T I F I C A T E

3

4          I, Sandra L. Bailey, do hereby certify that

5     the foregoing transcript is a true and accurate

6     transcription of the within proceedings, to the best of

7     my knowledge, skill, ability and belief.

8

9

10    Submitted: 8/1/12

11                              **SANDRA L. BAILEY, LCR, CM, CRR**

12                              LICENSED COURT REPORTER, NO. 15

13                              STATE OF NEW HAMPSHIRE

14

15

16

17

18

19

20

21

22

23

24

25