*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 11/1/12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA         *
                                *  11-cr-06-01-JL
             v.                  *  March 27, 2012
                                *  11:20 a.m.
BRIAN MAHONEY                    *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF COMPETENCY HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

For the Government:   Arnold Huftalen, AUSA
                      U.S. Attorney's Office
                      53 Pleasant Street
                      Concord, NH 03301

For the Defendant:    Paul Garrity, Esq.
                      14 Londonderry Road
                      Londonderry, NH  03053

Court Reporter:       Sandra L. Bailey, LCR, CM, CRR
                      Official Court Reporter
                      United States District Court
                      55 Pleasant Street
                      Concord, NH  03301
                      (603)225-1454

```
 1                    BEFORE THE COURT

 2             THE CLERK:  The court has before it for

 3   consideration this morning a competency hearing in

 4   Criminal Case 11-cr-06-01-JL, United States of America

 5   versus Brian Mahoney.

 6             THE COURT:  Good morning, Mr. Mahoney.

 7             THE DEFENDANT:  Good morning, your Honor.

 8             THE COURT:  I apologize for keeping you

 9   waiting, everybody.  I was just doing some more legal

10   research on the issues before the court today.

11             Mr. Mahoney, I understand you very much wish

12   for Mr. Garrity to not be your lawyer anymore, is that

13   right?

14             THE DEFENDANT:  There were certain situations

15   that I wrote to you, that's correct, your Honor, because

16   in situations that were unethical conduct of an attorney

17   and things that I had objected to, and there was a whole

18   lot of inconsistencies that Attorney Garrity did allow

19   another attorney to present a motion that wound up

20   showing up on my civil matter with David Hilts in the

21   Rockingham Superior Court which that has now been

22   rectified with a motion for leave to file for damages,

23   because my name was placed on a web page after 25 years

24   after being acquitted, both confirmed by prosecutor

25   Huftalen and both confirmed by Mr. Garrity that yes, you
```

1   were placed on that web page wrongfully, and my motion

2   that Attorney Levin filed, it was filed on the 11th of

3   February, allowing to get the motion on the 18th.  I

4   objected to that.  Attorney Garrity put that motion in,

5   that wound up in my civil case last week, and with David

6   Hilts, and I really wasn't too pleased.  I did have a

7   right by law to go to the New Hampshire Supreme Court.

8                THE COURT:  I think the reporter is probably

9   having a tough time keeping up.

10                THE DEFENDANT:  Right, well --

11                THE COURT:  Well, I want to get it all down on

12   paper.  When you're speaking so fast --

13                THE DEFENDANT:  Yes.

14                THE COURT:  I just ask you to slow it down for

15   the reporter's sake.

16                THE DEFENDANT:  Right.  I did have the

17   opportunity --

18                THE COURT:  Let me ask you the question.

19                THE DEFENDANT:  Yes, sir.

20                THE COURT:  You have reported Mr. Garrity to

21   the New Hampshire Supreme Court Professional Conduct

22   Committee, right?

23                THE DEFENDANT:  I have, your Honor, I have --

24                THE COURT:  Hold on.

25                THE DEFENDANT:  Yes, I have.

1               THE COURT:  That's a yes, right?

2               THE DEFENDANT:  That's correct.

3               THE COURT:  And you do not wish for him to

4     represent you anymore?

5               THE DEFENDANT:  That's correct, your Honor.

6               THE COURT:  Okay.  I just want to make sure I

7     understood that.

8               THE DEFENDANT:  Yes.

9               THE COURT:  I think, look, I think at this

10    point, without commenting on the validity of these

11    allegations -- you guys can sit by the way --

12              THE DEFENDANT:  I wouldn't want to divulge

13    that anyway, that's privileged.

14              THE COURT:  Sure.  I think it's time at this

15    point for me to grant that, for me to -- for me to

16    withdraw the appointment of Attorney Garrity as your

17    lawyer and then make a determination about what to do

18    next, you know, I know you've expressed an interest to

19    represent yourself pro se.

20              THE DEFENDANT:  I do.

21              THE COURT:  Okay.  So you don't want another

22    lawyer?

23              THE DEFENDANT:  I don't think that we came to

24    that conclusion at all.  I always thought that you said

25    that regardless if you go pro se or not, it would be

1   beneficial to have a standby counsel.

2              THE COURT:  I would, I would certainly --

3              THE DEFENDANT:  I have somebody in mind since

4   this is the third time now, this time I have a chance to

5   pick for this court who I would like and I have a couple

6   lawyers in mind that are appellate attorneys.

7              THE COURT:  Slow down.  I'm with you.

8              THE DEFENDANT:  Okay.

9              THE COURT:  Remind me, who was your first

10  lawyer by the way?

11             THE DEFENDANT:  It was Jeff Levin.

12             THE COURT:  Jeff Levin, all right, and then

13  Mr. Garrity, okay.

14             THE DEFENDANT:  And then Mr. Garrity.

15             THE COURT:  I can't promise you're going to

16  get to pick, but I am going to listen to your

17  suggestions, but we have to take it one step at a time,

18  all right?

19             THE DEFENDANT:  I understand that, chain of

20  custody, command, yeah.

21             THE COURT:  Okay.  All right.  But you're

22  telling me that you'd like to, your preference at least

23  at this point, once I withdraw the appointment of

24  Attorney Garrity is to proceed pro se but with standby

25  counsel.

1                THE DEFENDANT:  That's correct, your Honor.

2                THE COURT:  All right.  Who do you suggest?

3                THE DEFENDANT:  Well, I suggested Dorothy

4    Graham because of the fact that Dorothy Graham just had

5    a case recently September 11th of 2011, and it had to do

6    with exactly what this case is about, 632-A:2,

7    aggravated felonious sexual assault.

8                THE COURT:  Is Dorothy Graham a New Hampshire

9    lawyer?

10                THE DEFENDANT:  She is.

11                MR. GARRITY:  She works for the New Hampshire

12    Appellate Defenders Office.

13                THE COURT:  Thank you, okay.  Have you ever

14    had contact with her, Mr. Mahoney?

15                THE DEFENDANT:  I have not, your Honor, I just

16    read her last report that had expressly to deal with

17    632-A:2, which I'm on the web page of now and which I've

18    been on the web page the last three years now.

19                THE COURT:  Mr. Garrity, do you know her

20    background?

21                MR. GARRITY:  She's a public defender, judge

22    --

23                THE COURT:  But does she have trial

24    experience?

25                MR. GARRITY:  Oh, definitely, but she's a New

1   Hampshire public defender.  She did trial work and now

2   is an appellate --

3         THE COURT:  I see.  There's a question about

4   whether a New Hampshire public defender can represent

5   someone in federal court.  I don't know if that's

6   authorized under their funding or their legislative

7   authorization, I don't know, but -- do you know?

8         MR. GARRITY:  I would think not but --

9         THE COURT:  I would think not, but it is

10  something I could ask.

11        THE DEFENDANT:  I would ask, respectfully,

12  about that, judge, I think any time you have an attorney

13  with a bar association number, anyone can stand by as

14  standby counsel.

15        THE COURT:  Oh, time out.  I'm not --

16  constitutionally there's nothing stopping her.  I'm just

17  asking if her employers would permit her to do that

18  because that might not be within their legislative

19  mandate or funding, but I appreciate your suggestion.  I

20  just want to take it one step at a time.

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Now here's the problem, okay, I

23  don't want to let Mr. Garrity go yet for this reason.  I

24  still need to determine your competency.

25        THE DEFENDANT:  Yes --

```
 1              THE COURT:  Slow down.

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  I need to determine your

 4     competency.  I ordered that partially on your request.

 5     It was a joint request by you and your lawyer many

 6     months ago.

 7              THE DEFENDANT:  If I may, your Honor, I

 8     believe --

 9              THE COURT:  You may not yet.  Take turns

10     talking here.

11              THE DEFENDANT:  Sorry.

12              THE COURT:  The problem is this.  So I ordered

13     a competency evaluation.  Dr. Mart is here.  He

14     conducted I guess the first, he conducted part of an

15     evaluation.  He wrote a letter on September 26th which

16     told your lawyer that he was unable to do the type of

17     assessment he would normally do under the circumstances

18     because at the time you were manic, it was tough to

19     follow you.  His report for the court dated October 20,

20     2011, has the following in it.  Quote -- he opined that

21     you were not competent to stand trial.  But he did say

22     there's a possibility that you could be restored to

23     competence with medication.  He said, quote, with regard

24     to the possibility of a restoration to competence, it

25     should be noted that when I interviewed Mr. Mahoney, he
```

1   told me that he was not currently taking any

2   psychotropic medication and that he had not been

3   prescribed Seroquel during the current incarceration,

4   close quote.  But then your lawyer, Mr. Garrity, at that

5   point you had a January hearing scheduled for

6   competency, the one we're doing today.  It was

7   originally scheduled for January, and your lawyer filed

8   document number 59 which was a motion to continue this

9   competency hearing.  And he stated that the competency

10   hearing was actually supposed to be February 7, 2012.

11   I'm sorry, January 3rd for competency, February 7th for

12   trial.  But your lawyer said in paragraph two of

13   document number 59, quote, however, the accused's

14   independent competency evaluation cannot be completed

15   without the regulation of Mr. Mahoney's recently

16   increased medications, unquote.  I ordered in document

17   number 60 on December 29, 2011, the following.  I

18   granted the motion to continue till today under the

19   following grounds.  Quote, the court apprehends the need

20   for a delay to enable the increased dosage to facilitate

21   the evaluation but does not wish to delay the

22   proceedings any longer than necessary, unquote.  Because

23   I know you're very intent, Mr. Mahoney, on getting this

24   proceeding resolved one way or the other, to trial.  So

25   I ordered just a short delay.  The problem is, Dr. Mart

1    has not been back to see you to complete that evaluation

2    under your current medical regimen.

3         Can you tell me what medical regimen you're

4    under now, what are you taking?

5         THE DEFENDANT:  Right, your Honor, I'm on the

6    correct medication of Xanax, three times a day that I

7    took for the past seven years.  Seroquel twice a day.  I

8    take it for the past four years.  And I'm on clonidine

9    they put me on for high blood pressure, judge, so I'm on

10   the same prescribed medication as I was seven years ago.

11        THE COURT:  Right, that you were not getting

12   in Strafford County.

13        THE DEFENDANT:  I wasn't getting it at all

14   because of some sort of abuse discretion there which of

15   course I'm only one of two inmates getting this

16   medication at Cheshire County House of Correction.

17        THE COURT:  Okay, please be seated.  Mr.

18   Garrity.

19        MR. GARRITY:  Lars Peterson, who is the

20   medical person I've been dealing with over at Cheshire

21   County Jail left me a message yesterday indicating the

22   medications Mr. Mahoney is on.  He indicated in a

23   message that he's on 300 milligrams of Seroquel twice a

24   day, 100 milligrams in the morning, 200 milligrams at

25   night.  Then Klonopin three times a day, one milligram.

1   And he's on clonidine for blood pressure one time a day

2   of point 02 milligrams.  And Mr. Peterson said the

3   Klonopin is a mild sedating part of that medication.

4              THE COURT:  Mr. Mahoney, does that sound

5   accurate?

6              THE DEFENDANT:  It is accurate except for the

7   fact that Xanax is a little bit stronger.  I was told by

8   doctors, but of course he corrected it, but that's

9   pretty accurate, judge.

10             THE COURT:  So, here's what I propose.

11             THE DEFENDANT:  Okay.

12             THE COURT:  Dr. Mart is here today.

13             THE DEFENDANT:  Okay.

14             THE COURT:  And you're here today.

15             THE DEFENDANT:  I saw Dr. Mart.

16             THE COURT:  What I propose is, so we can have

17   a complete record here, frankly, for your protection, of

18   a full evaluation, I'd like to, rather than conduct this

19   hearing right this minute, have you and him complete the

20   evaluation.  Then he can write a report and we can have

21   this hearing on a full record because right now I've

22   granted a motion to continue the hearing to facilitate a

23   complete evaluation, and it has not yet been conducted.

24   You follow me?

25             THE DEFENDANT:  If I may.

1                THE COURT:  You may.

2                THE DEFENDANT:  Your Honor, I think the first

3     thing that we have to remember here, I don't have the

4     cite of the case law, your Honor, I don't know for sure,

5     I don't have it off my head, I didn't bring any records

6     today, it was a competency evaluation when anyone gets

7     evaluated by a court, and of course prosecutor Huftalen

8     did order an evaluation on competency on I believe it

9     was April 22nd, 2011.

10               THE COURT:  That was the first one.

11               THE DEFENDANT:  This was the first one.  I

12    think it's very important to realize and let the court

13    know that under the rules of criminal, the rules of

14    criminal procedure, when you get a competency evaluation

15    by a Bureau of Prisons, Federal Medical Center at Fort

16    Devens, and that medical examiner, I believe a forensic

17    psychologist who was a little bit higher than Dr. Mart,

18    no offense, she gave a report that stated Mr. Mahoney is

19    indeed competent to stand trial.  When that happens, it

20    occurs, you only need one qualified examiner, forensic

21    psychiatrist to examine you, once one says you're

22    competent you don't need to get another one unless it's

23    requested.  Mr. Garrity tried to get another one and I

24    objected.  Dr. Kissin is not here today, but her

25    determination clearly states, long before Dr. Mart's,

1    that I was indeed competent on July 18th when you got

2    that letter, and once you have one competency hearing,

3    because you're not allowed to get another one, and

4    that's the law, and it may be one of the citation case

5    laws.

6              THE COURT:  I was with you actually until you

7    said once you had one you're not allowed to get another.

8    I think I certainly could have relied on only one.

9              THE DEFENDANT:  You can only rely on one it

10   is.

11             THE COURT:  Well, I disagree.

12             THE DEFENDANT:  It's in the law book.  I

13   should have brought it with me, my fault.

14             THE COURT:  I -- understood.  I disagree and I

15   did order on October 11th -- because look, things had

16   changed by October 11th.  So October 11th, document

17   number 50, I did order a determination of mental

18   competency based on some filings that were made with the

19   court, some letters you had written, some of your

20   conduct was a little concerning to the court.

21             THE DEFENDANT:  It was at the time, judge, I

22   understand that.

23             THE COURT:  I remember discussing it with you,

24   and I remember pretty --

25             THE DEFENDANT:  Right.

1            THE COURT:  The record will speak for itself,

2    but my strong recollection is that you joined in this

3    request in October for Dr. Mart to evaluate your

4    competency.

5            THE DEFENDANT:  Well, that's a mistake, it was

6    court ordered by you.

7            THE COURT:  Court ordered by me.

8            THE DEFENDANT:  I expressly objected to it.

9    As a matter of fact, we could get the tapes.  The tapes

10   were actually here.  The first time and the second time

11   I'm competent, as of Dr. Kissin's report.  I do not want

12   another competency evaluation, and I believe you

13   yourself said no, you're going to be court ordered.

14   There is a discrepancy in the federal law that once you

15   are deemed competent by one qualified --

16           THE COURT:  You've made the point, that's on

17   the record.

18           THE DEFENDANT:  That's the law.  There is cite

19   case law on that if Mr. Prosecutor Huftalen can relate

20   to that, but, you know, I think what we're missing here,

21   we're missing a truth to the whole indictment itself and

22   what it speaks for on the failure to update.  Did Mr.

23   Mahoney travel to Massachusetts.  Both prosecutor --

24           THE COURT:  Listen, I understand that, but the

25   only way we get, the people who get to decide that are a

1   jury.  All right?

2            THE DEFENDANT:  I understand.  We have a jury

3   for that.

4            THE COURT:  The problem is, is that you've

5   expressed a desire to represent yourself in front of the

6   jury rather than have a lawyer.

7            THE DEFENDANT:  Right.

8            THE COURT:  With standby counsel.  For me to

9   let you do that, I've got to make sure you're in a

10  mental position to do that.

11           So what I'm suggesting to you today --

12           THE DEFENDANT:  Okay.

13           THE COURT:  -- is since we've ordered that to

14  take place, but there's still a portion of the

15  competency evaluation, the independent evaluation

16  ordered in document number 50 on October 11, 2011, since

17  Dr. Mart is here today, I want to complete that

18  interview today.

19           THE DEFENDANT:  Oh.

20           THE COURT:  That okay with you?

21           THE DEFENDANT:  You know, judge, I will fully

22  complete today and hope we can come back for another

23  hearing this afternoon, put it off for second call

24  because, you know, I'm still locked up --

25           THE COURT:  And I am very sensitive to that.

1   I want you to know that.  It is not lost on me that you

2   are detained, and that's why I'm trying to move this

3   thing along as quickly as I can.  I wish I had an

4   explanation for you as to why the evaluation wasn't

5   completed despite my order, but the fact is it wasn't

6   and we need to get it done.

7           So, now, until after that, okay, I'd like to

8   appoint you -- I would like for you to have counsel

9   represent you at least at the competency hearing, I'm

10  not talking about trial, just to represent you at the

11  competency hearing.  Would you permit Mr. -- do you have

12  any objection to Mr. Garrity doing that or would you

13  like new counsel for this hearing?

14          THE DEFENDANT:  No, no, that would be quite

15  all right with Mr. Garrity, your Honor, since Mr.

16  Garrity is the one who referred me to Dr. Mart.

17          THE COURT:  Mr. Garrity, are you -- now you've

18  been reported to the PCC by your client.  So you're in a

19  little bit of a strange position here.  I do not intend

20  to let you continue to represent him at trial, but he

21  needs an advocate for the competency determination.

22          MR. GARRITY:  Judge, I have no problem doing

23  that, judge.

24          THE COURT:  You'll remain?

25          MR. GARRITY:  I will.

```
 1              THE COURT:  All right.  Okay.  A little bit of
 2   a tenuous position here in a lot of areas, but I'm going
 3   to try to keep this thing going.  So here's what I'm
 4   going to order.  We're here today, we're all here, we
 5   don't have to waste the doctor's time or your time.  We
 6   will conduct that in the marshal's facilities.  We will
 7   have that conducted.  I'd like -- Dr. Mart, I'm going to
 8   ask you to write your report as quickly as you can, I
 9   don't mean by the end of today, draft the report to
10   provide to Mr. Garrity so that he can provide it to the
11   prosecutor, and we can reschedule a hearing as soon as
12   possible.
13              Dr. Mart, is that okay with you?
14              DR. MART:  That works okay for me, sir.
15              THE COURT:  All right.  Am I forgetting
16   anything?  Anything counsel wants to remind me I should
17   have done?
18              MR. HUFTALEN:  No, but there is something I'd
19   like to add just so that the record is clear.
20              With respect to Mr. Garrity staying in for
21   purposes of the competency hearing, the government does
22   not object to that, and I think it's important and I
23   know the court understands it is important that both
24   sides of this issue be aired completely and that both
25   sides of the issue be vigorously presented to the court.
```

1          Now, the government's position consistent with

2     Dr. Kissin's report is and will be that Mr. Mahoney is

3     competent.  So it's important that someone advocate a

4     contrary position so the court has all of the facts in

5     front of it.  Based on the history, I believe that Mr.

6     Garrity is in a good position to do that given his prior

7     relationship not only with the defendant but with Dr.

8     Mart.

9          THE COURT:  I appreciate you pointing that

10    out.  That is the very reason I've undertaken the course

11    of action that I have.  Dr. Mart has already opined that

12    Mr. Mahoney is not competent, but he may change his mind

13    after a further evaluation.  And we need for defense

14    counsel to advocate strongly on Mr. Mahoney's behalf

15    based on whatever he puts together.

16         MR. GARRITY:  Judge, one thing Mr. Mahoney

17    wanted me to bring to the court's attention.  I pointed

18    out to him that Dr. Kissin was present by way of video.

19         THE COURT:  She is.

20         MR. GARRITY:  And because of that he objects

21    to the further evaluation.

22         THE DEFENDANT:  I would, today we could get it

23    done today with both doctors here, judge, I think it

24    would be wonderful if one could give one opinion, who

25    has the first opinion which is more, you know, the first

1    opinion is the crucial opinion here.  I didn't realize

2    she was on video and Dr. Mart is here.  I won't object

3    to that going forward today with the competency hearing

4    today since both doctors are here and one said I am and

5    one said I am not.

6              THE COURT:  Your objection is noted for the

7    record.

8              THE DEFENDANT:  I objected to that but I

9    didn't notice that Dr. Kissin was here.  She worked for

10   the Bureau of Prisons.  Dr. Mart is an independent.  I

11   think the Bureau of Prisons, the psychologist, forensic

12   psychologist is much greater weight than Dr. Mart, no

13   offense to Dr. Mart, but she is the one that evaluated

14   me and determined that I was competent, judge, and which

15   I am.

16             THE COURT:  Understood.  Here's what the court

17   wants, though.  Ultimately it's the court's decision

18   about whether you're competent or not.  It's my decision

19   and my determination to make.  And what I'd like Dr.

20   Kissin to be in a position to do is this.  To not only

21   give her opinion based on her evaluation that she

22   conducted of you, but to be able to review Dr. Mart's

23   evaluation and report, because she undoubtedly will be

24   asked questions about information and conclusions that

25   Dr. Mart is drawing, and I need that information to make

1    my final determination.

2         So I appreciate your point.  I won't overlook

3    it.  And you're trying to tell me that I should be

4    deferring to her.  She's already given her opinion.  But

5    I want the fullest most developed record that I can get.

6         THE DEFENDANT:  Right, but I think when I did

7    read Dr. Mart's evaluation it was almost parroted to Dr.

8    Kissin's except to the point that Dr. Mart wanted to see

9    me get on proper medication which of course I am now and

10   I have been for the past two and a half months.

11        THE COURT:  Exactly.  And we don't know this,

12   but that medication that Dr. Mart noted you were not on

13   when he did his evaluation, is something I need him to

14   be able to incorporate into his evaluation by talking to

15   you today.  I need to have that happen.

16        THE DEFENDANT:  Okay.

17        THE COURT:  So, we are in recess and we will

18   proceed as quickly as we can.  All right?

19        Counsel, please, I'm going to put you on a

20   two-week deadline, all right, in the hope that we can be

21   back here in two weeks.  Is that realistic?

22        MR. HUFTALEN:  Yes.

23        THE COURT:  All right.  And I'm going -- okay,

24   so, Charli, you can work out with them exactly what

25   date.  I'd like any briefing that you file on any issues

21

```
1    before the court to be filed three days in advance of

2    the hearing.  All right?

3              MR. HUFTALEN:  Will do.

4              THE COURT:  All right, then, we are in recess.

5              THE DEFENDANT:  Thank you, your Honor.

6              THE COURT:  Thank you, Mr. Mahoney, I

7    appreciate your cooperation today.

8              THE DEFENDANT:  I'm under the correct

9    medication, judge, thank you very much.

10             (Court adjourned at 11:45 a.m.)

11                   C E R T I F I C A T E

12

13             I, Sandra L. Bailey, do hereby certify that

14   the foregoing transcript is a true and accurate

15   transcription of the within proceedings, to the best of

16   my knowledge, skill, ability and belief.

17

18

19   Submitted: 8/3/12

20                   SANDRA L. BAILEY, LCR, CM, CRR

21                   LICENSED COURT REPORTER, NO. 15

                     STATE OF NEW HAMPSHIRE

22

23

24

25
```