```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                    Criminal No. 11-cr-06-JL
                                              Opinion No. 2013 DNH 004
Brian Mahoney


**ORDER**

Defendant Brian Mahoney has moved to dismiss the indictment against him, see Fed. R. Crim. P. 12(b)(3)(B), which charges a violation of the Sex Offender Registration and Notification Act, Pub. L. 109-248, tit. 1, 120 Stat. 587 (2006), codified at 42 U.S.C. § 16911 et seq. ("SORNA"). SORNA requires a person "who was convicted of a sex offense" as defined in the Act to "register, and to keep the registration current," in, among other places, "each jurisdiction where the offender resides." Id. § 16913(a). Doing so requires that the offender, "not later than 3 business days after each change of . . . residence . . . appear in person in at least 1 [such] jurisdiction . . . and inform that jurisdiction of all changes in [such] information." Id. § 16912(a). A person required to register under SORNA and who travels in interstate or foreign commerce but knowingly fails to comply with these registration requirements has committed a felony. 18 U.S.C. § 2250(a).

**The pending charge and the motion**

As augmented by the prosecution's objection to Mahoney's earlier motion to dismiss,[1] the indictment alleges that Mahoney is subject to SORNA's registration requirements due to his 1983 conviction in a Massachusetts court for assault with intent to rape. The indictment charges that Mahoney failed to comply with these requirements, and committed a felony under § 2250(a), when, on or about July 31, 2010, he moved from New Hampshire to Massachusetts--thus traveling in interstate commerce--without notifying the authorities in either state of his change in residence.

In moving to dismiss the indictment, Mahoney argues that, because his sexual assault conviction occurred before SORNA was enacted in 2006, SORNA did not impose any registration requirements on him as of July 2010. As fully explained below, SORNA gives the Attorney General the authority to specify the applicability of its registration requirements to those convicted of defined sex offenses before its enactment, and the Attorney

---

[1] That motion argued that, due to its lack of detail, the indictment failed to sufficiently apprise Mahoney of the charge against him and sought, as alternative relief, a bill of particulars. After the prosecution, in its objection, set forth the allegations that Mahoney argued were missing, the court ordered him to show cause why his motion was not moot as a result. Order of July 15, 2011. Mahoney did not try to make that showing, so the motion was denied.

General had so specified by July 2008, at the latest (which was well before Mahoney's alleged failure to register).  Furthermore, the Attorney General did so in a way consistent with his authority under SORNA and the proper exercise of his rulemaking function under the Administrative Procedure Act, 5 U.S.C. § 553 et seq. (the "APA").

**SORNA**

SORNA gives the Attorney General of the United States "the authority to specify the applicability of the requirements of [§ 16912] to sex offenders convicted before the enactment of" SORNA.  42 U.S.C. § 16912(d).  Relying on this provision, the Supreme Court has held that SORNA's "registration requirements do not apply to pre-Act offenders unless the Attorney General specifies that they do apply."  Reynolds v. United States, 132 S. Ct. 975, 978 (2012).  The Attorney General has in fact specified that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."  28 C.F.R. § 72.3.  This rule became effective on January 28, 2011, see Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81849-01, 81850 (Dec. 29, 2010), after Mahoney allegedly traveled in interstate commerce on or

3

about July 31, 2010.  Thus, Mahoney argues, SORNA's registration requirements did not then apply to him, with the result that the indictment fails to allege a violation of 18 U.S.C. § 2250(a).

The rule that became effective in January 2011, however, was the final version of an earlier rule that the Attorney General promulgated on February 28, 2007--and which purported to take effect immediately.  Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894-01 (Feb. 28, 2007) (the "Interim Rule").  The Interim Rule was identical to the final rule in stating that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act."  Id. at 8897 (previously codified at 28 C.F.R. § 72.3 (2008)).  While this rule was in effect prior to and at the time of his alleged failure to register, Mahoney argues that the Interim Rule was void because it was enacted in violation of the notice and comment requirements of the APA, 5 U.S.C. §§ 553(b)-(d).

Under those requirements, a rule cannot take effect less than 30 days before "notice of proposed rule making," after which the agency promulgating the rule must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."  Id.  These notice and

4

comment requirements do not apply, however, "when the agency for good cause finds that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." Id. § 553(b)(B) (parenthetical omitted).  In purporting to make the Interim Rule effective immediately, rather than after notice and comment, the Attorney General invoked this exception, stating that "[d]elay in the implementation of this rule would impede the effective registration of [pre-SORNA] offenders and would impair immediate efforts to protect the public from sex offenders who fail to register."  72 Fed. Reg. at 8896.

**Analysis**

Thus, in response to Mahoney's motion to dismiss, the prosecution has announced its "position that the Attorney General acted in lawfully" in enacting the Interim Rule without the prescribed notice and comment period.  The prosecution acknowledges, though, that some federal courts of appeals have found the Interim Rule is invalid, rejecting the argument that good cause existed to forego the APA's notice and comment requirements in the public interest.  See United States v. Valverde, 628 F.3d 1159 (9th Cir. 2010); United States v. Cain, 583 F.3d 408 (6th Cir. 2009); see also United States v. Johnson, 632 F.3d 912 (5th Cir. 2011) (ruling that the interim rule was

5

enacted in violation of the notice and comment requirements but that this error was harmless). Other courts of appeals have upheld the Interim Rule. See United States v. Dean, 604 F.3d 1275 (11th Cir. 2010); United States v. Gould, 568 F.3d 459 (4th Cir. 2009); United States v. Dixon, 551 F.3d 578 (7th Cir. 2008). Our Court of Appeals has not addressed the validity of the Interim Rule, due largely to its prior view (since superseded by the Supreme Court's decision in Reynolds) that SORNA itself extended its registration requirements to offenses committed prior to the Act's effective date. See United States v. Parks, 698 F.3d 1, 4 (1st Cir. 2012).

The prosecution urges that, to resolve Mahoney's motion to dismiss, this court has "no reason to enter this thicket" surrounding the validity of the Interim Rule because the argument goes, the Attorney General took additional action to extend SORNA's registration requirements to pre-Act offenders in the form of the so-called "SMART Guidelines," which were effective prior to Mahoney's alleged failure to register. See National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (July 2, 2008). As the prosecution points out, the SMART Guidelines state that "SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose

6

convictions predate SORNA's enactment." Id. at 38,046 (citing the Interim Rule). The SMART Guidelines are the final version of, and identical in relevant part to, guidelines initially proposed on May 30, 2007. National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30,210 (May 30, 2007). This marked the beginning of a notice and comment period on the Guidelines that expired on August 1, 2007, many more than 30 days before the SMART Guidelines took effect on July 2, 2008. See 73 Fed. Reg. at 38,030. Thus, the prosecution argues, the Attorney General unquestionably complied with the APA's notice and comment requirements in enacting the SMART Guidelines in July 2008--which themselves specify that SORNA's registration requirements apply to those, like Mahoney, convicted of defined sex offenses prior to SORNA's effective date.

Mahoney nevertheless maintains that the SMART Guidelines did not extend SORNA's registration requirements to him because, although they became effective prior to his alleged failure to register, the SMART Guidelines "were never intended to be substantive rules." In support of this argument, Mahoney relies solely on a district court decision that was reversed on that point on appeal, United States v. Stevenson, No. 09-20306, 2009 U.S. Dist. LEXIS 118409 (E.D. Mich. Dec. 14, 2009), rev'd, 676 F. 3d 557 (6th Cir.), cert. denied, 133 S. Ct. 168 (2012). Despite

7

the reversal of the district court's opinion, Mahoney says that "its logic is compelling and its holding should carry the day." This court respectfully disagrees.

In concluding that the SMART Guidelines "were not promulgated for the purpose of making [SORNA's registration requirements] applicable to persons convicted prior to" its effective date, the district court in Stevenson emphasized that, in issuing the Guidelines, the Attorney General did not invoke the authority conferred on him by § 113(d) of SORNA "to specify the applicability of the [registration requirements] to sex offenders convicted before [its] enactment." 42 U.S.C. § 16912(d). Instead, the Attorney General invoked a different provision of SORNA, § 113(a), under which he "shall issue guidelines and regulations to interpret and implement" SORNA.[2] See 73 Fed. Reg. at 38,030. The district court reasoned that, because the SMART Guidelines "were not issued pursuant to 42 U.S.C. § 16913(d), . . . they cannot have been made with the purpose of making SORNA retroactive." 2009 U.S. Dist. LEXIS 118409, at 11. Indeed, the district court ruled, "[i]t is only

---

[2]As the district court in Stevenson further observed, the proposed version of the SMART Guidelines also invoked § 16912(a), rather than § 16912(d). 72 Fed. Reg. at 30,210.

8

§ 16913(d) that gives the Attorney General the authority to make SORNA retroactive, and if he issues a regulation purporting to make SORNA retroactive but does not invoke his authority under subsection (d), any such regulation purporting to make SORNA retroactive cannot be valid." Id. at 12.

It is true that, under the APA, a notice of proposed rule making must include "reference to the legal authority under which the rule is proposed." 5 U.S.C. § 553(b)(2). But, as the Sixth Circuit observed in its Stevenson decision, 676 F.3d at 563, the proposed SMART Guidelines expressly make reference to the Attorney General's "authority under § 113(d) to 'specify the applicability of the requirements of SORNA to sex offenders convicted before the enactment of this Act.'" 72 Fed. Reg. at 30,212 (quoting 42 U.S.C. § 16913(d) (bracketing omitted)). Thus, as the Sixth Circuit concluded, the proposed SMART Guidelines "adequately gave notice of the relevant legal authority" empowering the Attorney General to do precisely what the prosecution argues he did through the guidelines, i.e., to extend SORNA's registration requirements to those convicted of defined sex offenses prior to its effective date. 676 F.3d at 563; cf. ConocoPhillips Co. v. EPA, 612 F.3d 822, 833 (5th Cir. 2010) (observing that, under the APA, a proposed rule's "reference to legal authority must be sufficiently precise to

9

apprise interested person's of the agency's legal authority to issue the proposed rule") (quotation marks omitted).  The district court in Stevenson was simply mistaken, then, to say that, in issuing the SMART Guidelines, the Attorney General did not properly invoke his authority under 42 U.S.C. § 16913(d) to make SORNA's registration requirements apply retroactively.[3]

The Court of Appeals in Stevenson also concluded that, "[e]ven if the SMART Guidelines were solely promulgated under § 16912(b)," they were still effective to extend SORNA's registration requirements to those convicted prior to its effective date.  676 F.3d at 564-65.  The court reasoned that, "[a]lthough § 16912(b) does not explicitly authorize the Attorney General to make rules on retroactivity," it nevertheless "instructs the Attorney General to implement [SORNA], and [SORNA] includes the specific option of making a rule on retroactivity."  Id. at 564.  In light of this structure, the Court of Appeals reasoned, it "could hardly fault the [Attorney General] for citing the section giving [him] broad authorization when issuing substantive rules including the specific one authorized in

---

[3]Mahoney points out that "the only applicable reference to 42 U.S.C. § 16913 is in the proposed SORNA guidelines" (parenthentical omitted), rather than the final version.  Under the APA, though, it is the notice of proposed rulemaking, rather than the publication of the rule itself, that must refer to the appropriate grant of rulemaking authority.  5 U.S.C. § 553(b)(2).

another section of the same statute." Id. Neither the district court's opinion, nor Mahoney's memorandum in support of his motion to dismiss, engages this point, which this court finds persuasive in the absence of any countervailing argument.

Mahoney focuses instead on the district court's observation in Stevenson that the SMART Guidelines, "rather than proposing and then mandating that SORNA apply retroactively, simply assert and assume that SORNA applies retroactively, citing to the Attorney General's Interim Rule." 2009 U.S. Dist. LEXIS 118409, at 12. But neither the district court nor Mahoney convincingly explains how that affects the validity of the SMART Guidelines in extending SORNA's registration requirements to pre-Act offenders.

Again, SORNA empowers the Attorney General "to specify the applicability of the requirements of [§ 16912] to sex offenders convicted before [its] enactment." 42 U.S.C. § 16912(d) (emphasis added). The SMART Guidelines do just that, stating that "SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment." 73 Fed. Reg. at 38,046. The fact that the Attorney General believed he had already so specified in 2007, via the Interim Rule, would not seem to effect the validity of the subsequent specification, via the SMART Guidelines. See

11

Stevenson, 676 F.3d at 564 n.6 (noting that the existence of the Interim Rule "does not establish that the SMART Guidelines were not a final substantive rule").

In suggesting otherwise, Mahoney relies heavily on the Attorney General's response, set forth in the final SMART Guidelines, to comments he received on the proposed version:

> Some commenters objected to, or expressed concerns about, provisions of the guidelines that apply the SORNA requirements 'retroactively' to certain categories of offenders whose sex offense convictions predate the enactment of SORNA . . . . Some comments of this type opined that Congress was simply wrong in enacting SORNA's requirements for sex offender registration and notification, and that the Attorney General should mitigate the resulting harm by defining their scope of application as narrowly as possible. This premise cannot be accepted or acted on in issuing guidelines to 'interpret and implement' SORNA, as [42 U.S.C. § 16912(b)] requires the Attorney General to do.

73 Fed. Reg. at 38,031. Mahoney argues that this response reveals that, "as a practical and legal matter, there was no public participation in the substantive rulemaking process" applying SORNA to pre-Act offenders, if in fact that is what the SMART Guidelines accomplished.

For the sake of discussion, the court will accept Mahoney's unstated premise that, even though a proposed rule is subjected to the notice and comment process, the rule is nevertheless invalid if the process is conducted in such a way so as to functionally exclude the public or other interested parties from

meaningful participation. But this court cannot accept Mahoney's additional premise that, in enacting the SMART Guidelines, the Attorney General denied the public an effective opportunity to comment on applying SORNA's registration requirements to pre-Act offenders.

As the Attorney General's response specifically states, he refused to hear comments about SORNA's retroactive application only insofar as they were premised on the notion that Congress should not have enacted SORNA's "requirements for sex offender registration and notification" in the first place (Congress, of course, did not say one way or the other whether those requirements applied retroactively, leaving that decision to the Attorney General). Importantly, the Attorney General did <u>not</u> say that he was refusing to hear <u>any</u> comments on SORNA's retroactive application. To the contrary, as the Court of Appeals observed in Stevenson, the Attorney General "went on to discuss the substantive merits of the comments on retroactivity," id., as they pertained to SORNA's retroactive application rather than to its wisdom as a whole, <u>see</u> 73 Fed. Reg. at 38,031 (addressing "concerns of a more practical nature, based on potential difficulties in finding older convictions and determining whether registration is required for them").

Indeed, in response to comments objecting to the fact that the SMART Guidelines "require the application . . . of SORNA's requirements to sex offenders convicted prior to the enactment of SORNA," the Attorney General explained, among other things, that "the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted." Id. at 38,035-36.  The Attorney General also responded to comments "that retroactive application of SORNA's requirements would be . . . unfair to sex offenders who could not have anticipated the resulting applicability of SORNA's requirements at the time of their entry of a guilty plea to the predicate sex offense." Id. at 38,036.  The Attorney General explained, in essence, that a criminal defendant's inability "to anticipate all future regulatory measures that may be adopted . . . for public safety purposes" at the time he pleads guilty is not unfair. Id.  So there is plainly no merit to Mahoney's claim that, in enacting the SMART Guidelines, the Attorney General believed "he could not, [and] therefore did not act on the public comments he received relating to the imposition of SORNA's registration requirements [on] pre-Act offenders" so as to transgress the APA's notice and comment requirements.

As the Court of Appeals observed in Stevenson, the proposed SMART Guidelines "stated unequivocally that [] SORNA would apply

14

retroactively," and therefore provided "adequate notice [and] opportunity to be heard meaningfully on the issue of retroactivity."[4] Id. at 565. And, as just discussed, members of the public availed themselves of this opportunity by submitting comments on that issue, and the Attorney General made substantive responses to those comments in promulgating the final guidelines.

**CONCLUSION**

In short, extending SORNA's registration requirements to those convicted before its enactment demanded only that the Attorney General "specify" as much, and that he do so in accordance with the applicable requirements of the APA. The SMART Guidelines fulfill both mandates. Accordingly, SORNA's registration requirements applied to Mahoney as of the effective date of the SMART Guidelines, July 2, 2008, which was before he

---

[4]Indeed, the Court of Appeals in Stevenson ruled that, as a result, "any error with respect to the Attorney General's recitation of the proper legal authority was not prejudicial" so as to necessitate invalidating the SMART Guidelines insofar as they apply SORNA to pre-Act offenders. 676 F.3d at 565. Our Court of Appeals has recognized that this "doctrine of harmless error is as much a part of judicial review of administrative action as of appellate review of trial court judgment," and that it applies where a deviation from the APA's notice and comment requirements (such as the Attorney General's alleged failure to invoke § 113(d) in promulgating the SMART Guidelines) "clearly had no bearing on the procedure used or the substance of the decision reached." Conservation Law Found. v. Evans, 360 F.3d 21, 29 (1st Cir. 2004) (quotation marks and bracketing omitted).

is alleged in the indictment to have traveled in interstate commerce without complying with those requirements. His motion to dismiss the indictment[5] is therefore DENIED.

**SO ORDERED.**

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Dated: January 9, 2013

cc: Arnold H. Huftalen, AUSA
    Andrew R. Schulman, Esq.

---

[5] Document no. 92.