# United States Court of Appeals
## For the First Circuit

No. 12-1882

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN E. MAHONEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Robert B. Mann, with whom Mann and Mitchell, was on brief for
appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
John P. Kacavas, United States Attorney, was on brief for appellee.

June 3, 2013

**TORRUELLA, <u>Circuit Judge</u>.**  Brian E. Mahoney ("Mahoney") filed this interlocutory appeal from an order finding him incompetent to stand trial and committing him to the custody of the Attorney General for hospitalization and treatment pursuant to 18 U.S.C. § 4241(d).

Mahoney makes four main arguments on appeal.  First, he argues that the commitment order, read in light of the district court's expressions at the end of the competency hearing, must be understood to mean that the district court found him competent to stand trial, but incompetent to represent himself.  Second, he claims that, to the extent the court predicated its finding of incompetency upon its determination that he had "misunderstandings of several procedural and constitutional concepts," it applied the wrong legal standard.  Third, he urges us to find that the district court's decision was clearly erroneous as it was not based on the opinion of the expert whose evaluation was the most thorough. Finally, Mahoney argues that, under <u>Indiana</u> v. <u>Edwards</u>, 554 U.S. 164 (2008), the district court had to find he suffered from severe mental illness in order to deny him the right to proceed <u>pro se</u>. For the reasons set forth below, we affirm the district court's order.

## I. <u>Background</u>

On January 19, 2011, Mahoney was charged with failing to register as required under the Sex Offender Registration and

Notification Act ("SORNA") due to a 1983 Massachusetts conviction for assault with intent to rape. See 18 U.S.C. § 2250(a). On April 22, 2011, with the parties' acquiescence, the district court ordered Mahoney to undergo a mental competency evaluation pursuant to 18 U.S.C. § 4241(b). Mahoney was thus evaluated at the Federal Medical Center Devens in Massachusetts ("Devens"). A final report by Miriam Kissin, Psy.D. ("Dr. Kissin"), concluded that, even though Mahoney suffered from a chronic mood disorder, he was competent to understand the proceedings against him and to assist in his defense. On October 11, 2011, the district court ordered an additional competency evaluation to be performed by Eric G. Mart, Ph.D. ("Dr. Mart"), a licensed psychologist.[1] A competency hearing was held on March 27, 2012.

**A.  Dr. Kissin's Testimony**

During the competency hearing, the government presented Dr. Kissin's testimony. She testified to having met with Mahoney a total of seven times. During the meetings, she was able to learn that Mahoney had a history of hyperactivity during childhood and throughout his adult life. He told her that he was able to interact with other people and was successfully employed for several years, although he also said that he was hyperactive in his interactions, which oftentimes led to interpersonal difficulties.

---

[1]  It is unclear from the record when Dr. Mart was appointed, but reference to said appointment is made in the order requiring an additional competency evaluation.

At one point in his life, he sought outpatient treatment and received therapy and medication.

During the course of their meetings, Dr. Kissin performed structured interviews by asking questions aimed at assessing Mahoney's competency. She thus evaluated his (1) understanding of the facts surrounding the charges pending against him; (2) rational understanding of the potential implications of the charges; and (3) ability to make decisions based on information available to him. She observed that Mahoney had no difficulty answering questions related to the way the legal system works generally and that he had a sophisticated understanding of the court system because he had spent many years doing legal research on his own and had also enrolled in a paralegal course. Dr. Kissin further testified that Mahoney expressed displeasure with his attorney because the attorney did not want to go in the same direction as he did in relation to his defense and stated that he was better suited to represent himself.

Dr. Kissin testified that she did not observe any evidence that Mahoney suffered delusional thoughts while he was at Devens. She defined the clinical term "delusion" as "a belief an individual holds that is false and that does not change despite the individual being offered other information that disputes the false belief." She also stated that she did not observe any evidence of "disordered thinking," which she defined as a thought process that

does not logically flow, but is rather interrupted by psychiatric symptoms.

Based on her observations, she concluded that Mahoney suffered from Bipolar Disorder II, a mood disorder that, although not as severe as Bipolar Disorder I, still causes patients suffering from it to experience mood swings ranging from mania to depression. She further diagnosed Mahoney as manifesting certain features of anti-social personality disorder, which she described not as a clinical disorder, but as a way to conceptualize the way a given patient interacts with other people. She observed, however, that he did not exhibit enough symptoms to receive the full diagnosis. Dr. Kissin also testified that Mahoney was given the mood stabilizer Oxcarbazepine, to which he responded well, as patients suffering from mood disorders often do, but that, even on medication, he continued to be hypomanic the entire time he was at Devens.

At the closing of her direct testimony, Dr. Kissin reported that, at the time she evaluated him, Mahoney was competent because he exhibited the capacity to understand the charges against him, consult with his attorney and make decisions in his case.

During cross-examination by Mahoney's attorney, Dr. Kissin testified that if someone held a delusional belief that he or she was specifically being targeted by his or her attorney acting in cahoots with the presiding judge, the delusion would

-5-

certainly affect the defendant's competency.  If the belief was not delusional, then the person's competency would not be compromised. She again stated that Mahoney had not exhibited any delusional thoughts while she examined him at Devens.

Dr. Kissin was also briefly cross-examined by Mahoney himself.  He asked if she recalled calling the prosecutor and his attorney on the phone to find out whether he had been found not guilty of "aggravated felonious sexual assault."[2]  Dr. Kissin answered that she recalled both of them stating that Mahoney was in fact acquitted of that particular charge.  After hearing the doctor's response, Mahoney became agitated and expressed that he should not be asked to respond to charges of which he had been acquitted.[3]  The district court judge then asked Mahoney if he

---

[2]  Mahoney subsequently referred to the charge as "aggravated rape and felonious sexual assault."

[3]  Mahoney specifically stated,

> I wanted to make the record that I was acquitted. We're
> still under the Fifth Amendment. I'm talking about the
> Fifth Amendment, judge. I don't even have to answer these
> questions. I was acquitted. I'm acquitted. I think we
> know that I'm not supposed to answer to the same rape
> charge twice. The jury found me not guilty in Suffolk
> Superior Court. Then when he said nonetheless, we're
> going to go, that should make someone delusional, judge,
> yes, and make someone incompetent, absolutely, and it did
> when I went on the web page and I sued with David Hiltz
> who was in that courtroom February 18 begging me, keep in
> control. One thing she didn't say. I've never, ever --
> I'm a danger to myself, but others or property, and to be
> still held incompetent and violate the United States
> Constitution under the Fifth Amendment, she just told you
> she made a phone call. That should have been the end of

believed his attorney was involved in a conspiracy against him and
Mahoney responded, "[a]bsolutely."

Once Mahoney's intervention was over, Mahoney's counsel
resumed Dr. Kissin's cross-examination.  He inquired whether, due
to his mood disorder, Mahoney could be competent at one point and
incompetent at another point.  Dr. Kissin responded that, if
Mahoney was especially symptomatic, his ability to comport himself
in the courtroom could be affected.  She concluded, "[c]ompetency
is point in time. So it is possible that he can be less or more
able to comport himself and be less or more in control of his mood
disorder, that could be to his competency, yes."

## B.  Testimony of Dr. Mart

Dr. Mart testified that he met with Mahoney three times.
During the first meeting, Dr. Mart was unable to understand exactly
what Mahoney's intentions were.  He understood that Mahoney's plan
was to be found competent, try the case himself (because he could
do so better than anyone else), and then plead temporary insanity.

During the second meeting, Dr. Mart observed that Mahoney
exhibited pressured speech, often talked about things and events he
assumed Dr. Mart knew about and rapidly jumped from topic to topic.
During this meeting, Dr. Mart administered a test called the
"Minnesota Multiphasic Personality Inventory-2."  The result of

---

that report. I was acquitted, judge, on May 25, 1984,
whether you like it or not. . . .

-7-

that test was invalid because Mahoney gave variable answers to questions aimed at assessing a single point, which led Dr. Mart to believe that his thinking was confused and fragmented.

During that meeting, Dr. Mart also administered Mahoney the MacArthur Competency Interview for Criminal Adjudication ("Mac-CAT-CA"), which is aimed at measuring understanding, reasoning and appreciation. The section regarding understanding is aimed at measuring the extent to which the testee understands the role of those involved in a criminal proceeding (i.e. the judge, the prosecutor, etc.). The second section tests the ability to reason and distinguish which facts are more important in a hypothetical situation. Mahoney obtained perfect scores on both of these sections. The third section tests a person's appreciation for his or her own legal situation. Mahoney's results fell in the clinically impaired range in this section. His answers indicated that he believed his attorney and the district court judge were conspiring against him.

Dr. Mart diagnosed Mahoney with Bipolar Disorder not otherwise specified with psychotic features and personality disorder not otherwise specified with anti-social narcissistic features. He believed that Mahoney suffered from high levels of manic excitement that distorted his thought processes. He also observed that people with bipolar disorders may at times cycle between moods rapidly. Finally, he testified that Mahoney

-8-

exhibited feelings of grandiosity, which affected his appreciation
of his situation given that he believed he understood the law
better than anyone and no lawyer would know as much as he did.  At
the end of the second meeting, Dr. Mart believed Mahoney was not
competent, but that he might improve with medication.

Dr. Mart had a third meeting with Mahoney in March 2012.
At that time, Mahoney expressed that he no longer believed there
was a conspiracy against him.  Dr. Mart, however, was not able to
follow what Mahoney was trying to tell him because he spoke of
people and facts Dr. Mart did not know and jumped from one topic to
the next.  At the end of that meeting, Dr. Mart believed Mahoney
was not competent because his thought processes were distorted.
Regarding Mahoney's intervention the day of the evidentiary
hearing, Dr. Mart stated that he believed Mahoney was in the grips
of a manic episode.

Finally, Dr. Mart testified that he did not think Mahoney
could represent himself even if he was found competent to withstand
trial because he could not stay on topic or logically tell a story.

## C.  The District Court's "Preliminary Leanings"

At the end of the evidentiary hearing, Mahoney manifested
that he was inclined to plead guilty.  The district court then
expressed that it would take the competence issue under advisement
but that, preliminarily, it did not believe Mahoney was competent
to proceed to trial <u>pro se</u> because he had problems containing his

-9-

emotions, racing thoughts and pressured speech.  The court stated, however, that it deemed Mahoney was "very likely competent to enter a plea."  Lastly, the court expressed that it was unsure if Mahoney was competent to proceed to trial.

**D.  The District Court's Order Under § 4241(d)**

On June 29, 2012, the district court issued an order finding, by a preponderance of the evidence, that Mahoney suffered from a mental disease or defect that rendered him mentally incompetent pursuant to subsection (d) of § 4241.  See 18 U.S.C. § 4241(d).  Given the finding of incompetence, the district court ordered that Mahoney be placed under the custody of the Attorney General and hospitalized to determine if there was a substantial probability that he would attain competency in the foreseeable future.  See id. § 4241(d)(1).

In the order, the district court noted that Mahoney presented himself during several hearings in a "very agitated state" and, although he seemed to understand what was generally going on, "he exhibited serious misunderstandings of several procedural and constitutional concepts."  It then found Mahoney was "presently suffering from mental diseases or defects (bipolar disorder, personality disorder [not otherwise specified] with antisocial or narcissistic features, problems related to interaction with the legal system/crime) rendering him mentally incompetent to assist properly in his defense, and/or to conduct

-10-

his own defense (as he desires to do)." The district court explained that Mahoney could not proceed pro se given his inability to communicate coherently. It further stated that, if properly medicated, Mahoney could be able to assist counsel in his defense, but that his unwillingness to be represented by counsel mooted the point. The district court thus committed Mahoney to the custody of the Attorney General, for a period not to exceed four months, to be hospitalized and treated and to determine whether he would obtain the capacity to face the charges pending against him. It is from this order that Mahoney appeals.

## E.   The District Court's Subsequent Finding Regarding Mahoney's Competency

On February 21, 2013, while this interlocutory appeal was pending, the district court issued an order finding that there was no substantial probability that, even with continued treatment, Mahoney would have attained sufficient capacity to allow the proceedings to go forward and ordered that he remain in the custody of the Attorney General to undergo a risk assessment under 18 U.S.C. § 4246. See id. § 4241(d). In other words, the court found it unlikely that Mahoney would be able to face the charges against him and ordered that he be further evaluated to determine if his release would be a risk to others, if he could be released under specific conditions, or if he should be transferred to the custody of the state where he is domiciled. See id. § 4246.

We took judicial notice of said order and requested the
parties file supplemental briefs "informing this [c]ourt as to
their respective positions in relation to the present appeal,
including whether the appeal is now moot." The parties complied.
We will address this matter after we address the preliminary
question of whether we have appellate jurisdiction to hear this
interlocutory appeal.

## II. Analysis

### A. Appellate Jurisdiction

We have not yet decided whether a defendant challenging
an order finding him incompetent and committing him to the custody
of the Attorney General under 18 U.S.C. § 4241(d)(1) can seek
immediate review of such order. In United States v. Filippi, 211
F.3d 649 (1st Cir. 2000), we determined that we had appellate
jurisdiction to review such an order because the constitutionality
of 18 U.S.C. § 4241 was being attacked. No such challenge has been
made in this appeal. Therefore, and although the government does
not challenge the existence of appellate jurisdiction here, we must
raise the issue sua sponte. Díaz-Reyes v. Fuentes-Ortiz, 471 F.3d
299, 300 (1st Cir. 2006).

We find, however, that the requirements of the collateral
order doctrine are present here. See Filippi, 211 F.3d at 650;
United States v. Kane, 955 F.2d 110, 111 (1st Cir. 1992). The
order being appealed is (1) about an issue that is distinct from

-12-

the merits; (2) definitive, because the hospitalization pursuant to the initial order materialized; and (3) affects interests that could not be vindicated after the final judgment. See Filippi, 211 F.3d at 650-51. This appeal also presents a significant legal issue, which is clearly not a "mere[] challenge [to a] discretionary trial court ruling[]" given that it is not within the district court's discretion to find a defendant incompetent when the evidence establishes that he or she is fit to face a trial. United States v. Kourí-Pérez, 187 F.3d 1, 5 (1st Cir. 1999).

We, therefore, join a number of our sister circuits in finding that the collateral order doctrine applies to challenges to orders issued under section 4241(d)(1). See United States v. Friedman, 366 F.3d 975, 979-80 (9th Cir. 2004); United States v. Ferro, 321 F.3d 756, 760 (8th Cir. 2003); United States v. Boigegrain, 122 F.3d 1345, 1348-49 (10th Cir. 1997); United States v. Davis, 93 F.3d 1286, 1289 (6th Cir. 1996); United States v. Donofrio, 896 F.2d 1301, 1303 (11th Cir. 1990); United States v. Gold, 790 F.2d 235, 238 (2d Cir. 1986); see also United States v. Sherman, 912 F.2d 907 (7th Cir. 1990) (reviewing commitment order without discussing jurisdiction). We accordingly move on to address whether the issue on appeal became moot after the district court issued its order finding it unlikely that Mahoney would attain competency in the foreseeable future.

**B.  Mootness**

        Some statutory background is in order to properly frame the issue.

        Section 4241 delineates a streamlined procedure courts must follow to determine a defendant's competency and establishes several milestones that must be reached to ensure that defendants are afforded due process and a fair trial.  See United States v. Girón-Reyes, 234 F.3d 78, 80 (1st Cir. 2000).  Pursuant to subsection (a) of § 4241, a district court must order a hearing once it determines there is reason to believe that a defendant is suffering from a mental disease or defect that renders him or her incompetent.  18 U.S.C. § 4241(a); see also Girón-Reyes, 234 F.3d at 80.  In the case before us now, this hearing was held on March 27, 2012.

        Subsection (b) of § 4241 prescribes that, prior to the date of the hearing, a defendant must submit to a psychiatric or psychological examination.  18 U.S.C. § 4241(b).  In this case, Mahoney was examined by Dr. Kissin and Dr. Mart prior to the evidentiary hearing.

        Subsection (d) of § 4241 further prescribes that, once the hearing is held, the district court must make a finding "that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent" only by a preponderance of the evidence.  Id. § 4241(d).  Subsection (d)(1) establishes

-14-

that, if a defendant is found to be incompetent, the district court must place him or her under the custody of the Attorney General to be hospitalized for up to four months to determine if there is a substantial probability that he or she will attain competency in the foreseeable future.  Id. § 4241(d)(1).  In this case, once the district court found Mahoney was incompetent, it placed him under the custody of the Attorney General for a period of four months.

After that initial four-month period, essentially two things can happen.  The first is that a district court could determine that there is a substantial probability that the defendant will regain capacity within some additional reasonable period of time, in which case the defendant will remain in the custody of the Attorney General for that period of time.  See id. § 4241(d)(2)(A).

The second thing that could happen is that the district court could determine, as it did here, that there is no substantial probability that the defendant will regain capacity in the foreseeable future, in which case the defendant remains under the custody of the Attorney General to determine whether he or she can be released or whether further hospitalization is necessary.  See id. § 4241(d), 4246, 4248.  It was precisely the finding that Mahoney is not likely to attain competency which gave us pause and prompted us to question whether the challenge to the initial order had become moot.

-15-

It can be gleaned from the statutory framework set out
above that an initial finding of incompetency inevitably triggers
various consequences for the defendant moving forward. The
defendant will always spend an initial period (up to four months)
hospitalized to determine "substantial probability" of attaining
capacity in the foreseeable future. See id. § 4241(d)(1). If,
after that initial period, the court finds that there is indeed a
substantial probability that the defendant will regain capacity
after further hospitalization, the defendant will be held for an
additional period of time. See id. § 4241(d)(2)(A). A less
friendly standard applies when defendants wish to be discharged and
proceed to trial than the standard they would face at an initial
competency hearing. Compare id. § 4241(d), with id. § 4241(e).

If, on the other hand, the court determines that there is
no substantial probability that the defendant will regain capacity,
as it did here, he or she will have lost his or her chance to go to
trial and will be subject to the custody of the Attorney General
for a more permanent hospitalization. See id. § 4246. Therefore,
a defendant like Mahoney continues to hold a cognizable interest in
the review of the initial determination of incompetency because the
initial finding triggered a series of events resulting in his
continuing confinement. Accord United States v. Evans, 690 F.3d
940, 943 (8th Cir. 2012) (finding that a defendant holds a "legally
cognizable interest" in the outcome of the appeal as to the initial

-16-

incompetency finding despite a subsequent determination because the initial determination "may impact all subsequent competency determinations").

We now turn fully to the appeal before us.

## C. The Merits

As stated above, Mahoney's first argument on appeal invites us to interpret the district court's initial order of incompetency in light of the court's expressions at the end of the evidentiary hearing regarding his potential competency to plead. According to him, if thus read, the order must be understood to mean that the district court found him incompetent to represent himself at trial, but competent to plead guilty and, thus, to proceed to trial, given that competency to plead implies competency to withstand trial. We decline to engage in such a serpentine reading, as we cannot give any weight to expressions the district court clearly did not intend to be understood as findings. In fact, the district court said it would express "preliminary thoughts" before taking the matter under advisement and stated, "these are not rulings, they are sort of preliminary leanings and I just want counsel to be aware of and Mr. Mahoney to be aware of [that]." We will, therefore, not accord them any weight and will limit our analysis to the four corners of the order. See, e.g., Mandel v. Town of Orleans, 326 F.3d 267, 273 (1st Cir. 2003)

-17-

(refusing to accord law of the case status to findings or comments that "appear to have been merely preliminary").

Mahoney's second argument is also easily rejected as it is based on an invitation to stretch the meaning of the district court's order in an unreasonable manner.  Mahoney takes issue with the portion of the district court's order which states that, during the evidentiary hearing on competency and several prior hearings, Mahoney "presented himself in a very agitated state, and while he appeared to generally understand what was transpiring, he exhibited serious misunderstandings of several procedural and constitutional concepts."  Based on this statement, Mahoney argues that the district court applied the wrong legal standard to determine his competency.

As the government correctly points out, the expressions at issue can be better understood as descriptive, given that they are found in the second paragraph of the order where the district court is explaining its impressions of Mahoney from observations made the day of the evidentiary hearing and on other occasions.  Furthermore, the district court order nowhere states or even implies that it was finding Mahoney incompetent because of his lack of understanding of the law.

Mahoney's third argument on appeal is that the district court's finding was clearly erroneous as it was based on Dr. Mart's

findings and not Dr. Kissin's, when the latter's report was more thorough and was based "on a fount of evidence."

Pursuant to subsection (d) of section 4241, the district court had to determine, by a preponderance of the evidence, whether Mahoney suffers from a mental disease or defect rendering him mentally incompetent to the extent "he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(d); see also United States v. Brown, 669 F.3d 10, 17 (1st Cir. 2012) ("The test for competency is whether the defendant first has sufficient present ability to consult with counsel with a reasonable degree of rational understanding, and second has a rational and factual understanding of the proceedings against him.").  When a district court applies the correct legal standard to a competency question, we review for clear error.  United States v. Figueroa-González, 621 F.3d 44, 48 (1st Cir. 2010).  We see no clear error here.

The district court heard the testimony of two experts who examined Mahoney and they each gave their respective views on the issue of his competency.  Dr. Kissin found him to be competent, but acknowledged that "[c]ompetency is point in time" and that, depending on his mood disorder, he could be more or less able to control himself.  She also testified that she never observed any evidence of delusions regarding a conspiracy between his attorney and the presiding judge, but acknowledged that such a delusional

-19-

belief could affect a person's competency. Finally, it is
significant that Dr. Kissin testified that, during the hearing,
Mahoney seemed somewhat more agitated than she had seen him
previously.

Dr. Mart, on the other hand, had observed Mahoney
expressing delusional thoughts and behaving hypomanically on
several occasions, including the day of the hearing. The district
court had also observed evidence of the delusional thoughts
involving a conspiracy and directly asked Mahoney during the
hearing if he still held such beliefs, which he confirmed.

Therefore, it is reasonable to conclude that, if
Dr. Kissin had observed evidence of the delusional thoughts Mahoney
expressed to both Dr. Mart and the district court during the
hearing, it is possible that her assessment of Mahoney's competency
would have been different. It is of no consequence that her report
was seemingly more thorough or based on observations made during a
longer period, because she was not able to observe the delusional
thoughts that both experts identified as the type of thought that
affects a person's competency. According to both experts,
delusional thoughts distort a person's understanding of one's legal
situation and one's ability to consult with counsel. Given the
"intensely fact-based nature of competency inquiries," we
comfortably find that the district court did not clearly err in
concluding that Mahoney was incompetent based on Dr. Mart's

testimony and its own observations of his behavior.  <u>Pike</u> v.
<u>Guarino</u>, 492 F.3d 61, 75 (1st Cir. 2007).

Having found that the district court did not clearly err
in finding Mahoney incompetent, we need not reach Mahoney's final
argument on appeal regarding the district court's alleged failure
to find that he suffered from a severe mental illness, a requisite
finding under applicable Supreme Court precedent for a court to
deny a competent defendant the right to self-represent.  <u>See</u>
<u>Indiana</u> v. <u>Edwards</u>, 554 U.S. 164, 178 (2008) ("The Constitution
permits States to insist on representation by counsel for those
competent enough to stand trial . . . but who still suffer from
severe mental illness to the point where they are not competent to
conduct trial proceedings by themselves.").

### III. <u>Conclusion</u>

For the reasons set forth above, we affirm the district
court's order finding Mahoney incompetent pursuant to section
4241(d).

**<u>Affirmed</u>.**